# 16-3271-cr(L),
## 16-3281-cr(CON)

# United States Court of Appeals
## for the
# Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

STEVEN RAY,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## APPENDIX
### Volume I of II (Pages A-1 to A-132)

JOSEPH J. KARASZEWSKI, AUSA
UNITED STATES ATTORNEY'S OFFICE,
    WESTERN DISTRICT OF NEW YORK
*Attorneys for Appellee*
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5700

FITZSIMMONS, NUNN & PLUKAS, LLP
*Attorneys for Defendant-Appellant*
16 East Main Street, Suite 300
Rochester, New York 14614
(585) 546-5270

i

# Table of Contents

**Page**

District Court Docket Sheet for 15-cr-6004 ............................... A-1

District Court Docket Sheet for 15-cr-6115 ............................... A-8.1

**District Court Case No. 15-cr-6004**

Waiver of an Indictment, Dated February 26, 2015 ................... A-9

Information on Count 1, Dated February 25, 2015 ................... A-10

Order of Referral to Take Guilty Plea,
    Dated February 26, 2015 ....................................... A-13

Report and Recommendation, Dated February 26, 2015 ........... A-14

Plea Agreement, Dated February 26, 2015 ............................. A-15

Statement of the Government with Respect to
    Sentencing Factors, Dated May 18, 2015 ............................. A-27

    Exhibit 1 to Sentencing Factors -

        (i) Redacted Request for Downward Departure Letter
        from William C. Dedes to the Honorable David G.
        Larimer, Dated April 27, 2015, with Attachments .......... A-40

        (ii) Letter from Defendant Steven Ray to the Honorable
        David G. Larimer, Dated April 27, 2015 ....................... A-42

        (iii) Letter from Timothy Russell to the Honorable
        David G. Larimer, Dated April 26, 2015 ....................... A-43

        (iv) Redacted Letter from J.L. to the Honorable
        Marian W. Payson, Dated March 10, 2015 .................... A-45

        (v) Letter from Sharon L. Karvetski to the Honorable
        Marian W. Payson, Dated March 2, 2015 ..................... A-46

        (vi) Letter from Michael Homer to the Honorable
        David G. Larimer, Dated April 1, 2015 ......................... A-47

        (vii) Letter from Judy A. Clement to the Honorable
        David G. Larimer, Dated March 27, 2015 .................... A-48

        (viii) Letter from James G. Vazzana, Esq., to the
        Honorable David G. Larimer, Dated April 9, 2015 ........ A-49

        (ix) Letter from Stephen J. Wehner to the Honorable
        Marian W. Payson, Dated March 25, 2015 .................... A-50

ii

**Page**

(x) Redacted Letter from Lawrence Kay,
Filed May 18, 2015 ......................................................... A-51

Exhibit 2 to Sentencing Factors -
Redacted Memorandum of Interview by Nichole Rodriguez,
Dated May 7, 2015 ............................................................. A-53

Redacted Request for Downward Departure Letter from
William C. Dedes to the Honorable David G. Larimer,
Dated April 27, 2015, with Attachments thereto
(Reproduced herein at pp. A-40 to A-52)

Defendant's Request for Evidentiary Hearing Regarding
Sentencing, Dated November 12, 2015.................................... A-55

Character Reference Supplement Letter on Behalf of
Defendant from Jason E. Abbott, Esq., to the Honorable
David G. Larimer, Dated November 13, 2015 ....................... A-61

Exhibit 1 to Letter -

(i) Letter from Sharon L. Karvetski to the Honorable
David G. Larimer, Dated September 17, 2015............... A-62

(ii) Letter from Robert J. Karvetski to the Honorable
David G. Larimer, Dated September 20, 2015............... A-63

Notice of Motion by Defendant for an Order Granting Relief
Requested Evidentiary Hearing Regarding Sentencing,
Dated November 16, 2015 ...................................................... A-64

Decision and Order of the Honorable David G. Larimer,
Dated November 16, 2015 ...................................................... A-68

Defendant's Sentencing Memorandum and Request for
Downward Departure, Dated January 12, 2016 ..................... A-70

Exhibit 1 to Sentencing Memorandum -
Letter from Defendant Steven Ray to the Honorable
David G. Larimer, Dated January 6, 2016 .............................. A-80

Statement of the Government with Respect to
Sentencing Factor, Dated May 24, 2015 ................................. A-86

iii

**Page**

Exhibit 1 to Statement of the Government -
Redacted Memorandum of Interview by Nichole Rodriguez,
Dated May 7, 2015
(Reproduced herein at pp. A-53 to A-54)

Exhibit 2 to Statement of the Government -
Redacted Memorandum of Interview by Nichole Rodriguez,
Dated July 10, 2015 ........................................................... A-112

Exhibit 3 to Statement of the Government -
Redacted Memorandum of Interview by Nichole Rodriguez,
Dated July 23, 2015 ........................................................... A-124

Exhibit 4 to Statement of the Government -
NYSP Report, Dated February 28, 2014 ............................ A-126

Exhibit 5 to Statement of the Government -
Affidavit of Defendant Steven Ray,
Sworn to June 17, 2011 ...................................................... A-128

Exhibit 6 to Statement of the Government -
Affidavit of Steven Ray, Defendant,
Sworn to October 24, 2013 ................................................. A-132

Exhibit 7 to Statement of the Government -
Financial Affidavit of Steven Ray, Defendant,
Sworn to August 21, 2015 .................................................. A-133

Exhibit 8 to Statement of the Government -
Polygraph Examination Report of the Criminal Investigation
National Forensic Laboratory, Dated May 4, 2016 ............. A-134

Exhibit 9 to Statement of the Government -
Investigation Report from the Defense Criminal
Investigation Services, Dated May 10, 2016 ...................... A-139

Exhibit 10 to Statement of the Government -
Letter from Michael DiCataldo — Town of Greece,
Police Department, Dated May 12, 2016 ............................ A-141

Exhibit 11 to Statement of the Government -
Redacted Memorandum of Interview by Alan Roth,
Dated April 29, 2016 .......................................................... A-142

Exhibit 12 to Statement of the Government -
Redacted Memorandum of Interview by Nichole Rodriguez,
Dated January 21, 2016 ...................................................... A-144

iv

**Page**

Exhibit 13 to Statement of the Government -
Redacted Memorandum of Interview by Alan Roth,
Dated January 21, 2016 ...................................................... A-146

Exhibit 14 to Statement of the Government -
Photograph 1 of 2 of Pickup Truck .................................... A-148

Exhibit 15 to Statement of the Government -
Photograph 2 of 2 of Pickup Truck .................................... A-149

Exhibit 16 to Statement of the Government -
Vehicle Cash Purchase Agreement, Dated
September 10, 2015, with Certificate of Title ..................... A-150

Defendant's Sentencing Memorandum, Objections to
Presentence Report, Request for Downward Department and
Request for Evidentiary Hearing Regarding Sentencing,
Dated April 18, 2016 ............................................................ A-153

Exhibit 1 to Sentencing Memorandum -
Letter from James E. Reynolds to Steven Ray, Defendant,
Dated May 29, 1984 ............................................................. A-170

Government Response to Defendant's Objections
to Presentence Report, August 26, 2016 ............................. A-171

Attachment 1 to Government Response -
ESL's Business Membership Application,
Dated April 23, 2013, with Attachments ............................. A-182

Attachment 2 to Government Response -
Chase Business Depository Resolution,
Dated July 25, 2007 ............................................................. A-186

Attachment 3 to Government Response -
First Niagara's Business Signature Card,
Dated April 20, 2013 ............................................................ A-187

Attachment 4 to Government Response -

(i) Manufacturers and Traders Trust Company
Commercial Deposit Account Opening Request,
Dated March 6, 2012 ........................................................... A-188

(ii) Manufacturers and Traders Trust Company
Certified Banking Resolution of Corporation,
Dated February 6, 2012 ....................................................... A-190

v

**Page**

(iii) Manufacturers and Traders Trust Company
Certified Banking Resolution of Corporation,
Dated April 19, 2013 ........................................................... A-191

(iv) Manufacturers and Traders Trust Company
Commercial Deposit Account Opening Request,
Dated April 19, 2013 ........................................................... A-193

Attachment 5 to Government Response -
Fincen Form 107 — Registration of Money Services Business,
Dated August 2, 2007 ............................................................. A-194

Attachment 6 to Government Response -
Redacted Letter from Defendant Steven Ray to
Michael Regan, Dated January 14, 2016 ................................ A-195

Attachment 7 to Government Response -
Call Transcript between Defendant Steven Ray and
Kerri Keiffer, Dated December 24, 2015, at 15:30 ................. A-196

Attachment 8 to Government Response -
Call Transcript between Defendant Steven Ray and
Kerri Keiffer, Dated December 24, 2015, at 16:02 ................. A-199

Judgment of the Honorable David G. Larimer,
Dated September 14, 2016 ...................................................... A-201

Notice of Appeal, Dated September 15, 2016 ............................ A-207

**District Court Case No. 15-cr-6115**

Indictment, Dated August 11, 2015 ........................................... A-208

Plea Agreement, Dated December 17, 2015 .............................. A-210

Statement of the Government with Respect to Sentencing Factor,
Dated May 24, 2015, with Exhibits 1 through 16
(Reproduced herein at pp. A-86 to A-152)

Government Response to Defendant's Objections
to Presentence Report, August 26, 2016,
with Attachments 1 through 8
(Reproduced herein at pp. A-153 to A-200)

Transcript of Sentencing Proceedings Held Before the
Honorable David G. Judge, Dated September 1, 2016 .......... A-220

vi

**Page**

Judgment of the Honorable David G. Larimer,
    Dated September 14, 2016 ..................................................... A-319

Notice of Appeal, Dated September 15, 2016 ............................ A-325

**A-1**

APPEAL,CLOSED_2016,VictimNotify

# U.S. DISTRICT COURT
## U.S. District Court, Western District of New York (Rochester)
## CRIMINAL DOCKET FOR CASE #: 6:15-cr-06004-DGL-MWP-1

| | |
|---|---|
| Case title: USA v. Ray | Date Filed: 02/27/2015 |
| Magistrate judge case number: 6:14-mj-04116-MWP | Date Terminated: 09/15/2016 |

Assigned to: Hon. David G. Larimer
Referred to: Hon. Marian W. Payson

**Defendant (1)**

| | | |
|---|---|---|
| **Steven Ray**<br>*TERMINATED: 09/15/2016* | represented by | **Steven Ray**<br>ALLENWOOD<br>FEDERAL PRISON CAMP<br>Inmate Mail/Parcels<br>P.O. BOX 1000<br>WHITE DEER, PA 17887<br>PRO SE |
| | | **Jason E. Abbott**<br>Fitzsimmons, Nunn, Fitzsimmons & Plukas,<br>LLP<br>16 E. Main Street<br>Suite 300<br>Rochester, NY 14614<br>585-546-5270<br>Fax: 585-546-8129<br>Email: jabbott@fitznunn.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |
| | | **William C. Dedes**<br>45 Exchange Boulevard<br>Suite 929<br>Rochester, NY 14614<br>585-325-4300<br>Fax: 585-325-6075<br>Email: dedeslaw@gmail.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained* |

| **Pending Counts** | **Disposition** |
|---|---|
| FRAUDS AND SWINDLES 18:1341<br>(1) | 84 months; 3 years supervised release; fine<br>waived; $309,511.55 restitution; $100 SPA |
| FALSELY MAKES/FORGES | 84 months, concurrent with Count 1; 3 years |

**A-2**

ENDORSEMENT/SIGNATURE 18:510(a)
(2)
(2)

supervised release, concurrent with Count 1; fine waived; $309,511.55 restitution; $100 SPA

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                    **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                    **Disposition**

18:510A.F, 18:641.F, 18:1341.F, 18:1708.F
- the defendant, with the intent to defraud, passed Treasury checks of the United States bearing a falsely made or forged endorsement or signature

---

**Plaintiff**

**USA**                    represented by    **Craig R. Gestring**
U.S. Attorney's Office
100 State Street
Room 620
Rochester, NY 14614
585-263-6760
Fax: 585-263-6226
Email: craig.gestring@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: government attorney*

**Kevin D. Robinson**
U.S. Attorney's Office
Federal Centre
138 Delaware Avenue
Buffalo, NY 14202
716-843-5804
Fax: 716-551-3196
Email: kevin.d.robinson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 08/19/2014 | 1 | COMPLAINT as to Steven Ray (1). (CAM) [6:14-mj-04116-MWP] (Entered: 08/19/2014) |

| 08/19/2014 | 2 | ORDER as to Steven Ray sealing the complaint, warrant and all attachments until the defendant is brought for initial appearance, or until further order of the Court, but in any event, no later than 6 months from today's date, unless application is made. Signed by Hon. Marian W. Payson on 8/19/14.(CAM) [6:14-mj-04116-MWP] (Entered: 08/19/2014) |
| 08/20/2014 | | Case unsealed as to Steven Ray (CAM) [6:14-mj-04116-MWP] (Entered: 08/20/2014) |
| 08/20/2014 | | Arrest of Steven Ray (CAM) [6:14-mj-04116-MWP] (Entered: 08/26/2014) |
| 08/20/2014 | 3 | Minute Entry for proceedings held before Hon. Marian W. Payson:Initial Appearance as to Steven Ray held on 8/26/2014. Government moves to unseal the complaint. Request granted. Defendant advised of rights. Government summarizes charges. Mr. Dedes advises he has not been fully retained. The Court directs Mr. Dedes to send a letter a week from today to advise if he has been fully retained. The government concur with the recommended release conditions. The defendant is released on conditions. Preliminary Hearing set for 9/10/14 @ 4:00 p.m.Appearances: Tiffany Lee, AUSA for Craig Gestring, AUSA; Defendant with William Dedes, Esq.; Roosevelt Smith, USPO(Digital Recording) (CAM) Modified on 10/23/2014 (CAM). [6:14-mj-04116-MWP] (Entered: 08/26/2014) |
| 08/20/2014 | 4 | ORDER Setting Conditions of Release as to Steven Ray (1) personal recognizance. Signed by Hon. Marian W. Payson on 8/20/14.(CAM) [6:14-mj-04116-MWP] (Entered: 08/26/2014) |
| 08/22/2014 | 5 | MOTION by Steven Ray to adjourn the 9/10/14 preliminary hearing and to exclude time. (CAM) [6:14-mj-04116-MWP] (Entered: 08/26/2014) |
| 08/22/2014 | 6 | ORDER granting 5 Motion as to Steven Ray to adjourn the preliminary hearing and to exclude time. The preliminary hearing is adjourned without date. A status conference is set for 10/23/14 @ 9:00 a.m. Time from 8/22/14 through 10/23/14 is excluded in the interest of justice. Signed by Hon. Marian W. Payson on 8/22/14.(CAM) [6:14-mj-04116-MWP] (Entered: 08/26/2014) |
| 09/05/2014 | 7 | CONSENT PROTECTIVE ORDER as to Steven Ray. Signed by Hon. Marian W. Payson on 9/5/14.(CAM) [6:14-mj-04116-MWP] (Entered: 09/08/2014) |
| 10/23/2014 | | E-Filing Notification: DATE OF INITIAL APPEARANCE CORRECTED TO 8/20/14 3 Minute Entry (CAM) (CAM) [6:14-mj-04116-MWP] (Entered: 10/23/2014) |
| 10/23/2014 | 8 | Minute Entry for proceedings held before Hon. Marian W. Payson:Status Conference as to Steven Ray held on 10/23/2014. Court addresses Mr. Dedes' letter requesting an adjournment. The parties are working on a possible resolution. Status Conference/Set PH Date: 11/24/14 @ 9:00 a.m. TIME FROM 10/23/14 THROUGH 11/24/14 EXCLUDED IN THE INTEREST OF JUSTICE.Appearances: Craig Gestring, AUSA; Defendant with William Dedes, Esq.(Digital Recording)(CAM) [6:14-mj-04116-MWP] (Entered: 10/29/2014) |
| 11/24/2014 | 9 | Minute Entry for proceedings held before Hon. Marian W. Payson:Status Conference as to Steven Ray held on 11/24/2014. The parties are working on a possible resolution. The parties make a joint request for an adjournment. Status Conference/Set PH Date: 1/14/15 @ 9:00 a.m. TIME FROM 11/24/14 THROUGH 1/14/15 EXCLUDED IN THE INTEREST OF JUSTICE EXCLUDED IN THE INTEREST OF JUSTICE.Appearances: Craig Gestring, AUSA; Defendant with William Dedes, Esq.(Digital Recording)(CAM) [6:14-mj-04116-MWP] (Entered: 12/01/2014) |
| 01/09/2015 | 10 | MOTION by Steven Ray to adjourn the 1/14/15 status conference and to exclude time. (CAM) [6:14-mj-04116-MWP] (Entered: 01/12/2015) |
| 01/09/2015 | 11 | ORDER granting 10 Motion as to Steven Ray to adjourn the 1/14/15 status conference and |

**A-4**

|  |  |  |
|---|---|---|
|  |  | to exclude time. Status Conference set for 2/10/15 @ 9:00 a.m. Time from 1/9/15 through 2/10/15 excluded in the interest of justice. Signed by Hon. Marian W. Payson on 1/9/15. (CAM) [6:14-mj-04116-MWP] (Entered: 01/12/2015) |
| 01/22/2015 |  | Set/Reset Deadlines/Hearings as to Steven Ray: Plea Agreement Hearing set for 2/26/2015 09:30 AM before Hon. Marian W. Payson. (CAM) [6:14-mj-04116-MWP] (Entered: 01/22/2015) |
| 01/27/2015 | 12 | MOTION by Steven Ray to adjourn the 2/10/15 status conference and to exclude time. (CAM) [6:14-mj-04116-MWP] (Entered: 01/29/2015) |
| 01/27/2015 | 13 | ORDER granting 12 Motion as to Steven Ray to adjourn the 2/10/15 status conference and to exclude time. The matter is adjourned to 2/26/15 @ 9:30 a.m. Time from 1/27/15 through 2/26/15 excluded in the interest of justice. Signed by Hon. Marian W. Payson on 1/27/15.(CAM) [6:14-mj-04116-MWP] (Entered: 01/29/2015) |
| 02/26/2015 | 20 | Minute Entry for proceedings held before Hon. Marian W. Payson:Plea Hearing as to Steven Ray held on 2/26/2015 Order of Referral to Take Guilty Plea accepted. Defendant pleads guilty to Counts 1 and 2 of the Felony Information. The Court accepts the Waiver of Indictment. The Court recommends the acceptance of the guilty plea. Report and Recommendation to be issued. The Court orders the pre-sentence report to be prepared. Parties to be notified of the sentencing date before Judge Larimer.Appearances: Craig Gestring, AUSA; Defendant with William Dedes, Esq.(Digital Recording)(CAM) (Entered: 03/05/2015) |
| 02/27/2015 | 14 | WAIVER OF INDICTMENT by Steven Ray. (JHF) (Entered: 02/27/2015) |
| 02/27/2015 | 15 | INFORMATION as to Steven Ray (1) count(s) 1, 2. (JHF) (Entered: 02/27/2015) |
| 02/27/2015 | 16 | ORDER OF REFERRAL TO TAKE GUILTY PLEA to Hon. Marian W. Payson as to Steven Ray. Signed by Hon. David G. Larimer on 2/26/15.(JHF) (Entered: 02/27/2015) |
| 02/27/2015 | 17 | REPORT AND RECOMMENDATIONS on Plea of Guilty as to Steven Ray. Signed by Hon. Marian W. Payson on 2/26/15.(JHF) (Entered: 02/27/2015) |
| 02/27/2015 | 18 | PLEA AGREEMENT as to Steven Ray. (JHF) (Entered: 02/27/2015) |
| 03/03/2015 | 19 | TEXT ORDER as to Steven Ray. Sentencing set for 5/26/2015 10:00 AM before Hon. David G. Larimer. Defendant's sentencing submissions are due by 5/12/15; the government's submissions are due by 5/19/15. IT IS SO ORDERED. Signed by Hon. David G. Larimer on 3/3/15.(PR) (Entered: 03/03/2015) |
| 03/10/2015 | 21 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Steven Ray held on 2/26/15 before Judge Marian W. Payson. Court Reporter/Transcriber Christi A. Macri, email: christimacri50@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/31/2015. Redacted Transcript Deadline set for 4/10/2015. Release of Transcript Restriction set for 6/8/2015. (JHF) (Entered: 03/10/2015) |
| 05/18/2015 | 22 | STATEMENT WITH RESPECT TO SENTENCING FACTORS by USA as to Steven Ray (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Gestring, Craig) (Entered: 05/18/2015) |
| 05/21/2015 | 23 | TEXT ORDER as to Steven Ray. Sentencing reset for 7/15/2015 02:00 PM before Hon. David G. Larimer. Defendant's sentencing submissions are due by 7/1/15; government's response by 7/8/15. IT IS SO ORDERED. Signed by Hon. David G. Larimer on 5/21/15. (PR) (Entered: 05/21/2015) |
| 05/21/2015 | 24 | SENTENCING MEMORANDUM (Letters) by Steven Ray. (JHF) (Entered: 05/21/2015) |

**A-5**

| | | |
|---|---|---|
| 06/22/2015 | 25 | TEXT ORDER as to Steven Ray. Sentencing reset for 9/2/2015 02:00 PM before Hon. David G. Larimer. Defendant's sentencing submissions are due on or before 8/19/15; government's submissions are due on or before 8/26/15. IT IS SO ORDERED. Signed by Hon. David G. Larimer on 6/22/15.(PR) (Entered: 06/22/2015) |
| 08/18/2015 | 26 | MOTION to Revoke *Government's Motion to Revoke Defendant's Release Order* by USA as to Steven Ray. (Attachments: # 1 Exhibit 1)(Gestring, Craig) (Entered: 08/18/2015) |
| 08/19/2015 | | NOTICE as to Steven Ray 26 MOTION to Revoke *Government's Motion to Revoke Defendant's Release Order*. Motion Hearing set for 8/21/2015 02:30 PM before Hon. Marian W. Payson. (CAM) (Entered: 08/19/2015) |
| 08/21/2015 | 27 | Minute Entry for proceedings held before Hon. Marian W. Payson:Motion Hearing as to Steven Ray held on 8/21/2015 re 26 MOTION to Revoke *Government's Motion to Revoke Defendant's Release Order* filed by USA. Defendant advised of violations. Mr. Dedes advises he will continue his representation of defendant in this case, but he will not continue as counsel in 15-CR-6115. The governments proffer will apply to the violations in this case as well as the motion for detention in 15-CR-6115. Government proffers. Defendant proffers. Per defendants request, the decision on the motion to revoke is reserved pending sentencing before Judge Larimer. The government moves to modify conditions to include no contact with J.L. Request granted.Appearances: Craig Gestring, AUSA; Defendant with William Dedes, Esq.; Jacqueline Zornow, USPO and Jeffrey Mileham, USPO(Digital Recording) (CAM) (Entered: 08/26/2015) |
| 08/27/2015 | 28 | TEXT ORDER as to Steven Ray. The Court grants the request to adjourn the 9/2/15 sentencing. Sentencing is adjourned without date. The Court will appoint Jason Abbott as counsel to defendant under CJA, and will schedule this matter for status on 9/9/15 at 3:30 PM. Both counsel, William Dedes and Jason Abbott, should appear. IT IS SO ORDERED. Signed by Hon. David G. Larimer on 8/27/15.(PR) (Entered: 08/27/2015) |
| 08/31/2015 | | Set/Reset Hearings as to Steven Ray: Attorney Appointment Hearing/Status reset for 9/10/2015 11:30 AM before Hon. David G. Larimer. (PR) (Entered: 08/31/2015) |
| 09/01/2015 | 29 | Minute Entry for proceedings held before Hon. David G. Larimer:Status Conference as to Steven Ray held on 9/1/2015. The Court will relieve William Dedes as counsel to defendant and appoint Jason Abbott, Esq. under the CJA. The Court adjourns sentencing without date pending resolution of case 15-CR-6115. (Tape #FTR.)(PR) (Entered: 09/11/2015) |
| 09/22/2015 | 30 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Steven Ray held on 8/21/15 before Judge Marian W. Payson. Court Reporter/Transcriber Christi A. Macri, email: christimacri50@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/13/2015. Redacted Transcript Deadline set for 10/23/2015. Release of Transcript Restriction set for 12/21/2015. (JHF) (Entered: 09/22/2015) |
| 10/13/2015 | 31 | TEXT ORDER as to Steven Ray. Defendant's request to schedule sentencing is granted. Sentencing set for 11/24/2015 10:00 AM before Hon. David G. Larimer. Defendant's sentencing submissions are due by 11/10/15; government's response by 11/17/15. IT IS SO ORDERED. Signed by Hon. David G. Larimer on 10/13/15.(PR) (Entered: 10/13/2015) |
| 11/12/2015 | 32 | MOTION for Hearing *(Evidentiary) at Sentencing* by Steven Ray. (Abbott, Jason) (Entered: 11/12/2015) |
| 11/13/2015 | 33 | OBJECTION TO PRESENTENCE INVESTIGATION REPORT by Steven Ray (Abbott, Jason) (Entered: 11/13/2015) |

**A-6**

| | | |
|---|---|---|
| 11/13/2015 | 34 | SENTENCING MEMORANDUM by Steven Ray (Attachments: # 1 Exhibit Supplemental Reference Letters)(Abbott, Jason) (Entered: 11/13/2015) |
| 11/13/2015 | | E-Filing Notification: 32 MOTION for Hearing *(Evidentiary) at Sentencing. A motion is required for all motions. Action required, please file NOTICE of Motion using the "Notice" event and link to 32 Motion. (TF) (Entered: 11/16/2015)* |
| 11/16/2015 | 35 | NOTICE by Steven Ray re 32 MOTION for Hearing *(Evidentiary) at Sentencing* (Abbott, Jason) (Entered: 11/16/2015) |
| 11/16/2015 | 36 | ORDER that the Court intends to proceed to sentencing without making determinations on the obstruction enhancement. In addition, the Court is inclined to grant Ray the three point reduction anticipated in the plea agreement for acceptance of responsibility. Therefore, the range would be as anticipated at the plea, 41-51 months. The Court will consider all the factors under 18 U.S.C. § 3553(a) but, the Court thinks the obstruction and intimidation allegations should be resolved in proceedings on the new criminal charge, 15-CR-6115. The Court will focus primarily on the facts involving the mail fraud and forgery of the treasury checks as to Steven Ray. Signed by Hon. David G. Larimer on 11/16/15.(EMA) (Entered: 11/16/2015) |
| 11/23/2015 | 37 | TEXT ORDER as to Steven Ray. Sentencing reset for 12/16/2015 02:30 PM before Hon. David G. Larimer. Signed by Hon. David G. Larimer on 11/23/15.(PR) (Entered: 11/23/2015) |
| 12/03/2015 | 42 | CJA 24 as to Steven Ray: Authorization to Pay Christi A. Macri $ 31.50 for Transcript, Voucher # 151117000005.. Signed by Hon. Marian W. Payson on 10/6/15.(MD) (Entered: 04/26/2016) |
| 12/17/2015 | 38 | Set/Reset Hearings as to Steven Ray: Sentencing reset for 1/21/2016 10:00 AM before Hon. David G. Larimer. (PR) (Entered: 12/18/2015) |
| 01/13/2016 | 39 | SENTENCING MEMORANDUM by Steven Ray (Attachments: # 1 Supplement Statement)(Abbott, Jason) (Entered: 01/13/2016) |
| 01/21/2016 | 40 | Minute Entry for proceedings held before Hon. David G. Larimer:Status Conference as to Steven Ray held on 1/21/2016. The Court adjourns sentencing without date. Plaintiff must complete his obligations under the plea agreement, which must include full and complete disclosure under oath. (Tape #FTR.)(PR) (Entered: 01/25/2016) |
| 04/22/2016 | 41 | TEXT ORDER as to Steven Ray. Sentencing set for 5/25/2016 03:00 PM before Hon. David G. Larimer. All sentencing submissions must be filed on or before 5/18/16. IT IS SO ORDERED. Signed by Hon. David G. Larimer on 4/22/16.(PR) (Entered: 04/22/2016) |
| 05/11/2016 | | Set/Reset Hearings as to Steven Ray: Sentencing reset for 6/1/2016 02:30 PM before Hon. David G. Larimer. (PR) (Entered: 05/11/2016) |
| 05/24/2016 | 43 | STATEMENT WITH RESPECT TO SENTENCING FACTORS by USA as to Steven Ray (Attachments: # 1 Exhibit 1-16)(Gestring, Craig) (Entered: 05/24/2016) |
| 06/01/2016 | 44 | TEXT ORDER as to Steven Ray. Sentencing reset for 9/1/2016 10:00 AM before Hon. David G. Larimer. If defendant wishes to make supplemental sentencing submissions, they must be filed by 8/18/16; government's response by 8/25/16. IT IS SO ORDERED. Signed by Hon. David G. Larimer on 6/1/16.(PR) (Entered: 06/01/2016) |
| 07/28/2016 | | Set/Reset Hearings as to Steven Ray: Sentencing reset for 9/1/2016 02:30 PM before Hon. David G. Larimer. **TIME CHANGE ONLY**(PR) (Entered: 07/28/2016) |
| 08/18/2016 | 45 | STATEMENT WITH RESPECT TO SENTENCING FACTORS by Steven Ray (Attachments: # 1 Exhibit no. 1)(Abbott, Jason) (Entered: 08/18/2016) |

| 08/26/2016 | 46 | STATEMENT WITH RESPECT TO SENTENCING FACTORS by USA as to Steven Ray (Attachments: # 1 Exhibit Attachments 1-8)(Gestring, Craig) (Entered: 08/26/2016) |
| --- | --- | --- |
| 09/01/2016 | 49 | Minute Entry for proceedings held before Hon. David G. Larimer:Sentencing held on 9/1/2016 for Steven Ray (1), Count(s) 1, 84 months; 3 years supervised release; fine waived; $309,511.55 restitution; $100 SPA; Count(s) 2, 84 months, concurrent with Count 1; 3 years supervised release, concurrent with Count 1; fine waived; $100 SPA. (Tape #FTR.)(PR) (Entered: 09/13/2016) |
| 09/07/2016 | 47 | PRESENTENCE INVESTIGATION REPORT (Sealed) as to Steven Ray. (JHF) (Entered: 09/07/2016) |
| 09/12/2016 | 48 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Steven Ray held on 9/1/16 before Judge David G. Larimer. Court Reporter/Transcriber Christi Macri, email address: christimacri50@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/3/2016. Redacted Transcript Deadline set for 10/13/2016. Release of Transcript Restriction set for 12/12/2016. (TF) (Entered: 09/13/2016) |
| 09/15/2016 | 50 | JUDGMENT as to Steven Ray (1), Count(s) 1, 84 months; 3 years supervised release; fine waived; $309,511.55 restitution; $100 SPA; Count(s) 2, 84 months, concurrent with Count 1; 3 years supervised release, concurrent with Count 1; fine waived; $309,511.55 restitution; $100 SPA. Additional certified copies forwarded to USPO, USM, US Attorney, Debt Collection, Financial Department. Signed by Hon. David G. Larimer on 9/14/16. (JHF) (Entered: 09/15/2016) |
| 09/20/2016 | 51 | NOTICE OF APPEAL. (Abbott, Jason) (Entered: 09/20/2016) |
| 09/20/2016 | 52 | TRANSCRIPT REQUEST by Steven Ray for proceedings held on 09/01/2016, 01/21/2016 (Abbott, Jason) (Entered: 09/20/2016) |
| 10/27/2016 | 53 | MOTION APPLICATION FOR WRIT OF GARNISHMENT (M&T) BANK by USA as to Steven Ray. (Robinson, Kevin) (Entered: 10/27/2016) |
| 10/28/2016 | 54 | CJA 20 as to Steven Ray: Authorization to Pay Jason E. Abbott. Amount: $5,465.38, Voucher # 0209-0000037. Signed by Hon. David G. Larimer on 10/25/16.(JHF) (Entered: 10/31/2016) |
| 10/31/2016 | | Writ of Garnishment Issued (M&T Bank). Original writ and two certified copies sent to Kevin D. Robinson, Buffalo U.S. Attorney's Office. (JHF) (Entered: 10/31/2016) |
| 10/31/2016 | 56 | CLERK'S NOTICE of Post Judgment Garnishment/Instructions to Debtor (M&T Bank). Original Clerk's Notice of Post Judgment Garnishment/Instructions to Debtor (M&T Bank) sent to Kevin D. Robinson, Buffalo U.S. Attorney's Office. (JHF) (Entered: 11/08/2016) |
| 11/16/2016 | 57 | Certificate of Service by USA as to Steven Ray *and M & T Bank* (Robinson, Kevin) (Entered: 11/16/2016) |
| 12/22/2016 | 58 | MOTION APPLICATION FOR WRIT OF CONTINUING GARNISHMENT by USA as to Steven Ray. (Robinson, Kevin) (Entered: 12/22/2016) |
| 12/29/2016 | 59 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Steven Ray held on 1/21/16 before Judge David G. Larimer. Court Reporter/Transcriber Christi A. Macri, email: christimacri50@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

**A-8**

| | | Redaction Request due 1/19/2017. Redacted Transcript Deadline set for 1/30/2017. Release of Transcript Restriction set for 3/29/2017. (JHF) (Entered: 12/29/2016) |
|---|---|---|
| 12/29/2016 | | Writ of Continuing Garnishment Issued (Moira Flannery dba Bluebird Enterprises). (JHF) (Entered: 01/11/2017) |
| 01/11/2017 | 60 | CLERK'S NOTICE of Post Judgment Garnishment/Instructions to Debtor (Moira Flannery dba Bluebird Enterprises).(JHF) (Entered: 01/11/2017) |
| 01/11/2017 | | Remark: original Writ of Continuing Garnishment and two certified copies and original Clerk's Notice of Post Judgment Garnishment/Instructions sent to Kevin D. Robinson of Buffalo U.S. Attorney's Office. (JHF) (Entered: 01/11/2017) |
| 01/20/2017 | 61 | CLERK'S CERTIFICATE/INDEX as to Steven Ray filed and electronically sent to Court of Appeals. (JHF) (Entered: 01/20/2017) |
| 02/08/2017 | 62 | Certificate of Service by USA as to Steven Ray *Bluebird Enterprises* (Robinson, Kevin) (Entered: 02/08/2017) |
| 03/01/2017 | 63 | Certificate of Service by USA as to Steven Ray (Robinson, Kevin) (Entered: 03/01/2017) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/16/2017 16:44:13 | | | |
| **PACER Login:** | at000090:2508629:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:15-cr-06004-DGL-MWP |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

APPEAL,CASREF,CLOSED_2016

# U.S. DISTRICT COURT
## U.S. District Court, Western District of New York (Rochester)
## CRIMINAL DOCKET FOR CASE #: 6:15-cr-06115-DGL-MWP-1

Case title: USA v. Ray                          Date Filed: 08/11/2015
                                                Date Terminated: 09/15/2016

Assigned to: Hon. David G. Larimer
Referred to: Hon. Marian W. Payson

**Defendant (1)**

**Steven Ray**                    represented by  **Steven Ray**
*TERMINATED: 09/15/2016*                          23689-055
                                                  ALLENWOOD
                                                  FEDERAL PRISON CAMP
                                                  Inmate Mail/Parcels
                                                  P.O. BOX 1000
                                                  WHITE DEER, PA 17887
                                                  PRO SE

                                                  **Jason E. Abbott**
                                                  Fitzsimmons, Nunn, Fitzsimmons &
                                                  Plukas, LLP
                                                  16 E. Main Street
                                                  Suite 300
                                                  Rochester, NY 14614
                                                  585-546-5270
                                                  Fax: 585-546-8129
                                                  Email: jabbott@fitznunn.com
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*
                                                  *Designation: CJA Appointment*

                                                  **William C. Dedes**
                                                  45 Exchange Boulevard
                                                  Suite 929
                                                  Rochester, NY 14614
                                                  585-325-4300
                                                  Fax: 585-325-6075
                                                  Email: dedeslaw@gmail.com
                                                  *TERMINATED: 08/26/2015*
                                                  *LEAD ATTORNEY*
                                                  *Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| TAMPERING WITH A WITNESS, VICTIM OR INFORMANT 18:1512(c) (2) (2) | 84 months, concurrent with the sentence imposed in 15-CR-6004; 3 years supervised release, concurrent with the supervised release term imposed in 15-CR-6004; fine waived; $309,511.55 restitution, the same restitution amount imposed in 15-CR-6004; $100 SPA |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| INTIMIDATION OR FORCE AGAINST WITNESS 18:1512(b)(1) (1) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

| USA | represented by | **Craig R. Gestring** |
|---|---|---|

U.S. Attorney's Office
100 State Street
Rochester, NY 14614
585-263-6760
Fax: 585-263-6226
Email: craig.gestring@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: government attorney*

**Kevin D. Robinson**
U.S. Attorney's Office
Federal Centre
138 Delaware Avenue
Buffalo, NY 14202
716-843-5804
Fax: 716-551-3196
Email: kevin.d.robinson@usdoj.gov

A-8.3

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/11/2015 | 1 | INDICTMENT as to Steven Ray (1) count(s) 1, 2. (JHF) (Entered: 08/12/2015) |
| 08/18/2015 | | Case unsealed as to Steven Ray (CAM) (Entered: 08/18/2015) |
| 08/18/2015 | 2 | Arrest Warrant Returned Executed on 8/18/15 in case as to Steven Ray. (JHF) (Entered: 08/18/2015) |
| 08/18/2015 | 3 | TEXT ORDER OF REFERRAL Hon. Marian W. Payson, United States Magistrate Judge, is hereby designated to act in this case as follows: All pre-trial matters in this case are referred to the above-named United States Magistrate Judge, including all pre-trial matters that a Magistrate Judge may hear and determine pursuant to 28 U.S.C. Section 636(b)(1)(A), and those which a Magistrate Judge may hear and thereafter file a report and recommendation for disposition pursuant to Section 636(b)(1)(B). All procedural aspects of matters properly before the Magistrate Judge under this Order, including scheduling and the filing of briefs or other supporting material, shall be determined by the Magistrate Judge. All motions or applications shall be filed with the Clerk and made returnable before the Magistrate Judge. IT IS SO ORDERED. Signed by Hon. David G. Larimer on 8/18/15.(JHF) (Entered: 08/18/2015) |
| 08/18/2015 | 4 | Minute Entry for proceedings held before Hon. Marian W. Payson:Arraignment as to Steven Ray (1) Count 1,2 held on 8/18/2015. The government moves to unseal the indictment. Request granted. Defendant advised of rights. Government summarizes charges. Mr. Dedes advises the Court he has not been fully retained, but he will represent him for arraignment and the detention hearing. The government moves for detention on risk of flight and risk of obstruction. Defendant pleads not guilty. Detention Hearing/Set Scheduling Deadlines: 8/21/15 @ 2:30 p.m.Appearances: Craig Gestring, AUSA; Defendant with William Dedes, Esq.; Jennifer Fish, USPO and Jacqueline Zornow, USPO(Digital Recording)(CAM) (Entered: 08/21/2015) |
| 08/21/2015 | 5 | CJA 23 Financial Affidavit by Steven Ray. (CAM) (Entered: 08/25/2015) |
| 08/21/2015 | 6 | Minute Entry for proceedings held before Hon. Marian W. Payson:Detention Hearing as to Steven Ray held on 8/21/2015. Mr. Dedes advises the Court he will not continue as retained counsel in the this case, but he will continue his representation in 15-CR-6004L. Defendant requests court-appointed counsel. Defendant is directed to complete a financial affidavit. The governments proffer will also apply to the motion to revoke release in 15-CR-6004L. Government proffers. Defendant proffers. Pursuant to the defendants request, the decision on the motion to detain is reserved pending defendants sentencing in 15-CR-6004L. Appearances: Craig Gestring, AUSA; Defendant with William Dedes, Esq.; Jacqueline Zornow, USPO and Jeffrey Mileham, USPO(Digital Recording) (CAM) (Entered: 08/26/2015) |
| 08/25/2015 | | |

| | | Set/Reset Deadlines/Hearings as to Steven Ray: Attorney Appointment set for 8/26/2015 09:00 AM before Hon. Marian W. Payson. (CAM) (Entered: 08/25/2015) |
|---|---|---|
| 08/26/2015 | 7 | Minute Entry for proceedings held before Hon. Marian W. Payson:Attorney Appointment Hearing as to Steven Ray held on 8/26/2015.Jason Abbott is appointed as counsel. Status Conference/Set Scheduling Deadlines: 9/14/15 @ 9:00 a.m. TIME FROM 8/26/15 THROUGH 9/14/15 EXCLUDED IN THE INTEREST OF JUSTICE.Appearances: Craig Gestring, AUSA; Defendant with Jason Abbott, Esq. and Williams Dedes, Esq.(Digital Recording) (CAM) (Entered: 08/28/2015) |
| 09/14/2015 | 8 | Minute Entry for proceedings held before Hon. Marian W. Payson:Status Conference as to Steven Ray held on 9/14/2015. Defendant requests an adjournment to review discovery. Court to render its decision on the motion to detain on 10/2/15 @ 2:00 p.m. Motion scheduling deadlines will also be set on 10/2/15. TIME FROM 9/14/15 THROUGH 10/2/15 EXCLUDED IN THE INTEREST OF JUSTICE.Appearances: Craig Gestring, AUSA; Defendant with Jason Abbott, Esq.(Digital Recording) (CAM) (Entered: 09/18/2015) |
| 09/22/2015 | 9 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Steven Ray held on 8/21/15 before Judge Marian W. Payson. Court Reporter/Transcriber Christi A. Macri, email: christimacri50@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/13/2015. Redacted Transcript Deadline set for 10/23/2015. Release of Transcript Restriction set for 12/21/2015. (JHF) (Entered: 09/22/2015) |
| 10/01/2015 | 10 | MOTION by Steven Ray to adjourn the continuation of the detention hearing scheduled for 10/2/15 and to exclude tiem. (CAM) (Entered: 10/01/2015) |
| 10/01/2015 | 11 | ORDER granting 10 Motion as to Steven Ray to adjourn the continuation of the detention hearing set for 10/2/15 and to exclude time. The continuation of the detention hearing/status conference is set for 10/7/15 @ 9:00 a.m. Time from 10/1/15 through 10/7/15 excluded in the interest of justice. Signed by Hon. Marian W. Payson on 10/1/15.(CAM) (Entered: 10/01/2015) |
| 10/07/2015 | 12 | Minute Entry for proceedings held before Hon. Marian W. Payson:Continuation of Detention Hearing as to Steven Ray held on 10/7/2015.Pursuant to defendants request, the Court issues its ruling on the pending motion to detain. The motion to detain is granted on obstruction and witness intimidation. Scheduling deadlines set. Discovery to be completed by 10/14/14. Motions to be filed by 11/23/15. Response to be filed by 12/7/15. Argument set for 12/9/15 @ 9:30 a.m. TIME 10/7/15 THROUGH 11/23/15 EXCLUDED IN THE INTEREST OF JUSTICE. Appearances: Bradley Tyler, AUSA for Craig Gestring, AUSA; Defendant with Jason Abbott, Esq.; Jacqueline Finucane, USPO(Digital Recording) (CAM) (Entered: 10/15/2015) |
| 10/15/2015 | 13 | ORDER as to Steven Ray, ( Discovery completed by 10/14/2015., Motions due by 11/23/2015., Responses due by 12/7/2015., Oral Argument set for 12/9/2015 |

|            |    |                                                                                                                                                                                                                                                                                                                                                 |
|------------|----|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |    | 09:30 AM before Hon. Marian W. Payson.), ORDER TO CONTINUE - Ends of Justice as to Steven Ray Time excluded from 10/15/15 until 11/23/15. Signed by Hon. Marian W. Payson on 10/15/15.(CAM) (Entered: 10/15/2015)                                                                                                                                            |
| 10/15/2015 | 14 | ORDER OF DETENTION as to Steven Ray. Signed by Hon. Marian W. Payson on 10/15/15.(CAM) (Entered: 10/15/2015)                                                                                                                                                                                                                                        |
| 11/24/2015 | 15 | MOTION by Steven Ray to adjourn the scheduling deadlines and to exclude time. (CAM) (Entered: 11/24/2015)                                                                                                                                                                                                                                           |
| 11/24/2015 | 16 | ORDER granting 15 Motion as to Steven Ray to adjourn the scheduling deadlines and to exclude time. Motions to be filed by 12/23/15. Response to be filed by 1/6/16. Argument set for 1/12/16 @ 9:30 a.m. Time from 11/24/15 through 12/23/15 excluded in the interest of justice. Signed by Hon. Marian W. Payson on 11/24/15.(CAM) (Entered: 11/24/2015) |
| 12/17/2015 | 17 | PLEA AGREEMENT as to Steven Ray. (JHF) (Entered: 12/17/2015)                                                                                                                                                                                                                                                                                        |
| 12/17/2015 | 18 | Minute Entry for proceedings held before Hon. David G. Larimer:Plea Hearing as to Steven Ray held on 12/17/2015, Plea entered by Steven Ray (1) Guilty Count 2. -PROBATION NOTIFIED OF PLEA- Sentencing set for 1/21/2016 10:00 AM before Hon. David G. Larimer. (Tape #FTR.)(PR) (Entered: 12/18/2015)                                                |
| 01/21/2016 | 19 | Minute Entry for proceedings held before Hon. David G. Larimer:Status Conference as to Steven Ray held on 1/21/2016. The Court adjourns sentencing without date. Plaintiff must complete his obligations under the plea agreement, which must include full and complete disclosure under oath. (Tape #FTR.)(PR) (Entered: 01/25/2016)                  |
| 04/22/2016 | 21 | TEXT ORDER as to Steven Ray. Sentencing set for 5/25/2016 03:00 PM before Hon. David G. Larimer. All sentencing submissions must be filed on or before 5/18/16. IT IS SO ORDERED. Signed by Hon. David G. Larimer on 4/22/16. (PR) (Entered: 04/22/2016)                                                                                               |
| 05/11/2016 |    | Set/Reset Hearings as to Steven Ray: Sentencing reset for 6/1/2016 02:30 PM before Hon. David G. Larimer. (PR) (Entered: 05/11/2016)                                                                                                                                                                                                                 |
| 05/24/2016 | 22 | STATEMENT WITH RESPECT TO SENTENCING FACTORS by USA as to Steven Ray (Attachments: # 1 Exhibit 1-16)(Gestring, Craig) (Entered: 05/24/2016)                                                                                                                                                                                                          |
| 06/01/2016 | 23 | TEXT ORDER as to Steven Ray. Sentencing reset for 9/1/2016 10:00 AM before Hon. David G. Larimer. If defendant wishes to make supplemental sentencing submissions, they must be filed by 8/18/16; government's response by 8/25/16. IT IS SO ORDERED. Signed by Hon. David G. Larimer on 6/1/16. (PR) (Entered: 06/01/2016)                            |
| 07/28/2016 |    | Set/Reset Hearings as to Steven Ray: Sentencing reset for 9/1/2016 02:30 PM before Hon. David G. Larimer. **tIME CHANGE ONLY**(PR) (Entered: 07/28/2016)                                                                                                                                                                                             |
| 08/26/2016 | 24 |                                                                                                                                                                                                                                                                                                                                                    |

A-8.6

| | | STATEMENT WITH RESPECT TO SENTENCING FACTORS by USA as to Steven Ray (Attachments: # 1 Exhibit Attachments 1-8)(Gestring, Craig) (Entered: 08/26/2016) |
|---|---|---|
| 09/01/2016 | 27 | Minute Entry for proceedings held before Hon. David G. Larimer:Sentencing held on 9/1/2016 for Steven Ray (1), Count(s) 1, Dismissed; Count(s) 2, 84 months, concurrent with the sentence imposed in 15-CR-6004; 3 years supervised release, concurrent with the supervised release term imposed in 15-CR-6004; fine waived; $309,511.55 restitution, the same restitution amount imposed in 15-CR-6004; $100 SPA. (Tape #FTR.)(PR) (Entered: 09/13/2016) |
| 09/07/2016 | 25 | PRESENTENCE INVESTIGATION REPORT (Sealed) as to Steven Ray. (JHF) (Entered: 09/07/2016) |
| 09/12/2016 | 26 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Steven Ray held on 9/1/16 before Judge David G. Larimer. Court Reporter/Transcriber Christi Macri, email address: christimacri50@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/3/2016. Redacted Transcript Deadline set for 10/13/2016. Release of Transcript Restriction set for 12/12/2016. (TF) (Entered: 09/13/2016) |
| 09/15/2016 | 28 | JUDGMENT as to Steven Ray (1), Count(s) 1, Dismissed; Count(s) 2, 84 months, concurrent with the sentence imposed in 15-CR-6004; 3 years supervised release, concurrent with the supervised release term imposed in 15-CR-6004; fine waived; $309,511.55 restitution, the same restitution amount imposed in 15-CR-6004; $100 SPA. Additional certified copies forwarded to USPO, USM, US Attorney, Debt Collection, Financial Department. Signed by Hon. David G. Larimer on 9/14/16.(JHF) (Entered: 09/15/2016) |
| 09/20/2016 | 29 | NOTICE OF APPEAL. (Abbott, Jason) (Entered: 09/20/2016) |
| 09/20/2016 | 30 | TRANSCRIPT REQUEST by Steven Ray for proceedings held on 09/01/2016, 01/21/2016 (Abbott, Jason) (Entered: 09/20/2016) |
| 10/27/2016 | 31 | MOTION APPLICATION FOR WRIT OF CINTINUING GARNISHMENT (WALTBERT COMPANY) by USA as to Steven Ray. (Robinson, Kevin) (Entered: 10/27/2016) |
| 10/28/2016 | 32 | CJA 20 as to Steven Ray: Authorization to Pay Jason E. Abbott. Amount: $9,264.39, Voucher # 0209-0000048. Signed by Hon. David G. Larimer on 10/25/16.(JHF) (Entered: 10/31/2016) |
| 10/31/2016 | | Writ of Continuing Garnishment Issued (Waltbert Company, LLC). Original writ and two certified copies sent to Kevin D. Robinson, Buffalo U.S. Attorney's Office. (JHF) (Entered: 10/31/2016) |
| 10/31/2016 | 33 | CLERK'S NOTICE of Post Judgment Garnishment/Instructions to Debtor (Waltbert Company, LLC). Original Clerk's Notice of Post Judgment Garnishment/Instructions to Debtor (Waltbert Company, LLC) sent to Kevin D. Robinson, Buffalo U.S. Attorney's Office. (JHF) (Entered: 11/08/2016) |
| 11/16/2016 | 34 | |

| | | Certificate of Service by USA as to Steven Ray *and Waltbert Company, LLC* (Robinson, Kevin) (Entered: 11/16/2016) |
|---|---|---|
| 11/30/2016 | 35 | DEFENDANT'S Request for Hearing in re Waltbert Company, LLC, by Steven Ray. (JHF) (Entered: 12/08/2016) |
| 12/02/2016 | 36 | ANSWER of Garnishee as to Steven Ray by Waltbert Company, LLC. (JHF) (Entered: 12/08/2016) |
| 12/22/2016 | 37 | MOTION APPLICATION FOR WRIT OF CONTINUING GARNISHMENT by USA as to Steven Ray. (Robinson, Kevin) (Entered: 12/22/2016) |
| 12/29/2016 | 38 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Steven Ray held on 1/21/16 before Judge David G. Larimer. Court Reporter/Transcriber Christi A. Macri, email: christimacri50@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/19/2017. Redacted Transcript Deadline set for 1/30/2017. Release of Transcript Restriction set for 3/29/2017. (JHF) (Entered: 12/29/2016) |
| 12/29/2016 | | Writ of Continuing Garnishment Issued (Citizens Bank). (JHF) (Entered: 01/11/2017) |
| 01/11/2017 | 39 | CLERK'S NOTICE of Post Judgment Garnishment/Instructions to Debtor (Citizens Bank). (JHF) (Entered: 01/11/2017) |
| 01/11/2017 | | Remark: original Writ of Continuing Garnishment and two certified copies and original Clerk's Notice of Post Judgment Garnishment/Instructions sent to Kevin D. Robinson of Buffalo U.S. Attorney's Office. (JHF) (Entered: 01/11/2017) |
| 01/20/2017 | 40 | CLERK'S CERTIFICATE/INDEX as to Steven Ray filed and electronically sent to Court of Appeals. (JHF) (Entered: 01/20/2017) |
| 02/08/2017 | 41 | Certificate of Service by USA as to Steven Ray *and Citizens Bank* (Robinson, Kevin) (Entered: 02/08/2017) |
| 02/28/2017 | 42 | TEXT ORDER as to Steven Ray re 35 Defendant's Request for a Heairng filed by Steven Ray. The Government's brief in opposition to defendant's request is due on or before 3/28/2017. The Court will review the papers to determine if argument is necessary and if so, the parties will receive notice of the argument date. IT IS SO ORDERED. Signed by Hon. David G. Larimer on 2/28/17.(PR) (Entered: 02/28/2017) |
| 03/01/2017 | 43 | Certificate of Service by USA as to Steven Ray (Robinson, Kevin) (Entered: 03/01/2017) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/16/2017 17:01:36 | | |
| **PACER Login:** | at000090:2508629:0 | **Client Code:** | |

Case 16-3271, Document 28, 03/29/2017, 2000569, Page23 of 147

A-8.8

| Description: | Docket Report | Search Criteria: | 6:15-cr-06115-DGL-MWP |
|---|---|---|---|
| Billable Pages: | 5 | Cost: | 0.50 |

AO 455 (Rev. 01/09) Waiver of an Indictment

# United States District Court
### for the
### Western District of New York



United States of America

v.

STEVEN RAY

*Defendant*



Case No.  15-CR-6004

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date:   February 26, 2015

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____William Dedes, Esq._____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_Hon. Marian W. Payson, U.S. Magistrate Judge_
*Judge's printed name and title*

**A-10**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,                         No. 15-CR-6004 (DGL)

                                                         **INFORMATION**
          -vs-                                              (Felony)

STEVEN RAY,                                              **Violations:**
                                                  18 U.S.C. § 1341 and § 510(a)(2)
_____Defendant.

## COUNT I

### The United States Attorney Charges:

1.      Between January 2013 and August 2014, in the Western District of New York, the defendant, STEVEN RAY, with intent to defraud, did devise a scheme and artifice to defraud and willfully participated in a scheme and artifice to defraud, with knowledge of its fraudulent nature and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises in that the defendant did knowingly and unlawfully deposit fraudulent and forged United States Treasury checks to which he was not entitled into bank accounts the defendant controlled.


2.      It was part of the scheme and artifice to defraud that between January 2013 and August 2014, in the Western District of New York, the defendant, STEVEN RAY, held and controlled several bank accounts.

3.     It was further part of the scheme and artifice to defraud that between January 2013 and August 2014, in the Western District of New York, the defendant, STEVEN RAY, obtained United States Treasury checks through the United States Postal Service, including but not limited to, Social Security Supplemental Security Income checks, Department of Education checks, and Thrift Savings Plan Payments, that had been issued to other individuals.

4.     It was further part of the scheme and artifice to defraud that the defendant, STEVEN RAY, fraudulently forged the endorsements for the United States Treasury checks he had unlawfully received and caused those checks to be deposited into the bank accounts he owned and controlled.

5.     Between January 2013 and August 2014, in the Western District of New York, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud the United States Treasury, the defendant, STEVEN RAY, knowingly caused to be delivered by mail according to the direction thereon over 120 United States Treasury checks totaling more than $405,000.

**All in violation of Title 18, United States Code, Section 1341.**

## COUNT II

**The United States Attorney also Charges:**

Between January 2013 and August 2014, in the Western District of New York, the defendant, STEVEN RAY, with intent to defraud, did pass, utter and publish, and attempt to

**A-12**

pass, utter and publish, as true 120 Treasury checks of the United States with an aggregate

face value in excess of $1,000, bearing falsely made and forged endorsements thereon, and

did deposit said checks in bank accounts which he controlled.

**All in violation of Title 18, United States Code, Section 510(a)(2).**

DATED:   Rochester, New York, February 26, 2015.

WILLIAM J. HOCHUL, JR.
United States Attorney
Western District of New York

BY:

CRAIG R. GESTRING
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
100 State Street
Rochester, New York 14614
585/263-6760
craig.gestring@usdoj.gov

3

Case 6:15-cr-06004-DGL-MWP   Document 16   Filed 02/27/15   Page 1 of 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

vs.

STEVEN RAY,

            Defendant.

ORDER OF REFERRAL
TO TAKE GUILTY PLEA

15-CR-6004L

FEB 2 7 2015

MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

      The above-referenced criminal case is hereby referred to United States Magistrate

Judge Marian W. Payson, with the consent of the defendant, to take defendant's plea of guilty,

to conduct an allocution, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and

to (A) determine if the plea is knowingly and voluntarily made and not coerced, and (B)

recommend if the plea of guilty should be accepted, reporting to the undersigned as soon as

is practicable.

      IT IS SO ORDERED.

Dated:     February 26, 2015
             Rochester, New York

                          DAVID G. LARIMER
                          U.S. Senior District Judge

**STIPULATED AND AGREED**, by and between the undersigned, counsel for respective
parties:

Dated:     February 26, 2015
             Rochester, New York

Steven Ray, Defendant

Craig Gestring, AUSA

William Dedes, Defense Counsel

Marian W. Payson
Marian W. Payson
U.S. Magistrate Judge

**A-14**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

-vs-

STEVEN RAY,

Defendant.

**REPORT & RECOMMENDATION**

15-CR-6004L

By Order of Judge David G. Larimer dated February 26, 2015, the above case was referred to me, with the consent of the defendant, to take the defendant's plea of guilty and to conduct an allocution pursuant to Rule 11 of the Federal Rules of Criminal Procedure for a Report and Recommendation.  The following is my Report and Recommendation as to the defendant's plea of guilty.

On February 26, 2015, the defendant entered a plea of guilty in this case, as set forth in the transcript of the plea proceeding.  In accordance with my oral Report and Recommendation at the close of the plea proceeding, it is my Report and Recommendation that the defendant's plea of guilty accords with the requirements of Rule 11 of the Fed. R. Crim. P. and that your Honor adjudge the defendant guilty of the offense(s) to which the guilty plea was offered.

**IT IS SO ORDERED.**

Marian W Payson

Marian W. Payson
United States Magistrate Judge

Dated:        Rochester, New York
              February 26, 2015

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

15-CR-6004 (DGL)

STEVEN RAY,

            Defendant.

_____

## PLEA AGREEMENT

The defendant, STEVEN RAY, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

## I.   THE PLEA AND POSSIBLE SENTENCE

1.      The defendant agrees to waive indictment and to plead guilty to a two count Information which charges a violation of Title 18, United States Code, Section 1341 (Mail Fraud), for which the maximum possible sentence is a term of imprisonment of 20 years, a fine of $250,000, a mandatory $100 special assessment and a term of supervised release of 5 years, and a violation of Title 18, United States Code, Section 510 (Forging Treasury Checks), for which the maximum possible sentence is a term of imprisonment of 10 years, a fine of $250,000, a mandatory $100 special assessment and a term of supervised release of 3

years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. Pursuant to Title 18, United States Code, Section 3663(a)(3), the parties agree that the Court shall require restitution as determined by the Probation Department, presently believed to be in the amount of $309,511.55, to be paid to the victims as part of the defendant's sentence as set forth in Section VII below.

3. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in Paragraph 1 of this agreement.

## II.  ELEMENTS AND FACTUAL BASIS

4. The defendant understands the nature of the offenses set forth in Paragraph 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime for

Count I:

    a.    The defendant knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises;

    b.    The defendant acted with the intent to defraud; and

    c.    In advancing, furthering, or carrying out the scheme, the defendant caused the mails to be used.

The defendant further understands that if this case proceeded to trial, the government would

be required to prove beyond a reasonable doubt the following elements of the crime for

Count II:

    a.    The defendant passed, uttered, or published a Treasury check of the United States or attempted to do so;

    b.    The Treasury check bore a falsely made or forged endorsement or signature; and

    c.    The value or aggregate value of the Treasury checks exceeded $1,000.

## FACTUAL BASIS

5.  The defendant and the government agree to the following facts, which form the basis for

the entry of the pleas of guilty including relevant conduct:

    a.    STEVEN RAY owned, maintained, and controlled numerous bank accounts in the Rochester area, within the Western District of New York. The accounts were in his name as well as that of businesses he was affiliated with including STERAY of Rochester, and C&C Deli.

    b.    Between January 2013 and August 2014, RAY fraudulently endorsed and passed and uttered over 120 checks issued by the United States Treasury by depositing said checks into his various bank accounts. These checks were all issued to other people and included Social

Security payments, tax refunds, and other money drawn from the Treasury. The endorsements on these checks were all fraudulent when deposited.

c.     As part of his scheme to defraud the United States Treasury, RAY received checks that had been caused to be mailed to him using the United States Postal Service.

d.     As a result of this fraud involving Treasury checks, RAY obtained $405,681.85 to which he was not otherwise entitled.

## III.  SENTENCING GUIDELINES

6.     The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

## BASE OFFENSE LEVEL

7.     The government and the defendant agree that Guidelines § 2B1.1(a)(1) applies to the offenses of conviction and provides for a **base offense level of 7**.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

8.     The government and the defendant agree that the following specific offense characteristics do apply:

a.     The **fourteen level** increase pursuant to Guidelines §2B1.1(b)(1)(H) (loss amount over $400,000).

-4-

b.      The **four level** increase pursuant to Guidelines §2B1.1(b)(2)(B) (more than 50 victims).

## ADJUSTED OFFENSE LEVEL

9.      Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offenses of conviction is **25.**

## ACCEPTANCE OF RESPONSIBILITY

10.     At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines §3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level downward adjustment pursuant to Guidelines §3E1.1(b), which would result in a **total offense level of 22**.

## CRIMINAL HISTORY CATEGORY

11.     It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the pleas of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

12.     It is the understanding of the government and the defendant that, **with a total offense level of 22 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of 41 to 51 months, a fine of $7,500 to $75,000, and a period of supervised release of 1 to 5 years**. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in Paragraph 1 of this agreement.

13.     The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

14.     The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the pleas of guilty based on the sentence imposed by the Court.

## IV.  STATUTE OF LIMITATIONS

15.     In the event the defendant's pleas of guilty are withdrawn, or convictions vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any other criminal offense involving or related to mail or wire fraud, theft of government money, or forged Treasury checks which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.  GOVERNMENT RIGHTS AND RESERVATIONS

16.     The defendant understands that the government has reserved the right to:

a.      provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.      respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.      advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and/or a fine and the method of payment;

d.    modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

e.    oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

17.    At sentencing, the government will move to dismiss the complaint pending against the defendant under Magistrate's No. 14-MJ-4116.

18.    The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VI.  APPEAL RIGHTS

19.    The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine, and supervised release period advocated by the government which is set forth in Section III, Paragraph 12, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the

-8-

government, the defendant reserves the right to argue the correctness of the defendant's sentence.

20.     The defendant understands that by agreeing to not collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

21.     The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release period advocated by the government which is set forth in Section III, Paragraph 12, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VII. RESTITUTION AND FINANCIAL PENALTY PROVISIONS

22.     The defendant understands that the Court **must require restitution in the amount determined by the probation department, presently believed to be $309,511.55, to be paid to the victims** as part of the sentence pursuant to Sentencing Guidelines § 5E1.1 and Title 18, United States Code, Section 3663A.

23.    The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.   The defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing.   The defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. The defendant agrees to discuss or answer any questions by the United States relating to the defendant's complete financial disclosure. The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office.   The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court.   In addition, the defendant promises that the defendant will make no such transfers in the future.

24.    The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

-10-

25.    The defendant understands and agrees that the Court, at the time of sentencing, may order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and subject to immediate enforcement by the United States.   The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.

26.    The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, and not subject to forfeiture, will be used to satisfy any debts owed by the defendant to the United States and/or agencies thereof.

## VIII.   TOTAL AGREEMENT AND AFFIRMATIONS

27.    This plea agreement represents the total agreement between the defendant, STEVEN RAY, and the government.   There are no promises made by anyone other than

those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

WILLIAM J. HOCHUL, Jr.
United States Attorney
Western District of New York

BY: _____ AUSA

CRAIG R. GESTRING
Assistant United States Attorney

Dated: February 26, 2015

I have read this agreement, which consists of 12 pages. I have had a full opportunity to discuss this agreement with my attorney, William Dedes, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
STEVEN RAY
Defendant

Dated: February 26, 2015

_____
WILLIAM DEDES, ESQ.
Attorney for the Defendant

Dated: February 26, 2015

-12-

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                vs.                                  15-CR-6004(DGL)

STEVEN RAY,

                Defendant.

_____

## STATEMENT OF THE GOVERNMENT WITH RESPECT
## TO SENTENCING FACTORS

**PLEASE TAKE NOTICE**, that the government hereby adopts all findings of the April 2, 2015 Pre-sentence Report with respect to sentencing factors in this action.

      Should the defendant present any letters of support or sentencing statement to the Court, the United States will move to strike the items from the record if this office is not provided with copies at least three business days prior to sentencing.

      The defendant is required by 18 U.S.C. §3013 to pay the sum of $200 at the time of sentencing. Immediately after sentencing, the defendant must pay the amount due by personal check, cashier's check or certified funds to the United States District Court Clerk.

      Restitution in the amount of $309,511.55 must be ordered by the Court to be paid to the victims as set forth in paragraph 56 of the Pretrial Services Report as part of any sentence pursuant to Sentencing Guidelines Section 5E1.1 and Title 18, United States Code, Section 3663A.

      In the event present counsel for the defendant will continue to represent the defendant after sentencing in regard to the collection of unpaid financial obligation(s), it is

[1]

requested that a letter so advising be sent to:

> Asset Forfeiture/Financial Litigation Unit
> U.S. Attorney's Office--WDNY
> 138 Delaware Avenue
> Buffalo, New York 14202

If a letter is not received within 10 days of sentencing, the defendant will be directly contacted regarding collection of the financial obligation(s).

The United States reserves the right to respond to any filings made by the defendant.


I.      **The Facts**

STEVEN RAY was part of an organized nationwide scheme to profit from stolen, forged and counterfeit United States Treasury checks. During all times relevant to this investigation, RAY owned and operated C&C Deli in Rochester. In addition to the traditional deli role, C&C also acted as a check cashing business for a short time. RAY operated at least 6 different bank accounts with 4 different banks under the C&C Deli name. He also maintained at least 7 additional bank accounts in 5 area banks under various assumed business identities, to include STERAY of Rochester.

RAY started depositing stolen and forged counterfeit United States Treasury checks into at least 13 banks accounts he controlled beginning sometime in January of 2013. In addition to stolen and forged Treasury checks, RAY also deposited other government and private checks issued to and stolen from real people throughout the United States[1]. These checks contained Social Security benefits, tax refunds, retirement benefits, loan disbursements, and other monies and were meant for individuals. Many of the people

---

[1] RAY knowingly deposited stolen checks from multiple locations including; New York, South Carolina, Georgia, Florida, Louisiana, and Alabama.

whose checks RAY fraudulently deposited relied on those benefit payments in order to make ends meet and pay bills which thereafter went unpaid due to the defendant's actions.

As part of the scheme, RAY would have unnamed associates mail stolen Treasury checks to him at his Brockport NY residence via United States Postal Service Express Mail packages. These checks were stolen from recipients around the United States by other members of the organization. RAY admitted during the investigation that he knew that the name and address for the sender were false on these Express Mail packages. In order to mask his own involvement in the scheme, RAY would have the Express Mail packages containing the stolen checks addressed to his adult daughter who lived at the same address. RAY claimed that he did this so that she could sign for the packages when he was not home, however, that was not true. Postal records related to those items showed that none of the Express Mail packages addressed to his daughter required a signature for delivery. RAY received at least 20 such Express Mail pieces between March and August 2013.

In addition to being stolen, each of the Treasury checks RAY deposited in his accounts contained forged signatures. During the course of the investigation, federal agents interviewed the rightful recipients of the checks who confirmed that they never received their checks, authorized anyone to deposit their checks, or endorsed their checks.

RAY was interviewed during the investigation by federal agents from the United States Postal Inspection Service and the Internal Revenue Service. During that interview, RAY was evasive and simply outright lied to the investigators. At first he claimed that someone came into his deli in Rochester claiming to be a tax preparer from Georgia. RAY falsely told the agents that he agreed to cash checks for that mystery man's clients, who were

[3]

having trouble cashing checks on their own. However, RAY made up a new lie when agents confronted him about a particular $33,577 stolen Treasury check he deposited in May 2013.

In that case, a stolen Treasury check in the amount of $33,577 made out to Carrie S. was deposited into one of the defendant's STERAY Accounts at the ESL Federal Credit Union in May 2013. RAY was shown a copy of this check by federal agents and falsely stated that Carrie S. came into the C & C Deli in person and expressed interest in purchasing a property owned by RAY on *Mount Read Boulevard*, Rochester. He further stated that Carrie S. used the Treasury check as a down payment for the property. RAY claimed that he did not know Carrie S., but that she provided photo ID which matched the check. RAY said he was contacted by Carrie S. a few days later to check on the closing process and he advised her that he was waiting for the Treasury check to clear the bank. ESL subsequently advised RAY the check was not going to clear. RAY said he did not have any further contact with Carrie S. and did not have any contact information for her.

However, RAY told a different lie to an ESL fraud investigator who contacted the defendant by phone about that specific check. During that recorded conversation, RAY told the ESL investigator that the $33,577 Treasury check was given to him by Carrie S. for a down payment for the purchase of a building he owned on *Goodman Street* in Rochester. RAY also told the ESL Investigator that he had done business with Carrie S. in the past and that said she frequently visited him. RAY told the bank investigator that he saw Carrie S.'s ID to verify who she was.

Carrie S., who resides in California, was contacted during the course of the investigation. She had filed a report with the Treasury Department reporting the non-receipt of this check. She told investigators that she did not receive her check, did not endorse her

[4]

check, did not cash her check, did not deposit her check, did not authorize anyone to negotiate her check, and did not receive proceeds from her check. She also told law enforcement that she did not know RAY, STERAY, or the C & C Deli. Carrie S. stated she did not attempt to purchase any property in Rochester with her Treasury check.

As a result of this scheme to defraud, RAY obtained $405,681.85 to which he was not otherwise entitled to.


**A.     An individualized assessment of this defendant supports the imposition of a guideline sentence of 51 months imprisonment**

The government submits that the sentencing guideline calculations which, based on an adjusted offense level of 22, and a criminal history category of I, supports a guideline sentence of 41-51 months imprisonment, a fine of $7,500 to $75,000, supervised release of up to 5 years, and a $200 special penalty assessment, is appropriate. However, more specifically, the United States asks this Court to sentence STEVEN RAY to 51 months incarceration as part of any sentence in this case. The defendant must also be ordered to pay restitution in the amount of $309,511.55.

It is well settled that calculating the advisory sentencing guidelines is the first step in determining the defendant's ultimate sentence, after which the Court must consider the §3553(a) factors. *United States v. Dorvee*, 616 F.3d 174, 180 (2010) quoting *United States v. Gall*, 552 U.S. 38, 49-50 (2007); see also, *United States v. Aumais*, 656 F.3d 147 (2d Cir. Sept. 8, 2011). In *Aumais*, decided in September 2011, the Second Circuit upheld the guidelines sentence imposed by the district court, noting that the sentence was based upon an "individualized assessment" of the §3553(a) factors. *Aumais*, at 157.

[5]

In this case and considering the §3553(a) factors, *as individually applied to this defendant*, a guideline sentence of 51 months imprisonment is both appropriate and required. For this reason, the government asks this Court to impose a sentence of 51 months imprisonment, supervised release, a fine, order restitution, and impose a $200 special penalty assessment.

STEVEN RAY benefited by stealing from the elderly, the poor and the disabled. Many of the people whose stolen checks RAY deposited were waiting for their Social Security Disability checks or other supplemental government benefits. In the words of R.G.[2], one of the victims, RAY'S conduct prevented him from paying his rent or his utilities. He goes on to say that the $500 loss he suffered, while only a tiny fraction of the total monies RAY stole, required R.G. to rely on food from local food pantries. (see *Victim Impact Statement*, R.G. dated March 9, 2015.)

Another victim, S.K., wrote that the "…missing check made [her] life hectic." She goes on to detail the trouble she had resolving the problem with the Social Security Administration, and how RAY'S actions left her in "…dire straits" since she lived on a fixed monthly income. The defendant's conduct forced S.K. to borrow money from family members. (see *Victim Impact Statement,* S.K. dated March 8, 2015). It is clear that the defendant's actions had a real and significant impact on his victims.

It is equally clear that RAY knew that what he was doing was unlawful. The facts show that RAY lied to federal agents about his conduct and his role in the scheme to deal in stolen and forged United States Treasury Checks. RAY lied to the agents about his contacts

---

[2] All victim names have been redacted to their initials only.

[6]

with the mysterious Georgia tax preparer. RAY lied to the agents about his contact with Carrie S. and her $33,577 Treasury Check. RAY lied again when he spoke to bank investigators about his friendship with Carrie S. RAY lied to the agents about why he was having packages sent to his house but in his daughter's name. RAY lied, and as set forth below, continues to lie to this Court, because he knows that what he did was wrong and he simply refuses to acknowledge his guilt.

Amazingly, RAY tries to mitigate his actions in his April 27 letter to this Court by complaining that he only "profited a small commission." (see Exhibit-1, *Defendant's Request for Downward Departure*, at page 3, dated and submitted April 27, 2015[3]). RAY also complains in this letter that "…approximately $60,000 of [the deposited funds] were debited to my account" (see *Id.*) as if to suggest perhaps that he himself were entitled to restitution. RAY also repeatedly refers to his actions as a "lapse of good judgment" on his part. (see *Id.*) However, the facts are inconsistent with a single "lapse" and rather suggest a pattern of organized criminal activity. Specifically, RAY'S conduct involved his receipt of no less than 128 stolen and forged Treasury Checks which he deposited across 13 different bank accounts over a 19 month period.

STEVEN RAY lied to cover up his involvement in a scheme to steal, forge, and cash Treasury Checks[4]. His lies and thefts involved almost a half million dollars of other people's

---

[3] This sentencing material was never electronically filed on PACER. A redacted version is attached hereto as Exhibit-1.

[4] It should be noted that during the contacts with federal agents, RAY repeatedly and continuously identified himself as being with the Brockport Fire Department and tried to bond with the agents as a "fellow first responder".

money – specifically money which belonged to people who could not afford to be without their checks. And that conduct deserves a sentence of incarceration of 51 months.

**B.**   **RAY continues to lie to the Court by submitting false, forged, and counterfeit sentencing material.**

In support of his request for a downward departure, STEVEN RAY submitted a sentencing packet to the Court through Counsel on April 27, 2015. Included in this packet was background material on the defendant and specific sections on the defendant's *Education*, *Training*, *Service to the Community*, and *Restitution* (see Exhibit-1). RAY also provided several letters of support in this packet, and again, in another packet under separate cover dated May 11, 2015. The government submits that, as set forth in detail below, the defendant knowingly and willfully provided false information and forged support materials to the Court in an attempt to improperly influence his sentence.

RAY repeatedly uses his work with the Brockport Fire Department as the most significant reason for this Court to depart from a guideline sentence of imprisonment. In support of this, his sentencing statement specifically emphasizes his training and service as a volunteer firefighter, citing his completed course work and his service history. (see Defendant' Sentencing Packet, Page 1; information supplied to the US Probation Office by the defendant contained in the PSR at paragraphs 108, 109, and 110; the defendant's letter to the Court dated April 27, 2015; as well as in each letter of support contained in the Defendant's Sentencing Packet). The defendant also includes specific acts of heroism undertaken as a volunteer firefighter in his filing in support of his motion for a downward departure.

[8]

**The Sweden Hills Incident**

The defendant specifically cites to four "incidents" in his filing which were not mentioned in the PSR, but which he believes deserve special mention. First among those is what he titles the "Sweden Hills Incident." This related to an alleged response in which RAY claims to have been the first to respond to the drowning of a three year old child. RAY claims that he dove into the pool, pulled the three year old child out of the water, called 9-1-1, and then performed CPR on the child on the scene and all the way to the hospital. This never happened. While it is sadly true that the child (who was actually 2 years old), drown in an above ground swimming pool, Monroe County Sheriff's reports of the actual incident do not support RAY'S version of events. Specifically the reports contain witness statements from those who were *actually* on the scene, those who *actually* pulled the child from the pool, those who *actually* called 9-1-1, and those who *actually* performed CPR on the child. STEVEN RAY was not involved in any of those actions. He might have been on the scene, along with multiple other first responders, but he did not engage in any of the heroics he claimed to this Court.

**SUNY Brockport Incident**

The defendant also claims that he was the first person to respond to an emergency call at SUNY Brockport involving a student who was critically injured following a fall down some stairs. RAY again claims heroic intervention, in this case going so far as to claim that *he* performed an emergency tracheotomy with a pocket knife which enabled rescue workers

[9]

to deliver oxygen to the injured student[5]. Again, like the drowning incident referenced above, this tragic event did take place and a SUNY Brockport student was critically injured after falling down stairs. However, RAY, again, lied about his involvement in this incident. The actual first responder who performed the emergency tracheotomy was identified by federal agents and confirmed the facts during a telephone interview. RAY might have been present, but his role is deliberately and falsely inflated in his filing to the Court in an attempt to mitigate his sentence.

**The J.L. Matter[6]**

The defendant writes that he voluntarily takes care of a paraplegic young man, J.L., out of a spirit of goodwill in support of his motion for a downward departure. RAY specifically references the things he does to support J.L. to include bathing J.L. and taking care of his personal needs. The statement is written in the present tense and suggests that the defendant was actively caring for J.L. on a daily basis at the time the Sentencing Statement was submitted. RAY'S altruistic actions are supported by a letter, purportedly written by J.L., which was also submitted to this Court.

In the letter submitted by RAY, J.L. writes that he is a 40 year old, who was born with spinal damage. He writes that he met RAY 6 years ago, and that they became friends. J.L. says that his father died as a result of the fire service, which caused him to form a bond with RAY. The letter then goes on to detail J.L.'s medical condition, and how RAY volunteered to assist J.L. with his personal care needs. J.L. refers to RAY'S medical training

---

[5] RAY incorrectly refers to the emergency procedure as "performing a stoma."
[6] This individual will only be identified by his initials for privacy reasons.

and his status as an EMT. J.L. claims that RAY was able to secure a wheelchair bus which allowed him to take J.L. to the park, the store, and even the pool. J.L. then weighs in on the nature of the charges against RAY, opining that they are out of character for RAY. J.L. concludes his letter of support by asking this Court to "take a look at what good this man has done." The letter, if true, would be a powerful attestation of the defendant's character. The only problem is that *the real J.L. did not write this letter.*

On May 7, 2015, federal agents interviewed J.L. at his home. J.L. told the agents that: he had no knowledge of a letter submitted in support of STEVEN RAY; he did not write any letter in support of STEVEN RAY; and that he did not authorize anyone else to submit such a letter on his behalf. (See Exhibit-2, *Memorandum of Interview, J.L.*, dated May 7, 2015). J.L. went on to say that RAY only worked for him for a short time (approximately 2 months), after which J.L. fired RAY because he was unreliable and would miss his shifts.

J.L. was presented with a copy of the letter submitted to this Court, allegedly written by him in support of RAY, and J.L. denied ever seeing the letter. J.L. was clear that the signature on the letter was not his. Moreover, J.L. noted that his name was misspelled in two places on the letter. J.L. also said the letter incorrectly reported his age, the length of time he had known RAY, and the circumstances surrounding his father's death. J.L. also told federal agents that RAY never took J.L. on any "bus ride". J.L. provided the agents with a sworn affidavit outlining the inaccuracies of the letter.

It is clear from these facts that STEVEN RAY did not perform the heroic acts he claimed in the sentencing materials he submitted to this Court in support of downward departure sentence. It is equally clear that STEVEN RAY did not perform the altruistic acts related to J.L. which he claimed to have performed in the sentencing materials he submitted

to this Court in support of downward departure sentence. Likewise, the letter of support allegedly written by J.L. is clearly a forgery. The only conclusion is that the defendant deliberately *and with fraudulent intent* submitted false and misleading materials to this Court in an attempt to seek a down departure sentence.

When put in context with the fraudulent nature of the charged conduct and the defendant's multiple false statements during the investigation, the government suggests that submitting *false material to the Court* requires this Court to sentence the defendant to the high end of the applicable sentencing guideline range. Specifically, Section 3553(a) requires the Court to consider the character of the defendant, as well as the need for the sentence to promote respect for the law and afford adequate deterrence. The United States submits that submitting forged and counterfeit sentencing materials, after having pled guilty to crimes involving forged and counterfeit signatures on Treasury Checks, demands a significant sentence.

This conduct shows that STEVEN RAY has no respect for the Court or the law, and that the fraudulent criminal conduct at the heart of this case is not aberrant conduct, but rather the way that RAY does business.

**CONCLUSION**

The Section 3553(a) factors, as enumerated in Title 18 of the United States Code, list among other things, the need for the sentence to reflect the nature and circumstances of the offense, the seriousness of the offense, the need for deterrence, and the need to protect the

[12]

public from further crimes. All these factors support the imposition of a sentence of 51 months imprisonment, a period of supervised release of five years, a fine, and a $200 special penalty assessment. The defendant must also pay restitution in the amount of $309,511.55. Such a sentence is appropriate for both general as well as specific deterrence due to the nature of the crimes charged and the nature of the defendant's criminal behavior.

The defendant is clearly not repentant, and his actions in submitting forged and fraudulent material to the Court in the guise of legitimate sentencing materials strongly shows the true nature of the defendant and the contempt he has for the Court.

For these reasons, the United States respectfully requests the Court consider the Title 18, U.S.C. Section 3553A factors as they apply *individually to this defendant* and impose a guideline sentence of 51 months imprisonment, a period of supervised release, a fine, and a $200 special penalty assessment.

DATED:     Rochester, New York, May 18, 2015.

WILLIAM J. HOCHUL, Jr.
United States Attorney

By: /s/ CRAIG R. GESTRING
Assistant United States Attorney
United States Attorney's Office
Western District of New York
100 State Street, Room 500
Rochester, New York  14614
Craig.Gestring@usdoj.gov

TO:     William C. Dedes, Esq., Counsel for Defendant
Jennifer L. Fish, United States Probation Department

[13]

WILLIAM C. DEDES
ATTORNEY AND COUNSELOR AT LAW
929 TIMES SQUARE BUILDING
45 EXCHANGE BOULEVARD
ROCHESTER, NEW YORK 14614-1587
dedeslaw@gmail.com
(585) 325-4300 (Ext. 106)

Amiee J. Van Hout, Paralegal
(585) 325-4300 (Ext. 101)

ALSO ADMITTED TO                                                                                    (NOT FOR SERVICE OF PROCESS)
PRACTICE IN FLORIDA                                                                                       FAX: (585) 325-6075

April 27, 2015

## REQUEST FOR DOWNWARD DEPARTURE

Honorable David G. Larimer
United States District Court
Western District of New York
100 State Street
Rochester NY 14614

Re:   USA v. Ray
      Case No.: 14-MJ-4116

Dear Honorable Judge Larimer:

I represent Steven Ray as attorney in regards to the information which Mr. Ray plead guilty to and is to be sentenced before Your Honor on May 26, 2015. I would ask that you treat this letter, together with the attachments, as the Defendant's request for a downward departure.

The Presentence Investigation Report contains a number of facts, some of which I would like to emphasize and some of which I would like to supplement.

On May 26, 2015 Steven Ray will stand before you to be sentenced for the crimes for which he pled guilty to. This will be the first time that this 54 year old man has ever stood before a Judicial Officer to be sentenced for any crime whatsoever. He has never been convicted of any crime, violation or any other offense. The arrests set out in the Presentence Investigation Report resulted in no conviction. It was based upon a complaint of his bride of 11 months during a time he was going through a rather contentious divorce in which she used an Order of Protection as a sword and not a shield. As a result of those proceedings, Judge Dollinger issued a mutual No Contact Order of Protection as against his ex-wife. The action she commenced Pro Se in State Court was ultimately dismissed by Judge Dollinger following a trial of the matter.

I know he is deeply remorseful for having strayed from an otherwise spotless life. He has given much to his community as an adult and feels that his actions in this matter are entirely out of his character. Let me once again emphasize why we seek a downward modification for this defendant.

Education.

Mr. Ray received his traditional High School education from Bishop Kearney where he received his diploma. He completed courses at MCC for printing management and team management control as well as statistical process control.

Training.

Mr. Ray received EMT training at MCC having completed Firefighter 1 and 2; EMT basic; pump operations; emergency vehicle operation; accident victim extraction training; fire police training; police officer law enforcement training; apparatus operator of aerial devices; special police training; Brockport fire police officer; emergency management training conducted by Homeland Security.

Service to the Community.

Mr. Ray has been an asset to his community. I know he does not like to speak of those contributions in that regard. For the last 6 years or so he has volunteered his time as a Brockport fire official and acted as a first responder. A short list of his volunteer his 6 years with the Brockport Fire Department rising to the level of Deputy Lieutenant as well as his 6 years as an EMT with the Brockport Ambulance Core. While he tends not to emphasize his role as a first responder in the community I would like to point out to The Court some incidents which are not set forth in the Presentence Investigation Report:

a.  Sweden Hills Incident - Mr. Ray once responded as a first responder to Sweden Hills Apartment Complex, being the first to arrive, he dove into the swimming pool pulling a three year old child out of the pool. He immediately performed CPR, called 911 and administered first aid response to the child all the way to Strong memorial Hospital.

b.  Northampton Park Incident - On another occasion, he responded to a multiple casualty incident to Northampton Park. Mr. Ray called in the Mercy Flight and directed 2 helicopters, one from Canandaigua and one from Batavia to the site of the accident.

c.  SUNY Brockport Incident - Another occasion, a student at SUNY Brockport had overdosed and fallen down a set of stairs. Once again, Mr. Ray was the first to respond. Upon determining that the student needed immediate assistance in breathing, he performed a stoma using a pocket knife to open a passage the individual to breath, got oxygen to the student, stabilizing the student, until such time the ambulance crew arrived to take over the first aid to the student.

d.  J    L   Matter - Mr. Ray takes care of a paraplegic young man, J    L   , by bathing him and taking care of his personal needs on a daily basis. I believe that Mr. L   wrote a letter on his behalf to The Court, which is attached to this package.

These are just a few of the examples of service to his community that Steve Ray has performed, not as a criminal but as a caring concerned trained first responder. I am sure there are other incidences as well; however Steve finds it difficult to talk about those incidences.

Restitution.

As to the issue of restitution Mr. Ray himself received a small portion of the treasury funds which were negotiated. They were processed through a check cashing business that he ran through his former deli. He received a small commission on those services. A large portion of the monies were in fact never negotiated by the bank and were charged back to his account in the approximate amount of $60,000.00 which were deposited back into his checking account.

I am attaching here copies of letters which we received on Steve's behalf from his friends and family, as well as a letter of responsibility from Mr. Ray himself. I must apologize for the letters which have been misaddressed to Magistrate Payson. Apparently, because she handled the pre-plea proceedings these individuals were operating under the impression that Judge Payson would be sentencing Mr. Ray. However, I would ask that Your Honor treat these letters as being addressed to you as sentencing Judge.

For all of the above reasons we would ask for a downward modification.

I am also providing a copy of the entire package to the probation department, as well as the Assistant United States Attorney, Mr. Gestring via electronic mail.

As always, if Your Honor or The Court should have any questions or concerns, or require any thing further, please do not hesitate to contact me.

Very truly yours,

William C. Dedes

WCD: avh
.cc S. Ray
.cc C. Gestring, AUSA - Craig.Gestring@usdoj.gov
.cc US Probation Department - jennifer_fish@nywp.uscourts.gov

## STEVEN RAY
78 Talamore Trail
Brockport, New York 14420

———————

April 27, 2015

Honorable David G. Larimer
United States District Court
Western District of New York
100 State Street
Rochester NY 14614

> Re:    USA v. Ray
>            Case No.: 14-MJ-4116

Dear Honorable Judge Larimer:

I have been asked by my attorney to submit a letter of responsibility in regard to my pleading guilty and for which Your Honor is to sentence me on the 26th of May 2015.

I realize my involvement in this situation was wrong and I should have avoided it. It was a lapse of good judgment on my part. Initially, the checks which came in were small amounts and I believed that if they were not valid they would be returned and my accounts debited for the deposits. Regrettably, a number of the checks were cashed, despite the fact that approximately $60,000.00 of these funds were debited to my account.

Of the checks which were deposited, I only profited a small commission. I do know, however, that my depositing of these checks under these circumstances was not an appropriate way to handle the situation.

Truly, I am sorry for the mistake in judgment in negotiating these Treasury Checks. More importantly, I feel great remorse towards any of the individuals that may have been harmed by my actions.

I have worked my entire life for the sole purpose of helping other individuals. I was trained an EMT and worked many years as an EMT and Deputy Lieutenant of the Brockport Fire Department.

I am deeply remorseful for having hurt, not only my family and friends, but more importantly those individuals who I have helped in the past and whom I hope to continue helping in the future.

For those reasons, I would ask that Your Honor be lenient at the time of sentencing and allow me to get past this rather difficult point in my life and be of some service to the community, if at all possible.

Very truly yours,

Steven Ray

.cc C. Gestring, AUSA - Craig.Gestring@usdoj.gov
.cc US Probation Department - jennifer_fish@nywp.uscourts.gov

April 26, 2015

Timothy Russell



Honorable David G. Larimer United States Court

100 State Street

Rochester New York 14614

Dear Honorable Judge Larimer,

My name is Tim Russell I have been with the Brockport Fire Department for over 10 years which I have been Captain for the last seven. I have worked with Mr. Ray as he was my Lieutenant for six years and I also worked with him at C&C Deli in 2012, and then under the new owner later in the year. I worked under the direction of his ex-wife Denise Ray during the transition.

Mr. Ray as a fire officer I would have to say is an incredible individual. He has been the top first responder for over five years. He has been first on scene for numerous MVA's and because of which has saved more lives than I can count. He has had more training than anyone individual under my command.

I also had the opportunity to work and train in a new position as a Manager of C&C deli going forward with a change of ownership. I was under the direct command of his now ex-wife, at which I was not appreciative of her work ethics and people skills. I find it hard to believe that Mr. Ray had much involvement or full knowledge to the day to day operations of the Deli. Mr. Ray's ex-wife was so controlling and He was not around the business due to other jobs and responsibilities. His ex-wife decided to move out of the marital home and leave her three children with him. The one child worked for me and three months later committed suicide which left things uneasy. Mr. Ray was even more distant because as I have explained he saves lives and he was unable to reach his step son in time. However his ex –wife went on as if nothing happened because she left the marriage and felt the children were his responsibility.

I know based on the past 10 years and the bond that I have with Mr. Ray that the charges brought against him are definitely not of his character. I would ask your Honor to please consider a lighter sentence and a possibility of a lesser charge. Mr. Ray has been and is still a great asset to our community and has been destroyed by this incident. He has been greatly damaged and shows tremendous regret for everyone involved.

Very Truly Yours,

Timothy Russell

2C-43 BFD Captain



March 10,2015

Honorable Marian W. Payson
US District Court
Western District
100 State Street
Rochester NY 14614
RE: Case No: 14-mj-4116


Dear Honorable Judge Payson,


I am a 40 year old whole was born with spinal damage. I have fulluse of my upper body. I usually am bed or wheel chair ridden. I met Steve about 6 years ago and became friends due to similar likings. My dad was in the Hilton FireDepartment which latter took his life. Due to my deformity and various surgeries I am unable to use the toilet but however am able to last long periods without any help due to bags and tubes.

Steve offered to help with my care and joined Medical Solutions and because of his EMT status they were able to put me in his care. He has come and gave me showers in a wheeled chair twice a week. Delivered groceries and when weather permitted been able to secure a wheel chair bus to take me to parks, stores and even poolside at various complexes were he takes care of other people. He was able to purchase a fire scanner for me to listen to and has given me his radio call sign that I can hear when he is in the area on call. I enjoy to listen and a few times he has been to my location and performed various first responder tasks to help save a neighbor.

I do not believe that the charges that he is involved in are of his character . I can only state for my self and the neighbors here we have always trusted him and continue. I would ask to take a look at what good this man has done and I am sure he always will .

Sincerely,




March 2, 2015

Honorable Marian W. Payson
United States District Court Western District of New York
Western District of New York
100 State Street
Rochester, NY 14614

Re:  USA v. Ray

    Case No.: 14-MJ-4116

Dear Honorable Judge Payson:

I am writing this letter on behalf of my relative, Steven L. Ray.  I understand that Mr. Ray is to
be sentenced by Your Honor in regard to a matter which is pending in Your Honor's Court.

Steven has always been a very dependable, hard worker and has always been available to take
care of his family and especially his daughter.

He has worked for the community of Brockport as a volunteer fire fighter, EMT as well as a fire
explorer trainer for younger individuals for eight (8) years.  Steven has been a very honest, loyal
as well as a confident person always reaching out to help others in need.

I would hope that Your Honor would take in to consideration all the good characteristics of this
individual and be lenient when it comes time for his sentence.

Very Truly Yours,

Sharon L. Karvetski

Michael Homer
Hewlett-Packard
Brockport New York 14420
April 1st 2015

Honorable Judge David G. Larimer
United States District Court
100 State Street
Rochester New York 14614

Dear Judge Larimer,

I am writing you in reference to Steven Ray. I have known Mr. Ray for 7 years now. I have known his
family and friends for the same. Mr Ray was the first responder and chief officer at the sceen of my
brothers accident on Christmas Eve 2013. I am very grate full for his dedication to trying to save lives . I
know him and I am positive he tried everything in his power to help my brother. I have witnessed him at
my mother Neighbor's home in Sweden Hills , were he responded to a child drowning at a day care pool.
Mr. Ran jumped in began CPR had numerous trucks  and ambulances on the road. At which time Mr. Ray
when more help arrived left on a Monroe Ambulance continuing to help the child we're he was greeted
by the childs family. At no time would I ever think that anything that is going on with him at this time is
in his character. Mr. Ray is a helper, provider and an individual that would do anything to save someone.
I would ask your Honor to please look at this individuals character an Honor to our community and be
lenient when sentencing him.

Very truly yours

Michael Homer

Michael Homer



March 27,2015

Honorable  David G. Larimor
United States District Court
Western District of New York
100 State Street
Rochester New York 14614

    Re:USA v. Ray
    Case No: 14-MJ-4116

Dear Honorable Judge Larimor:

I am writing this letter on behalf of our friend Steve Ray. I understand that Mr. Ray is to be sentenced by Your Honor in regard to a matter which is pending in Your Honor's court.

I writing on his behalf because in the four years that we have known Steve Ray he has been a loyal and true friend. May of 2014 We lost our son, my only child, Steve provided not only emotional support at this time, but helped with moving items from my son's home and cleaning and moving a storage unit for us. Also the day after my son's funeral my husband was hospitalized with pneumonia. Steve provided me with food so that I did not have to cook during this time. When my husband came home Steve stated that if we had any problems he had his paramedic equipment in the car and could reach us before emergency service could be at our home. December, 2014, My husband and I traveled to Israel We asked Steve Ray to be the caretaker of our home. Steve is capable of handing any emergency if there were to be a problem while we were away. Steve Ray has been a good and a true friend. We plan to travel to Israel again this coming December, and hopefully Steve will again consent to care for our home.

Steve is a volunteer firefighter and paramedic. Related to his abilities he is a first responder for emergency services. I would hope that your Honor would take into consideration all of the good characteristics of this individual and be lenient when it comes time for his sentence. Hopefully Steve Ray will be able to again, provide the emergency services to our community that he provide for many years.

Very Truly yours,

Judy A. Clement.

WIEDMAN, VAZZANA, CORCORAN & VOLTA, P.C.

ATTORNEYS AND COUNSELLORS

5 SOUTH FITZHUGH STREET

ROCHESTER, NEW YORK 14614

TELEPHONE (585) 454-5850

FACSIMILE (585) 454-1273

FREDERICK WIEDMAN (1957)
FREDERICK WIEDMAN, JR. (1999)
———
JAMES G. VAZZANA
CHRISTOPHER H. CORCORAN
SANDRA E. VOLTA*

*ALSO ADMITTED IN FLORIDA

PARALEGALS
JOANNE LAMAGNA
AMANDA L. BACH

April 9, 2015

Hon. David G. Larimer
United States District Court
Western District of New York
100 State Street
Rochester, New York 14614

**Re:    USA v. RAY**
**Estate Planning**

Dear Judge Larimer:

I am writing this letter on behalf of Steven Ray, who I have known for over forty years.    I have
represented his parents, grandmother and his brother and, over the years have handled his Estate
Planning.

I understand that Mr. Ray is to be sentenced by your Honor in regard to a matter which is pending in
your Court.

I am writing on his behalf because of all of his volunteer work for his community, namely, a volunteer
Lieutenant for the Brockport Fire Department, work in the Brockport Fire Police Office, Greece Special
Police Department and Brockport Ambulance Medic.

I would hope that your Honor would take into consideration all of the good that this individual has done
for the communities he has resided in.

Respectfully Submitted,

**WIEDMAN, VAZZANA, CORCORAN & VOLTA, P.C.**

James G. Vazzana

JGV/alb
Cc:    Mr. Steven Ray

Honorable Marian W. Payson                                              March 25, 2015

United State District Court

Western District of New York

100 State Street

Rochester, NY 14614

    Re:    USA vs. Ray

    Case No 14-MJ-4116


Dear Honorable Judge Payson;

I am writing this letter on behalf of my friend and (past) neighbor Steven Ray.

I understand that Mr. Ray is to be sentenced by Your Honor in regard to a matter which is pending in Your Honor's Court.

Mr. Ray (Steve) has been a friend and a great neighbor for the better part of 20 plus years. (We lived next door to him on Talamora Trail in Brockport –we later moved to the Albany area a few years ago, and now to Raleigh, NC for work). All that aside, Steve has always been there to lend a hand at any time in almost any capacity. Steve would plow not only our driveway but many of our neighbors as well, never asked he just did it.

He would often come over to help when changing brake pads, locating an electrical problem on a vehicle or planting a tree.

In addition, Steve has been a volunteer fire-fighter/EMT for a number of years in Brockport. He is very dedicated and an asset to the department.

In conclusion, I would hope that Your Honor would take into consideration Steve's good characteristics and be lenient when it comes time for his sentence. Steve is a hardworking, thoughtful friend and good neighbor.

Respectfully submitted;

Stephen J Wehner

**Stephen J. Wehner**
*Director of Safety*

**North Carolina Electric
Membership Corporation**

A Touchstone Energy® Cooperative

P.O. Box 27306
Raleigh, NC 27611-7306
3400 Sumner Boulevard
Raleigh, NC 27616

Direct: (919) 875-2439
(800) 662-8835, Ext. 2439
Cell: (919) 247-0889
Fax: (919) 645-3437
steve.wehner@ncemcs.com

- Steven went to Pardu Rd. School and to Bishop Kearney.

- Steven was a security guard for a time, and worked with me.

- He went to work for Hammer Litho, and always, helping people get jobs.

- He ran, J. Mackinzie, LTD., for Jim Hammer, and continued to help people get jobs.

- He did home siding work, for a time.

- He went in business, at C+C Deli.

- He also joined the Volunteer Fire Dept., Brockport, N.Y., and past the fitness test.

Case 16-3271, Document 28, 03/29/2017, 2000569, Page67 of 147

- He worked very hard to become a Lt., in Brockport Fire Dept.

- He would leave his personal vehicle along the road, to go with the ambulance, to the hospital.

- He help take care of a disabled person, for a while.

- Finally, he worked hard to keep his daughter on the straight and narrow.

Sincerely,

Lawrence Kay

Steven's Father

## MEMORANDUM OF INTERVIEW

| | | |
|---|---|---|
| CASE NUMBER | : | 1990585-MT |
| PERSON INTERVIEWED | : | J███ L███ |
| PLACE OF INTERVIEW | : | ████████████████████████████ |
| DATE OF INTERVIEW | : | May 7, 2015 |
| TIME OF INTERVIEW | : | 11:30 AM – 11:54 AM |
| INTERVIEWED BY | : | Nichole Rodriguez, US Postal Inspection Service
Alan Roth, Internal Revenue Service |

On May 7, 2015, J███ L█████████ agreed to be interviewed at his residence, ██████████████ concerning a letter submitted in his name to Judge Marian W. Payson. When agents arrived at ██████ residence at approximately 10:30 AM, ██████ nurse and health aid were consulting with him. ██████ asked the agents to return after his appointment with his nurse.

At approximately 11:30 AM, agents returned to ██████ residence. ██████ health aide, ████████ was present throughout the entire interview. Agents explained to ██████ that letters had been submitted to the Federal Courts on behalf of Steven Ray (Ray) and that one of those letters was addressed from J███ L███. ██████ responded he had no knowledge of the letter, did not write the letter, and did not authorize anyone to submit the letter on his behalf.

██████ has multiple health issues and requires the assistance of health aides. ██████ aides are employed by Medical Solutions. Medical Solutions allows customers such as ██████ to find, interview, and choose their aides. After a customer chooses an aide, Medical Solutions employs them. ██████ stated that Ray worked for him as an aide for approximately two months in early 2014. ██████ was introduced to Ray by ██████████. ████████ aide at that time. At that time, Ray was ██████████████ landlord. ██████ said he fired Ray because Ray was unreliable and would commonly miss his shifts.

██████ was provided a copy of the letter addressed to Judge Payson. After reviewing the letter, ██████ pointed out multiple inaccuracies in the letter. Both the header of the letter and the signature contained incorrect spellings of L███'s first name. The letter contained the spelling ████████ while the correct spelling is ████████ stated he was 30 years old, while the letter stated he was 40. ██████ said his father died of cancer, not from an incident with the fire department. ██████ said he never went on a bus with Ray. ██████ said he met Ray approximately two to three years ago, not six years ago. ██████ stated the signature on the letter was not his. ██████ said he had never seen the letter before. ██████ wrote a sworn statement, outlining inaccuracies of the letter.

███ said he had not spoken to Ray in a long time. ███ said Ray did not ask him to write a letter or instruct him to say he wrote a letter.

███████████████████████████████████████████████████████████

Nichole Rodriguez
Postal Inspector

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | } | Criminal No. 15-CR-6004 |
| Plaintiff, | } |  |
| v. | } | DEFENDANT'S REQUEST FOR EVIDENTIARY HEARING REGARDING SENTENCING |
| STEVEN RAY, | } |  |
| Defendant. | } | Sentencing Date: Nov. 24, 2015 |

INTRODUCTION

Defendant Steven Ray, stands convicted by his guilty plea to one count of mail fraud in violation of 18 U.S.C. § 1341, and one count of forging treasury checks in violation of 18 U.S.C. § 510.  The plea was entered pursuant to an agreement that, under the Sentencing Guidelines, Mr. Ray's sentencing range would be a term of imprisonment of 41 to 51 months, a fine of $7,500 to $75,000, and a period of supervised release of 1 to 5 years.  However, the plea agreement also reserved to Mr. Ray "the right to recommend a sentence outside the Sentencing Guideline range." *See* Steven Ray Plea Agreement (Docket no. 18) at  ¶ 13.

In support of Mr. Ray's subsequent application for a downward departure, various materials, including character letters, were submitted on Mr. Ray's behalf on or about April 30, 2015.  *See* April 27, 2015, Request for Downward Departure (Docket no. 24).  These materials contained examples of incidents wherein Mr. Ray acted as a first responder, including one involving a drowning child, *i.e.*, the "Sweden Hills Incident," and another involving an injured college student, *i.e.*, the "SUNY Brockport Incident."   There was also a letter, dated March 10, 2015, submitted pertaining to Mr. Ray's care of Jeffrey Lane ("J.L."), a paraplegic.

On or about May 18, 2015, the Government filed its position paper regarding sentencing.

1

*See* Statement of the Government with Respect to Sentencing Factors (Docket no. 22).  The

Government challenged Mr. Ray's characterization of his involvement in the Sweden Hills

Incident ("he did not engage in any of the [first responder] heroics * * * claimed") and the SUNY

Brockport Incident ("his [first responder] role is deliberately and falsely inflated").  *Id.* at 9-10.

The Government also stated that the "letter of support allegedly written by J.L. is clearly a

forgery."  *Id.* at 10-12.  Other than what was submitted as part of the Government's sentencing

statement, which consisted of a copy of Mr. Ray's Request for Downward Departure and a May

7, 2015, "Memorandum of Interview" regarding Lane, no other materials were provided to the

defense.  The Government now asks that the Court impose the maximum term of imprisonment,

as set forth under the Sentencing Guidelines.

For the reasons set forth herein, the defense requests that an evidentiary hearing be held

regarding several of the Government's assertions as contained in its sentencing statement.

DISCUSSION

Mr. Ray acknowledges that he owned and operated a check cashing business located at

C&C Deli in Rochester, New York.  He also acknowledges that he deposited and negotiated a

certain number of treasury checks.  As set forth in the downward departure materials, Mr. Ray is

remorseful over his actions which resulted in the present plea, and is anxious to move forward

with this matter and make amends for the suffering he has caused.

In an effort to convince the Court that such contrition is feigned and that Mr. Ray remains

"unrepentant," however, the Government claims that several of the instances of good conduct set

forth in the downward departure materials are "fraudulent."  Other than the aforementioned

"Memorandum of Interview" regarding Lane, no material has been disclosed for sentencing

2

purposes providing an evidentiary basis for the Government's assertion.

It is undisputed that Mr. Ray was a volunteer of the Brockport Fire Department for many years.  It is undisputed that he was also a volunteer EMT for many years with the Brockport Ambulance.  During those years of service, it is beyond cavil that Mr. Ray engaged in efforts to assist victims in life threatening situations.  As a first responder he neither sought glorification of his work, nor sought public adulation for his actions.  Nonetheless, he was present in a number of situations where his assistance was absolutely necessary to administer first aid to individuals who were in need of critical care.  In his years as a volunteer fireman and as an EMT, the number of occasions where he came to the aid of other is innumerable.  The situations set out in Mr. Ray's prior submission to the Court were merely meant to be illustrative of his long volunteer career providing aid to the community.  Mr. Ray specifically and categorically denies the allegations contained in the Government's sentencing statement that his service was false or fabricated.

In regards to the Sweden Hills Incident, my office confirmed with the Brockport Fire Department that Mr. Ray was present for, and assisted in, pulling the drowned child out of the pool.  The Government's assertion that Mr. Ray fabricated his participation in this rescue is false.  Although the defense was not provided with the information that the Government reviewed to make its unfounded claim, the materials reviewed clearly did not include information obtained by *actually* speaking with members of the Brockport Fire Department about the Sweden Hills Incident.  Consequently, fundamental fairness requires that a hearing be held on this factual allegation at sentencing under the authority of Federal Rule of Criminal Procedure 32(i)(2)-(3), or that this claim by the Government be withdrawn.

The Government's assertion that Mr. Ray fabricated his involvement in the SUNY

3

Brockport Incident is similarly unsubstantiated.  This claim is, apparently, based exclusively upon a "telephone interview" with the "actual first responder * * * identified by federal agents." *See* Docket no. 22 at 10.  The identity of this individual has never been revealed to the defense, and it is not known whether there is any record of this interview.  Given the Government's (mis)characterization of Mr. Ray's involvement in the Sweden Hills Incident, fundamental fairness requires that the name of this individual and record of interview be disclosed to the defense and a hearing be held on this factual allegation at sentencing under the authority of Federal Rule of Criminal Procedure 32(i)(2)-(3), or that this claim by the Government be withdrawn.

Finally, the Government charges that the letter attributed to Lane in Mr. Ray's application for a downward departure was fraudulently submitted to the Court, *i.e.*, it was not drafted by Lane.  In doing so, the Government implies that the services Mr. Ray provided to Lane were either nonexistent or unworthy of consideration.  Indeed, the Government suggests that, if Mr. Ray performed the services set forth in the letter, then this "would be a powerful attestation of the defendant's good character."  *See* Docket no. 22 at 11.

According to the Government and assuming that Jeffrey Lane was truthful during his interview by its agents, the only "altruistic acts related to J.L." which were "untrue" involved riding a bus with Mr. Ray (*id.* at 11).  Therefore and in the view of the Government, bathing Lane, purchasing Lane a fire scanner, delivering Lane's groceries and otherwise seeing to Lane's medical needs are inconsequential and not reflective of Mr. Ray's good character.  Such a position is farcical.

It must also be noted that the Government has tendered no proof that Mr. Ray generated

4

the letter which Lane has denied drafting or that Mr. Ray had reason to suspect its authenticity. Although not referenced in their materials, it is notable that, according to paperwork disclosed in the companion case of *United States v. Steven Ray* (15-CR-6115), Mr. Ray made inquiries of Lane on May 18, 2015, as to the author of the March 10, 2015, character letter.  By itself and in the absence of any evidence to the contrary, this is powerful evidence undermining the Government's assertion that Mr. Ray "deliberately and with fraudulent intent submitted false and misleading materials."

For this reason, fundamental fairness requires that a hearing be held on the issue of the March 10, 2015, character letter, including live testimony taken from Jeffrey Lane regarding his relationship with Mr. Ray, under the authority of Federal Rule of Criminal Procedure 32(i)(2)-(3).

## CONCLUSION

It is respectfully submitted to the Court that the Government is overzealous in it attempt to paint Mr. Ray in the worst possible light.  In doing so, it has made several intimations to the Court that, upon closer examination, require an evidentiary hearing to assess their true value. The defense requests such a hearing.

Dated:        November 12, 2015                    Respectfully submitted,

                                                   s/ Jason E. Abbott, Esq.
                                                   Jason E. Abbott, Esq.
                                                   Attorney for Defendant
                                                   Fitzsimmons, Nunn & Plukas, LLP
                                                   16 East Main Street, Suite 300
                                                   Rochester, NY 14614
                                                   (585) 546-5270
                                                   jabbott@fitznunn.com

5

CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2015, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which would then electronically notify the following CM/ECF participant:

1.    Craig R. Gestring
      Assistant United States Attorney


                          s/ Jason E. Abbott, Esq.
                          Jason E. Abbott, Esq.
                          Attorney for Defendant
                          Fitzsimmons, Nunn & Plukas, LLP
                          16 East Main Street, Suite 300
                          Rochester, NY 14614
                          (585) 546-5270
                          jabbott@fitznunn.com

# Fitzsimmons, Nunn & Plukas, LLP

**ATTORNEYS AT LAW**

James B. Fitzsimmons
Mark S. Nunn
John B. Fitzsimmons
Richard A. Plukas

————————

Jason E. Abbott

16 East Main Street
Suite 300
Rochester, New York 14614

Telephone (585) 546-5270
Fax (585) 546-8129
Long distance toll free #: 1-888-394-5343
(Fax not for service of papers)

John A. Buyck
1919-2006
E. James Springer
1930-1992
Robert H. Wendt
1903-1987

November 13, 2015

CHARACTER REFERENCE SUPPLEMENT

Hon. David G. Larimer
United States District Court
Western District of New York
100 State Street
Rochester, NY 14614

Re:   USA v Ray (Case no. 15-CR-06004)

Dear Judge Larimer:

Enclosed herewith as Exhibit 1, please find a letter of support from Sharon Karvetski, the mother of Steven Ray, as well as a letter of support from Robert Karvetski, the stepfather of Steven Ray.

It is the defense's request that you consider these letters for the purposes of sentencing.

Very truly yours,

/s/ Jason E. Abbott

Jason E. Abbott, Esq.
jabbott@fitznunn.com

cc:   C. Gestring, AUSA. - via craig.gestring@usdoj.gov

September 17, 2015

Honorable David G. Larimer

United States District Court

Western District of New York

100 State Street

Rochester, NY 14614

Re:  USA v. Ray

Case No.: 14-MJ-4116

Dear Honorable Judge Larimer

I am writing this letter on behalf of my son, Steven L. Ray.  I understand that my son is to be sentenced by Your Honor in regard to a matter which is pending in Your Honor's Court.

Steven has always been a very dependable, hard worker and has always been available to take care of his family and especially his daughter.

He has worked for the community of Brockport as a volunteer fire fighter, EMT as well as a fire explorer trainer for younger individuals for eight (8) years.  Steven has been a very honest, loyal as well as a confident person always reaching out to help others in need.

I have not been able to appear in court for Steven due to his younger brother who is suffering from cancer and my letter is arriving late because I was not given the correct judge's name.

I would hope that Your Honor would take in to consideration all the good characteristics of this individual and be lenient when it comes time for his sentence.

Very Truly Yours,

Sharon L. Karvetski

September 20, 2015

Honorable David G. Larimer

Western District of New York

100 State Street:

Rochester, NY  14616

Re:  USA v. Ray

   Case No.: 14-MJ-4116

Dear Honorable Judge Larimer

I am writing this letter on behalf of my step son Steven L. Ray.  I am aware of the fact that he is to be sentenced by Your Honor in regard to a matter which is pending in Your Honor's Court.

I have been married to his mother Sharon Karvetski for over 18 years and during that time I have known Steven always to be very respectful to me and my sons as well.  Steven has always been an extremely hard working individual from working as an EMT and a fire explorer trainer for young children of eight years old.  We have worked together on home jobs to repair our home and to help relatives with their home repairs.  Everything his mother Sharon had stated to you in her letter of September 17, 2015 is exactly as I have always known him to be.  I have never known an individual to work as hard as he has and to aid people as much as Steven has in all the years I have known him.  I would be proud to have him as my natural son.

I would hope that Your Honor would take in to consideration the high value I place on Steven and please be lenient on his sentencing.

Very Truly Yours,

*Robert J. Karvetski*

Robert J. Karvetski

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,              Case no. 15-CR-6004

                v.                    NOTICE OF MOTION

STEVEN RAY,

                Defendant.

_____

MOTION BY:                    Jason E. Abbott, Esq.
                              Fitzsimmons, Nunn & Plukas, LLP
                              16 East Main Street, Suite 300
                              Rochester, NY 14614

DATE, TIME & PLACE:           November 24, 2015 at 10:00 AM, before the
                              Honorable David G. Larimer, 2330 U.S. Courthouse,
                              Rochester, New York.

SUPPORTING PAPERS:            Affirmation of Jason E. Abbott, Esq., affirmed on
                              November 16, 2015, Defendant's Request for
                              Evidentiary Hearing Regarding Sentencing (Docket
                              no. 32), and all proceedings had herein.

RELIEF REQUESTED:             An Order granting the relief requested herein.

Dated: November 16, 2015

      Rochester, New York

                              s/ Jason E. Abbott, Esq._____
                              Jason E. Abbott, Esq.
                              Fitzsimmons, Nunn & Plukas, LLP
                              *Attorney for Defendant*
                              16 East Main Street, Suite 300
                              Rochester, NY 14614
                              (585) 546-5270
                              jabbott@fitznunn.com

TO: Craig Gestring, AUSA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    Case no. 15-CR-6004

                    v.                       NOTICE OF MOTION

STEVEN RAY,

                         Defendant.

_____


        Jason E. Abbott, Esq., affirms the following under penalty of perjury that:

        1.      I am an attorney licensed to practice law in the State of New York and in

the United States District Court for the Western District of New York, and I represent

the defendant, Steven Ray.

        2.      I am familiar with this case by reason of my investigation of this matter,

conversations with my client and others, and my review of the discovery material

provided to date by the government.

        3.      For the reasons set forth in Defendant's Request for Evidentiary Hearing

Regarding Sentencing (Docket no. 32), incorporated by reference herein, the defense

respectfully requests that an evidentiary hearing be held regarding several of the

Government's assertions as contained in its May 18, 2015, sentencing statement.

Dated: November 16, 2015

        Rochester, New York

                                 s/ Jason E. Abbott, Esq._____
                                 Jason E. Abbott, Esq.
                                 Fitzsimmons, Nunn & Plukas, LLP
                                 *Attorney for Defendant*
                                 16 East Main Street, Suite 300

Rochester, NY 14614
(585) 546-5270
jabbott@fitznunn.com

TO: Craig Gestring, AUSA

A-67

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    Case no. 15-CR-6004

            v.                                                  CERTIFICATE OF SERVICE

STEVEN RAY,
                        Defendant.
_____

      I hereby certify that on November 16, 2015, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which would then electronically notify the following CM/ECF participant:

    1.    Craig R. Gestring
          Assistant United States Attorney

                        s/ Jason E. Abbott, Esq.
                        Jason E. Abbott, Esq.
                        Attorney for Defendant
                        Fitzsimmons, Nunn & Plukas, LLP
                        16 East Main Street, Suite 300
                        Rochester, NY 14614
                        (585) 546-5270
                        jabbott@fitznunn.com

**A-68**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                          Plaintiff,

                                               <u>DECISION AND ORDER</u>

                                               15-CR-6004L

          v.

STEVEN RAY,

                          Defendant.
_____

      Sentencing on defendant's plea to the two count indictment charging mail fraud and forgery is scheduled for November 24, 2015.  While on release in this case, defendant was arrested in August 2015 on an indictment 15-CR-6115 charging intimidation of a witness and obstruction of justice.  Proceedings are ongoing on that indictment.

      A revised presentence report has been submitted which increases Ray's Offense Level by five points because the probation office denied Ray acceptance of responsibility and added a two point enhancement for obstruction of justice.

      Defense counsel (who represents defendant in both indictments) has objected to the revised presentence report and has requested a hearing on those paragraphs in the presentence report which set out facts relating to the intimidation of a witness and obstruction of justice.

1

Since the Government has elected to deal with this conduct in a new indictment, I think it best that decisions relative to that activity be left to the new indictment, 15-CR-6115, and not be aired at a hearing on the original charge, 15-CR-6004.   Because of the pending second indictment, it may be difficult for the defendant to engage in a sentencing hearing now when the matters at issue relate to a new indictment.   If there is a hearing, he may feel compelled to proceed at that hearing which may jeopardize his right to remain silent and not testify on the new charges.

At this point, then, I intend to proceed to sentencing without making determinations on the obstruction enhancement.   In addition, I am inclined to grant Ray the three point reduction anticipated in the plea agreement for acceptance of responsibility.   Therefore, the range would be as anticipated at the plea, 41-51 months.   The Court will consider all the factors under 18 U.S.C. § 3553(a) but, I repeat, I think the obstruction and intimidation allegations should be resolved in proceedings on the new criminal charge, 15-CR-6115.   The Court will focus primarily on the facts involving the mail fraud and forgery of the treasury checks.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        November 16, 2015.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | Criminal Nos.: 15-CR-06004 |
| Plaintiff, | } | 15-CR-06115 |
| v. | } | DEFENDANT'S SENTENCING |
| | } | MEMORANDUM AND REQUEST |
| STEVEN RAY, | } | FOR DOWNWARD DEPARTURE |
| Defendant. | } | |
| | } | Sentencing Date: January 21, 2016 |

INTRODUCTION

Defendant Steven Ray, stands convicted by his plea of guilty to mail fraud (18 U.S.C. §1341) and forging treasury checks (18 U.S.C. §510[a][2]) on February 26, 2015, and by his plea of guilty to obstructing an official proceeding (18 U.S.C. §1512[c][2]) on December 17, 2015.

The plea of guilty pertaining to mail fraud and forging treasury checks (case no. 15-CR-06004) was entered pursuant to an agreement that calculated his total offense level to be 22 with a criminal history category of I. Under the United States Sentencing Guidelines (USSG), a term of imprisonment of 41 to 51 months is recommended, followed by a period of supervised release of 1 to 5 years.

The plea of guilty pertaining to obstructing an official proceeding (case no. 15-CR-06115) was entered pursuant to an agreement that calculated his total offense level to be 14 or 16, depending on whether §3A1.1(b)(1) (vulnerable victim enhancement) of the USSG is found to be applicable, with a criminal history category of I. Under the USSG, a term of imprisonment of 15 to 21 months (reflecting a total offense level of 14) or 21 to 27 months (reflecting a total offense level of 16) is recommended, followed by a period of supervised release of 1 to 3 years.

According to the Presentence Investigation Report (PSR), and after accounting for recent

1

changes to the USSG, it is recommended that all sentences in this matter run concurrently and reflect an imprisonment range of 41 to 51 months (¶¶ 115, 116, 118).

Critically, the plea agreements in this matter allow Steven Ray to request a sentence outside the USSG recommendations, which would include a sentence of probation, notwithstanding the sentencing calculations set forth in the various materials before the Court, and Steven Ray respectfully urges the Court to consider and impose sentences of probation, as well as waive any applicable fines, special assessments and/or incarceration fees.  In the view of the defense, such a sentence is "sufficient, but not greater than necessary, to comply" with the goals of sentencing established by Congress.  18 U.S.C. §3553(a).

## PROCEDURAL BACKGROUND

As the Court is aware, Steven Ray was originally scheduled to be sentenced on the mail fraud/treasury check case this past May.  In anticipation thereof, a sentencing memorandum and request for a downward departure was filed by the defense.  This material included several character reference letters.  One of those letters, it was learned, was not generated by its purported author, Jeffrey Lane, who is a paraplegic.  This resulted in the submission of a letter by Jeffrey Lane to the Court, done at the behest of Steven Ray and which contained statements that were not true.  Ultimately, the submission of this letter resulted in a two-count indictment being returned against Steven Ray for witness tampering, as well as for obstructing an official proceeding.

To resolve this indictment and move forward to sentencing on all charges, Steven Ray pled guilty to obstructing an official proceeding in December, admitting that he knew certain statements contained in the Jeffrey Lane letter were untrue.  Steven Ray adamantly denies,

2

however, any allegation or suggestion that the letter was product of intimidation, threats or coercion directed against Jeffrey Lane.  It must also be noted that Steven Ray has been in custody on all charges since August 18, 2015.  Prior thereto, he was compliant with the terms of his pretrial release and was gainfully employed.

DISCUSSION

The defense incorporates by reference the arguments and various submissions regarding sentencing made by current and prior counsel regarding the mail fraud and forged treasury checks pleas, with certain exceptions.  For obvious reasons, the submissions ascribed to Jeffrey Lane must be disregarded, although it must still be recognized that Steven Ray acted, as set forth in the initial application for a downward departure, as a health aide to Jeffrey Lane and, as recently as July 10, 2015 (according to Government paperwork in this case), Jeffrey Lane did not rule out having Steven Ray return to work for him as his health aide.  As suggested in the prior application for a downward departure, Steven Ray's engagement in the home health industry is indicative of an individual who enjoys serving the community.

The Court must also disregard what is probably best described as attorney hyperbole regarding the so-called "SUNY Brockport Incident" referenced in the prior application for a downward departure.  As a long time member of the Brockport Fire Department and of Brockport Ambulance, Steven Ray responded numerous times to incidents involving life and death situations, including the SUNY Brockport incident.  Steven Ray did not, however, perform a tracheotomy, as indicated in the downward departure application.  The defense apologizes for this misrepresentation.  That said, Steven Ray's long history of service in both the fire department and ambulance service in Brockport is undisputed.  Such service illustrates his

3

genuine dedication to the Brockport community, as well as the community at large.

Turning to the present PSR, the defense disagrees with the application of the vulnerable victim enhancement that is set forth in paragraph 94.  The PSR refers to Jeffrey Lane as a "victim" and erroneously states that the defense has "acknowledged" that he "suffers from mental, emotional, and physical vulnerabilities," based on objections to an earlier PSR that the defense filed in November (¶ 94).  The defense communicated to the PSR's author that Steven Ray made no such acknowledgment of such "vulnerabilities" and that the PSR was attributing to Steven Ray a position held by the Government, which position was referenced by the defense solely in support of a request for an evidentiary hearing.  This is a mischaracterization that has not been corrected, and the defense objects to its inclusion.

Paragraph 94 of the PSR also states that Jeffrey Lane lives in an "assisted living facility," presumably to bolster the PSR's suggestion that he is "vulnerable," without further elaboration. *See United States v. McCall*, 174 F.3d 47, 50 (2d Cir. 1998) (noting that "broad generalizations about victims based upon their membership in a class are disfavored where a very substantial portion of the class is not in fact particularly vulnerable to the crime in question"); *see also United States v. Kerley*, 544 F.3d 172, (2d Cir. 2008) (further noting that the inquiry into a victim's vulnerability must be individualized and not based on broad generalizations).  The source of this information is not indicated and the defense respectfully submits that this is likely incorrect.  Promotional literature pertaining to the apartment complex where Jeffrey Lane lives describes the residences as being subsidized housing for individuals 62 years of age and older. Persons under 62 are permitted to reside there if "mobility impaired."  Of the 75 units at the apartment complex, only 8 are handicapped accessible.  There is no indication that the complex

4

meets the definition of an "assisted living facility" within the meaning of Section 232(b) of the National Housing Act (12 U.S.C §1715w[b][6]).  Such would require, *inter alia*, that the facility make available to residents supportive services to assist in the carrying out activities of daily living (ADL).  Other than claiming easy access "to essential services and stores, as well as emergency and health services," there is no indication that the subject apartment complex provides ADL assistance directly.

Regardless of the physical limitations that Jeffrey Lane suffers, which the defense recognizes are significant, he is not, and should not be considered, a "victim" in this case.  The vulnerable victim enhancement provides that, "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim, [the sentencing court shall] increase [the offense level] by 2 levels." USSG §3A1.1(b)(1).  "Vulnerable victim" is defined as a person "who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)," and "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." USSG §3A1.1 cmt. n. 2.  The vulnerability of the victim must bear some nexus to the criminal conduct and the defendant, generally speaking, must have singled out the vulnerable victim from a larger class of potential victims.  *See United States v. McCall*, 174 F.3d 47, 50 (2d Cir. 1998).  This enhancement, where applicable, "reflect[s] the public interest in more severely punishing those whose choice of victim demonstrates an extra measure of criminal depravity." *United States v. Hershkowitz*, 968 F.2d 1503, 1505 (2d Cir. 1992).

As stated previously, Steven Ray vigorously denies any suggestion that the subject character reference letter was product of intimidation, threats or coercion directed against Jeffrey

5

A-75

Lane.  It cannot be argued that Jeffrey Lane was the victim of the offense of obstructing an

official proceeding, the charge to which Steven Ray entered his plea.  In this case, the "victim"

would be the official proceeding and, by extension, the Court.  Moreover, proof of intimidation,

threats or coercion is not required to meet the elements of obstructing an official proceeding,

which undermines any assertion that such conduct is relevant.  Similarly, no nexus has been

identified relating Jeffrey Lane's assumed vulnerabilities to the criminal conduct.  Finally, it is

notable that Jeffrey Lane did not respond to the Victim Impact Statement that was sent to him by

the U.S. Probation Office, thereby foregoing the opportunity to explain his victimization by

Steven Ray.

In short, the vulnerable victim enhancement set forth in USSG §3A1.1(b) is inapplicable

to this case and, for purposes of the PSR, Steven Ray's total offense level for case no. 15-CR-

06115 should be calculated at 14 (which would be recorded as an adjusted offense level of "17"

at paragraph 98 to the PSR).

## SENTENCING FACTORS

The Court must "impose a sentence sufficient, but not greater than necessary,"

> (A) to reflect the seriousness of the offense, to promote respect for the  law, and to
> provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational  training,
> medical care, or other correctional treatment in the most effective  manner.

18 U.S.C. § 3553(a)(2).

In "determining the particular sentence to be imposed," the Court must consider these

purposes, the nature and circumstances of the offense and the history and characteristics of the

defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any

6

victims of the offense.  *See* 18 U.S.C. § 3553(a)(1)–(7).

It is respectfully submitted that neither defense counsel nor Steven Ray underestimate or downplay the nature, severity and gravity of the crimes committed.  As exemplified by his written statement, submitted herewith, Steven Ray is genuinely penitent for the pain he has caused.  Whether it was his involvement in the check cashing scheme, or the incident involving the submission of a letter to the Court that contained misinformation, Steven Ray is eager for the opportunity to make amends for his wrongdoing.

Accordingly, the defense requests that the Court be mindful of the following facts when determining a "sufficient, but not greater than necessary," sentence for Steven Ray.

Since he was 3 months old, Steven Ray has resided in Monroe County.  By any measuring stick, he enjoyed a normal and healthy childhood.  He is uniformly described as intelligent and loving by people who know and work with him, and this writer knows of no person who has ever described Steven Ray as callous or uncaring.  Character letters from Judy Clement and Stephen Wehner, priorly submitted, are particularly insightful on this point.  Since graduating from Bishop Kearney High School in 1984, Steven Ray has been continuously employed, most recently for Capstone Construction Group as a machine operator.  He has been a small business owner and, as the Court is undoubtedly aware from reviewing all sentencing materials, he has dedicated a significant portion of his life to serving this community as a first responder.  Steven Ray has no criminal history and, as referenced in prior filings, the court contacts listed in the PSR were the product of a contentious divorce.  Any reasonable and honest assessment of his personal and professional background will result in a conclusion that the charges for which he has admitted his guilt are not consistent with the kind of person he has been, or desires to be.  Steven

Ray also has the advantage of concerned and loving family, and has demonstrated the

introspection required to change his life in a positive manner.

Given his background, Steven Ray is, in the view of the writer of this memorandum,

uniquely positioned to begin following through on his promises to the Court, particularly as it

pertains to paying restitution.  Per the PSR, the restitution owed in this matter is around

$310,000.  Upon his release from custody, Steven Ray intends to return to work and make every

effort to pay this sum back.  He fully intends to become, once again, a valued and contributing

member to the community.  Paying back the restitution in this case is critical to this process.

For this reason, the defense respectfully argues that the Court consider a non-guideline

sentence.  In this writer's view, concurrent sentences of probation or, relatedly, time-served

sentences with placement on supervised release, is an equitable outcome that serves the interest

of all interested parties.  Such an outcome serves the community far better than any term of

incarceration suggested by the Sentencing Guidelines or by the Government.  Incarceration

serves no purpose other than to delay restitution and, in this case, "is not an appropriate means of

promoting correction and rehabilitation."  18 U.S.C. §3582(a).  Such an outcome allows Steven

Ray to immediately begin working off his debt, both literally and figuratively, to society.  And

such an outcome allows Steven Ray to ensure that his family does not suffer further hardship,

both economic and emotional, as a result of his wrongdoings.

If, however, the Court deems it appropriate to continue Steven Ray's incarceration with a

term of imprisonment, then the defense would suggest, for the reasons outlined above, concurrent

sentences of no more than 1 year, with the recommendation that he be placed  as close to

Rochester, New York, as possible in the Federal Bureau of Prisons system.  Again, an extended

8

term of incarceration serves no purpose other than to delay restitution and does not serve the interest of the community.

CONCLUSION

Accordingly, the defense respectfully urges the Court to impose concurrent sentences that result in his release to probation or to supervised release, as well as waive any applicable fines, special assessments and/or incarceration fees.  Such sentence serves the interest of all parties to this matter, the community, and promotes correction and rehabilitation.

Dated:        January 12, 2016              Respectfully submitted,

                                            s/ Jason E. Abbott, Esq.
                                            Jason E. Abbott, Esq.
                                            Attorney for Defendant
                                            Fitzsimmons, Nunn & Plukas, LLP
                                            16 East Main Street, Suite 300
                                            Rochester, NY 14614
                                            (585) 546-5270
                                            jabbott@fitznunn.com

CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January, 2016, on behalf of Defendant, Steven Ray, I electronically filed the foregoing Defendant's Sentencing Memorandum and Request for Downward Departure with the Clerk of the United States District Court, Western District of New York, using the CM/ECF system.

Dated:          January 13, 2016

                                        s/ Jason E. Abbott, Esq.
                                        Jason E. Abbott, Esq.
                                        Attorney for Defendant
                                        Fitzsimmons, Nunn & Plukas, LLP
                                        16 East Main Street, Suite 300
                                        Rochester, NY 14614
                                        (585) 546-5270
                                        jabbott@fitznunn.com

Steven Ray
28 Takmora Trail
Brockport New York
14420

January 6th 2016

Hon. David G Larimer
United States District Court
Western District of New York
100 State Street
Rochester New York  14614

Dear Judge Larimer,

Please except this letter as a supplement to my earlier letter of April 27, 2015, which was submitted to the court several months ago.

I would like to begin by again expressing my remorse for what has transpired, both in and out of your courtroom, since the beginning of this case.

My involvement in the unlawful negotiation of treasury checks, as well as my involvement in the procurement and submission of a refrence letter containing information that I knew to be misleading and untrue, was selfish, ~~and~~ thoughtless and inexcusible.

Based on what is contained in the PSR and

pg 2

what I anticipate the Government to argue in its
submission, however, I feel some explanation is
required regarding the incident involving Jeffrey Lane.

As part of my April 2015 application for a
downward departure in the case involving the treasury
checks, my attorney submitted several reference letters,
one of which indicated that it was from Jeffrey Lane.
My understanding is that these letters were sent
to my attorney directly and were the result of
his solicitations.

Shortly after the submission of April 2015
application for a downward departure, my attorney
contacted me by telephone, informing me that the
letter from Jeffrey Lane was not, in fact, written
by him. He asked how well I knew Jeffrey Lane, to
which I indicated that I knew him fairly well. I
provided in-home patient care to Jeffrey Lane in
late 2012/ early 2013. I also was asked if
I would start back, in July 2014 once I became
recertified to do so.

My attorney then suggested that I then speak
to Jeffrey Lane about the reference letter, and that
I obtain a letter from him directly.

There are no words that can describe the anxiety
I felt when I was told that the letter submitted on
my behalf was fraudulent. I was facing the potential
of a lengthy prison sentence as a result of my

pg 3

involvement in the unlawful negotiation of treasury checks and, up to that point, was still hopeful that the court would show leniency in the fashioning of an appropriate sentence. In my mind, that hope dissipated upon learning about the letter.

So at the suggestion of my attorney, I reached out to Jeffrey Lane by telephone and, later that evening, went over to his residence to discuss the letter and obtain a new one. In retrospect, this issue should have been handled entirely by my attorney but, at that point, I was driven by impulsiveness, fear and, I believe, bad advice.

When I arrived at his apartment complex, Jeffrey Lane buzzed me through the building's secured doorway, at which point I proceeded to go to his apartment.

Once Inside, I discussed the reference letter with Jeffrey Lane. Jeffrey Lane indicated to me that he did not write the letter, that he did not know who wrote the letter and that he did not otherwise know anything about it, although it was possible that one of his aides wrote it for him. At this time I was in contact with my attorney and asked if he wanted to talk to Jeffrey Lane. The statement was made see if he will write another

pg 4

letter to explain what could have happened. I then asked Jeffrey Lane to write another letter for me and that I desperately needed his help, and to state that he had an aide write the earlier letter. He agreed to do so. After speaking with my attorney later that night, we had this letter notarized, which he later submitted to the court.

As the court is keenly aware, I was indicted for submitting this letter.

Frankly, I don't have any justification having Jeffrey Lane write a reference letter that I knew to contain false or misleading information. And I don't have any excuse for providing this letter to the court. All I can say is that this was stupid and desperate. For that I am truely ashamed.

As I have indicated to the court before, I am accustomed to taking pride in helping others less fortunate and I am appalled that my actions have caused unnecessary stress and burdens. I am extremely remorseful and take full responsibility for my actions. I have no one to blame but myself.

I have no way to take back what I have done. All I can do is state, with the utmost sincerity, that I will dedicate myself to the service of the community at the conclusion of this case, and that part of this dedication involves paying back all the restitution owed.

pg 5

If the court would still entertain a sentence that allows me to return home and get back to work, I believe that I can begin making substantial progress towards reaching that goal.

In my PSR under employment, my employment has never been broken. Since Highschool I was employed in our family business and also started working in the Printing Industry which after 18 years around 2001 changed careers. Today is the longest time I have been not working

Of course I believe that you have heard such promises before and that, at the end of the day, there is no way to tell whether or not any particular person, including myself, will stay true to promises made at sentencing

All that I can say is, if given a chance, I will do everything in my power to keep my promise, because I have already let far too many people down with my behavior and because, by keeping my promise, That is the only way that I can think of which stands a chance of getting my loved ones to forgive me and earning back their trust and admiration

I have completely humiliated my wife, a city social worker for the school District, and our three year old daughter which has been with us for only the past One and a half years.

Case 16-3271, Document 28, 03/29/2017, 2000569, Page100 of 147

pg 6

Our thirteen year old which has to leave her friends at school. I owe them all so much as well.

Thank you for your time and attention in this case.

Sincerely

Steven L. Roy

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

              vs.                                    15-CR-6004 (DGL)
                                                  15-CR-6115 (DGL)

STEVEN RAY,

              Defendant.

_____

## STATEMENT OF THE GOVERNMENT WITH RESPECT
## TO SENTENCING FACTORS

**PLEASE TAKE NOTICE**, that the government hereby adopts the findings of the fifth revised May 19, 2015 Pre-sentence Report with respect to sentencing factors in this action except as to the withholding of acceptance of responsibility.  The plea agreement differs from the Sentencing Guideline calculation in the Presentence Report in that the plea agreement withholds acceptance of responsibility based on the defendant's commission of new crimes while awaiting sentencing.  Pursuant to *United States v. Lawlor*, 168 F.3d 633 (2d Cir. 1999), the Government is bound to advocate the calculation in the plea agreement.

Should the defendant present any letters of support or sentencing statement to the Court, the United States will move to strike the items from the record if this office is not provided with copies at least three business days prior to sentencing.

The defendant is required by 18 U.S.C. §3013 to pay the sum of $300 at the time of sentencing.  Immediately after sentencing, the defendant must pay the amount due by personal check, cashier's check or certified funds to the United States District Court Clerk.

Restitution in the amount of $309,511.55 must be ordered by the Court in Case 15-

CR-6004 (DGL) to be paid to the victims as set forth in paragraph 133 of the Pretrial

Services Report as part of any sentence pursuant to Sentencing Guidelines Section 5E1.1

and Title 18, United States Code, Section 3663A.

In the event present counsel for the defendant will continue to represent the

defendant after sentencing in regard to the collection of unpaid financial obligation(s), it is

requested that a letter so advising be sent to:

> Asset Forfeiture/Financial Litigation Unit
> U.S. Attorney's Office--WDNY
> 138 Delaware Avenue
> Buffalo, New York 14202

If a letter is not received within 10 days of sentencing, the defendant will be directly

contacted regarding collection of the financial obligation(s).

The United States reserves the right to respond to any filings made by the defendant.

## I.      The Facts

STEVEN RAY was part of an organized nationwide scheme to profit from stolen,

forged and counterfeit United States Treasury checks.  When he got caught and was before

this Court for sentencing, he intimidated a witness, obstructed justice, and knowingly

provided fraudulent materials to the Court.

RAY owned and operated C&C Deli in Rochester.  In addition to the traditional deli

role, C&C also acted as a check cashing business for a short time.  RAY operated at least 6

different bank accounts with 4 different banks under the C&C Deli name. He also

maintained at least 7 additional bank accounts in 5 area banks under various assumed

business identities, to include STERAY of Rochester.

[2]

RAY started depositing stolen and forged counterfeit United States Treasury checks into at least 13 banks accounts he controlled beginning sometime in January of 2013.  In addition to stolen and forged Treasury checks, RAY also deposited other government and private checks issued to and stolen from real people throughout the United States.  As part of his scheme, RAY knowingly deposited stolen and forged checks from multiple locations including; New York, South Carolina, Georgia, Florida, Louisiana, and Alabama.  These checks contained Social Security benefits, tax refunds, retirement benefits, loan disbursements, and other monies and were meant for individuals.  Many of the people whose checks RAY fraudulently deposited relied on those benefit payments in order to make ends meet and pay bills which thereafter went unpaid due to the defendant's actions.

As part of the scheme, RAY would have unnamed associates mail stolen Treasury checks to him at his Brockport NY residence via United States Postal Service Express Mail packages.  RAY admitted during the investigation that he knew that the name and address for the sender were false on these Express Mail packages.  These checks were stolen from recipients around the United States by other members of the organization.  In order to mask his own involvement in the scheme, RAY would have the Express Mail packages containing the stolen checks addressed to his adult daughter who lived at the same address. RAY claimed that he did this so that she could sign for the packages when he was not home, however, that was not true.  Postal records related to those items showed that none of the Express Mail packages addressed to his daughter required a signature for delivery. RAY received at least 20 such Express Mail pieces between March and August 2013.

In addition to being stolen, each of the Treasury checks RAY deposited in his accounts contained forged signatures.  During the course of the investigation, federal agents

[3]

interviewed the rightful recipients of the checks who confirmed that they never received their checks, authorized anyone to deposit their checks, or endorsed their checks.

RAY was interviewed during the investigation by federal agents from the United States Postal Inspection Service and the Internal Revenue Service. During that interview, RAY was evasive and simply outright lied to the investigators. At first he claimed that someone came into his deli in Rochester claiming to be a tax preparer from Georgia. RAY falsely told the agents that he agreed to cash checks for that mystery man's clients, who were having trouble cashing checks on their own. However, RAY made up a new lie when agents confronted him about a particular $33,577 stolen Treasury check he deposited in May 2013.

In that case, a stolen Treasury check in the amount of $33,577 made out to Carrie S. was deposited into one of the defendant's STERAY Accounts at the ESL Federal Credit Union in May 2013. RAY was shown a copy of this check by federal agents and falsely stated that Carrie S. came into the C & C Deli in person and expressed interest in purchasing a property owned by RAY on *Mount Read Boulevard*, Rochester. He further stated that Carrie S. used the Treasury check as a down payment for the property. RAY claimed that he did not know Carrie S., but that she provided photo ID which matched the check. RAY said he was contacted by Carrie S. a few days later to check on the closing process and he advised her that he was waiting for the Treasury check to clear the bank. ESL subsequently advised RAY the check was not going to clear. RAY said he did not have any further contact with Carrie S. and did not have any contact information for her.

However, RAY told a different lie to an ESL fraud investigator who contacted the defendant by phone about that specific check. During that recorded conversation, RAY

[4]

told the ESL investigator that the $33,577 Treasury check was given to him by Carrie S. for a down payment for the purchase of a building he owned on *Goodman Street* in Rochester. RAY also told the ESL Investigator that he had done business with Carrie S. in the past and that said she frequently visited him.  RAY told the bank investigator that he saw Carrie S.'s ID to verify who she was.

Carrie S., who resides in California, was contacted during the course of the investigation.  She had filed a report with the Treasury Department reporting the non-receipt of this check.  She told investigators that she did not receive her check, did not endorse her check, did not cash her check, did not deposit her check, did not authorize anyone to negotiate her check, and did not receive proceeds from her check.  She also told law enforcement that she did not know RAY, STERAY, or the C & C Deli.  Carrie S. stated she did not attempt to purchase any property in Rochester with her Treasury check. As a result of this scheme involving counterfeit and forged checks, RAY obtained $405,681.85 to which he was not otherwise entitled to.

RAY pled guilty to that offense on February 27, 2015 and was released pending sentencing before the District Court, which was scheduled for May 2015.  While awaiting sentencing, RAY submitted a packet of materials to the Court in support of a request for a non-guideline sentence on April 27, 2015.  Included in this packet was background material on the defendant and specific sections on the defendant's *Education*, *Training*, *Service to the Community*, and *Restitution*.  RAY also provided several letters of support in this packet, and again, in another packet under separate cover dated May 11, 2015.  The facts showed that

RAY knowingly and willfully provided false information and forged support materials to the Court in an attempt to improperly influence his sentence.

Specifically, RAY falsely represented actions he claimed to have been involved in while working as a volunteer fireman with the Brockport Fire Department.  He claimed that he rescued a drowning child from a pool.  The facts show that he never did.  He also claimed that he performed a pre-hospital surgical airway procedure on a critically injured college student.  However, the facts again show that he never did this either.  But the most blatant fraudulent filing occurred when RAY submitted a false letter of support from an individual named J.L[1].  The letter, filed as *Document 24*, at page 6, strongly supports the defendant, extolls his many altruistic virtues, and concludes by saying that the criminal charges before the Court for sentencing are not consistent with his character.  However, this too was a lie. J.L. never wrote that letter.  In fact, this letter became the focus of a new investigation into the defendant, and resulted in his being indicted on new criminal charges on August 11, 2015 related to witness intimidation and obstructing a judicial proceeding.

On December 17, 2015, the defendant pled guilty to corruptly obstructing, influencing, and impeding this Court related to his sentencing in the original mail fraud case.  In that plea agreement, RAY admitted that he contacted a sentencing witness, identified as J.L., a physically disabled adult, and that RAY had J.L. prepare and sign an affidavit containing what the defendant knew to be false statements.  RAY further admitted that his actions did corruptly obstruct, influence, and impede an official proceeding pending in the United States District for the Western District of New York.  He also conceded that

---

[1] This individual will only be identified by his initials for privacy reasons.

[6]

his actions resulted in the unnecessary expenditure of substantial governmental and Court resources.

Both cases were set for sentencing before this Court on January 21, 2016.  In order to address the significant amount of restitution, more than a quarter of a million dollars, the Court attempted to get an accurate picture of the defendant's financial condition.  However, due to the multiple inconsistent financial statements provided by the defendant, the Court was unable to do so.  Sentencing was adjourned, and the defendant was ordered to complete a financial affidavit which was then to be verified through a polygraph examination.

## II.   An individualized assessment of this defendant supports the imposition of a sentence of imprisonment above the sentencing guidelines

The government submits that a sentence of incarceration above the guideline range is appropriate in this case.  The defendant must also be ordered to pay restitution in the amount of $309,511.55.

It is well settled that calculating the advisory sentencing guidelines is the first step in determining the defendant's ultimate sentence, after which the Court must consider the §3553(a) factors. *United States v. Dorvee*, 616 F.3d 174, 180 (2010) quoting *United States v. Gall*, 552 U.S. 38, 49-50 (2007); see also, *United States v. Aumais*, 656 F.3d 147 (2d Cir. Sept. 8, 2011).  In *Aumais*, decided in September 2011, the Second Circuit upheld the guidelines sentence imposed by the district court, noting that the sentence was based upon an "individualized assessment" of the §3553(a) factors. *Aumais*, at 157.

In this case and considering the §3553(a) factors, *as individually applied to this defendant*, a sentence above the sentencing guideline range is both appropriate and required.

[7]

STEVEN RAY benefited by stealing from the elderly, the poor and the disabled.  And when he got caught, he lied to this Court, manipulated a physically disabled individual, and knowingly and deliberately presented false materials in support of a downward departure.

Many of the people whose stolen checks RAY deposited were waiting for their Social Security Disability checks or other supplemental government benefits.  A review of paragraph 71 of the PSR shows that most of the checks stolen by the defendant are for relatively small amounts.  Few of the checks are for over $10,000.  However, rather than mitigate the defendant's crimes, this serves to show that the money RAY stole and converted for his own use was subsistence money for people who could not afford to be without it.  In the words of R.G.[2], one of the victims, RAY'S conduct prevented him from paying his rent or his utilities.  He goes on to say that the $500 loss he suffered, while only a tiny fraction of the total monies RAY stole, required R.G. to rely on food from local food pantries. (see *Victim Impact Statement*, R.G. dated March 9, 2015, previously filed)

Another victim, S.K., wrote that the "…missing check made [her] life hectic."  She goes on to detail the trouble she had resolving the problem with the Social Security Administration, and how RAY'S actions left her in "…dire straits" since she lived on a fixed monthly income.  The defendant's conduct forced S.K. to borrow money from family members. (see *Victim Impact Statement,* S.K. dated March 8, 2015, previously filed ).  It is clear that the defendant's actions had a real and significant impact on his victims.

It is equally clear that RAY knew that what he was doing was unlawful.  The facts show that RAY lied to federal agents about his conduct and his role in the scheme to deal in stolen and forged United States Treasury Checks.  RAY lied to the agents about his contacts

---

[2] All victim names have been redacted to their initials only.

[8]

with the mysterious Georgia tax preparer.  RAY lied to the agents about his contact with Carrie S. and her $33,577 Treasury Check.  RAY lied again when he spoke to bank investigators about his friendship with Carrie S.  RAY lied to the agents about why he was having packages sent to his house but in his daughter's name.  RAY lied, and as set forth below, continues to lie to this Court, because he knows that what he did was wrong and he simply refuses to acknowledge his guilt.

Amazingly, RAY tried to mitigate his actions in his April 27 letter to this Court by complaining that he only "profited a small commission." (see *Defendant's Request for Downward Departure*, at page 3, dated and submitted April 27, 2015).  RAY also complained in this letter that "…approximately $60,000 of [the deposited funds] were debited to my account" (see *Id.*) as if to suggest perhaps that he himself were entitled to restitution.  RAY also repeatedly refers to his actions as a "lapse of good judgment" on his part. (see *Id.*)  However, the facts are inconsistent with a single "lapse" and rather show a clear pattern of organized criminal activity.  Specifically, RAY'S conduct involved his receipt of no less than 128 stolen and forged Treasury Checks which he deposited across 13 different bank accounts over a 19 month period.

STEVEN RAY lied to cover up his involvement in a scheme to steal, forge, and cash Treasury Checks.  His lies and thefts involved almost a half million dollars of other people's money – specifically money which belonged to people who could not afford to be without their checks.  And that conduct deserves a sentence above the guideline range.

[9]

**A.     RAY lied to the Court when he knowingly submitted a letter which J.L. never wrote.  He then tried to cover up his lie by forcing J.L to draft a statement that RAY knew was a lie.**

In addition to being sentenced for stealing people's support and subsistence checks, RAY is also being sentenced for knowingly and intentionally providing false material to this Court.  In the letter which the defendant submitted to the Court in support of his request for a departure sentence, RAY wrote that he voluntarily took care of a paraplegic young man, J.L., out of a spirit of goodwill.  RAY specifically referenced the things he did to support J.L. to include bathing J.L. and taking care of his personal needs.  The statement was written in the present tense and suggested that the defendant was actively caring for J.L. on a daily basis at the time the Sentencing Statement was submitted.  RAY'S altruistic actions were supported by a letter, purportedly written by J.L., which was also submitted to this Court.

In the letter submitted by RAY, J.L. wrote that he was a 40 year old, who was born with spinal damage.  He wrote that he met RAY 6 years ago, and that they became friends.  J.L. said that his father died as a result of the fire service, which caused him to form a bond with RAY.  The letter then went on to detail J.L.'s medical conditions, and how RAY volunteered to assist J.L. with his personal care needs.  J.L. referred to RAY'S medical training and his status as an EMT.  J.L. claimed that RAY was able to secure a wheelchair bus which allowed him to take J.L. to the park, the store, and even the pool.  J.L. then weighed in on the nature of the original charges against RAY, opining that they were out of character for RAY.  J.L. concluded his letter of support by asking this Court to "take a look

[10]

at what good this man has done." The letter, if true, would be a powerful attestation of the defendant's character. The only problem is that *the real J.L. did not write this letter.*

On May 7, 2015, federal agents interviewed J.L. at his home. J.L. told the agents that: he had no knowledge of a letter submitted in support of STEVEN RAY; he did not write any letter in support of STEVEN RAY; and that he did not authorize anyone else to submit such a letter on his behalf. (See Exhibit-1: *Memorandum of Interview, J.L.*, dated May 7, 2015). J.L. went on to say that RAY only worked for him for a short time (approximately 2 months), after which J.L. fired RAY because he was unreliable and would miss his shifts.

J.L. was presented with a copy of the letter submitted to this Court, allegedly written by him in support of RAY, and J.L. denied ever seeing the letter. J.L. was clear that the signature on the letter was not his. Moreover, J.L. noted that his name was misspelled in two places on the letter. J.L. also said the letter incorrectly reported his age, the length of time he had known RAY, and the circumstances surrounding his father's death. J.L. also told federal agents that RAY never took J.L. on any "bus ride". J.L. provided the agents with a sworn affidavit outlining the inaccuracies of the letter.

The government filed a sentencing statement with the Court on May 18, 2015 in which the defendant's false statements were highlighted. (see *Government's Sentencing Statement*, Document 22, Filed 05/18/15). This sentencing submission was e-filed with the Court and a courtesy copy of the filing was provided to RAY'S then counsel. Within hours of the government's filing, RAY began to call J.L. at home to try to get him to write a new statement which RAY knew was false.

[11]

J.L. told agents that RAY started calling him the evening of May 18, trying to get J.L. to submit a new statement. (see Exhibit 2: *J.L. Interview*, July 10, 2106). However, J.L. told RAY that he did not want to do so. J.L. estimated that he told RAY "about five times" that he did not want to write a new statement (Id.). RAY called J.L. multiple times that night, continuing to try to get J.L. to change his statement. J.L. eventually started to hang up on RAY. However, despite these clear signals from J.L., RAY still came over to J.L.'s residence, let himself in through the secure main door, and came straight over to J.L.'s apartment door. J.L., who is wheelchair bound, was already in his bed, and his normal caretaker had gone home for the night.

RAY continued to harass J.L. that night saying how a new statement by J.L. would "help (RAY) get a lesser sentence." (Id.) J.L. finally gave in and agreed to write another statement *which RAY then dictated*. J.L. said that he felt "*intimidated and threatened*" by RAY and that is why J.L. finally gave in and provided the second statement. (Id.)

Sometime after that, a notary arrived at J.L.'s door accompanied by RAY, who let them into J.L.'s apartment. Once inside, she notarized the new statement. J.L. was not involved in selecting, calling, or letting the notary into his apartment. He was also not involved in paying the notary for her services. When provided with a copy of the second statement during his July interview, J.L. had difficulty pronouncing some of the words and phrases he supposedly wrote in support of STEVEN RAY. It was clear that he did not choose the wording of the letter.

A review of RAY'S cell phone records from May 18, 2015 confirms J.L.'s timeline. Specifically, RAY'S cellphone called J.L.'s home at least six (6) times that night between 8:43 pm and 9:45 pm. There is another call at 9:05 pm from RAY'S cellphone to J.L.'s

[12]

apartment complex main number.  RAY first calls the notary at 9:32 pm, and she then calls

back (presumably when she arrives at the Apartment Complex and needs to get into J.L.'S

building) at 9:53 pm.

| Date / Time of Call | Caller | Destination | Duration |
|---|---|---|---|
| 5/18/2015 20:43 | SR | JL | 9 |
| 5/18/2015 20:49 | SR | JL | 2 |
| 5/18/2015 20:51 | SR | JL | 30 |
| 5/18/2015 20:52 | SR | JL | 80 |
| 5/18/2015 21:05 | SR | JL's Apt Complex | 2 |
| 5/18/2015 21:22 | SR | JL | 47 |
| 5/18/2015 21:32 | SR | Notary | 403 |
| 5/18/2015 21:45 | SR | JL | 32 |
| 5/18/2015 21:53 | Notary | SR | 20 |

Source: *Verizon Phone Records*: RAY cell phone.

The timeline and events of May 18, 2015 are also confirmed by the woman who

notarized J.L.'s new statement that night.  "Ms. C." was interviewed by federal agents on or

about July 23, 2015.  At the time, she confirmed that she had notarized a statement by J.L.

the night of May 18. (see Exhibit 3: *Ms. C. Interview*, July 23, 2015).  She told agents that she

received a call that night from someone who identified himself as "Steve" who requested

her notarial services.  "Steve" asked her how much she would charge, and said the services

were for a disabled "friend" who he was "trying to help." (Id.)  "Steve" gave her the

address, and she traveled to Brockport with her husband.  Ms. C confirmed that RAY met

her at the apartment complex main entrance, and that he walked her and her husband

directly to J.L.'s door.  When she went inside, she noticed that J.L. was in bed.  After she

notarized the handwritten statement which had already been written, RAY was the one

who paid her.  RAY also stayed behind with J.L. after her job was done.

[13]

**A-99**

Interestingly, when federal agents called her to interview her about notarizing J.L.'s statement, she first called "Steve" to find out what the Feds would want with her. She spoke with "Steve" at his work, a construction company and he told her that she "did not have to speak with the Postal Inspector." Clearly, RAY did not want any witnesses talking about his nocturnal notary adventure with J.L.

Not surprisingly, RAY'S version of events is considerably at odds with the facts. He wrote a statement to the Court on January 6, 2016 discussing his conduct as it related to J.L. (see *Defendant Letter*, Docket 15-CR-6004, Document 39-1). In that letter, RAY described his conduct as "…my involvement in the procurement and submission of a reference letter containing information that I knew to be misleading and untrue." He then went on to claim, incredibly, that J.L.'s letter was part of a group of reference letters which "…were sent to my attorney directly and were the result of his solicitations" (Id. at page 2). RAY denied ever submitting the first false letter to the Court suggesting that it was done by someone else, possibly even his then attorney. He suggests some kind of conspiracy – as if someone submitted a letter without his knowledge which he simply tried to clarify with J.L. that night. This is blatantly ridiculous.

RAY continued to blame his former attorney for his conduct throughout this letter. He claimed that "…at the suggestion of my attorney, I reached out to J.L. by telephone and later that evening, went over to his residence to discuss the letter and obtain a new one." (Id. at page 3). RAY went on to lament that he was "driven by impulsiveness, fear, and I believe, bad advice" (Id.) taking another stab at blaming his attorney for his own actions the night of May 18.

[14]

**A-100**

This letter and the defendant's own words are simply another shameful attempt at blame shifting and minimizing his own criminality and should be viewed by the Court as such. These actions do not mitigate the defendant's actions and suggest that nothing short of a significant sentence of incarceration will adequately deter this defendant and protect the public from future crimes.

**B.    RAY lied to this Court about his work with the Brockport Fire Department.**

RAY repeatedly uses his work with the Brockport Fire Department as the most significant reason for this Court to depart from a guideline sentence of imprisonment. In support of this, his initial sentencing statement and every filing he has submitted since emphasizes his training and service as a volunteer firefighter, citing his completed course work and his service history. (see *Defendant' original Sentencing Packet*, Page 1; information supplied to the US Probation Office by the defendant contained in the original PSR at paragraphs 108, 109, and 110; the defendant's letter to the Court dated April 27, 2015; as well as in each letter of support contained in the Defendant's Sentencing Packet).

The defendant was suspended from the Brockport Volunteer Fire Department in February 2015, following his guilty plea to two federal felony charges. He was formally removed from the Fire Service in March 2015 following a full board meeting[3]. RAY would later mischaracterize his status with the Fire Department when asked by the US Probation

---

[3] The defendant was fired from the Brockport Volunteer Fire Department in March 2015. At that time he was ordered to return all his equipment, badges, and identification documents. However, RAY failed to do so. In fact, he retained – and even used – Fire Department badges and identification documents as much as six months after he was fired. The government notes that on October 21, 2015, RAY instructed his then girlfriend, Kerri Keiffer, to use his Fire Department Badge – which he shouldn't even have had - to obtain a fraudulent discount for his Verizon phone service.

[15]

Office.   He simply said he was "suspended" which was false.   The defendant cited to specific acts of heroism undertaken as a volunteer firefighter in his initial filing in support of his motion for a downward departure.   However, the facts show that the defendant is lying to the Court and did not actually do the things he claimed.

### The Sweden Hills Incident

The first incident is what RAY titles the "Sweden Hills Incident."  This related to an alleged response in which RAY claimed to have been the first to respond to the drowning of a three year old child.   RAY claimed that he dove into a swimming pool, pulled a three year old child out of the water, called 9-1-1, and then performed CPR on the child on the scene and all the way to the hospital.  This never happened.  While it is sadly true that a child (who was actually 2 years old), did drown in an above ground swimming pool in that incident, Monroe County Sheriff's reports of the actual incident do not support RAY'S version of events.

Specifically the reports contain witness statements from those who were *actually* on the scene, those who *actually* pulled the child from the pool, those who *actually* called 9-1-1, and those who *actually* performed CPR on the child.   STEVEN RAY was not involved in any of those actions.  He might have been on the scene, along with multiple other first responders, but he did not engage in any of the heroics he claimed to this Court.

### SUNY Brockport Incident

The defendant also claimed that he was the first person to respond to an emergency call at SUNY Brockport involving a student who was critically injured following a fall down

[16]

some stairs.  RAY again claimed heroic intervention, in this case going so far as to claim

that *he* performed an emergency tracheotomy with a pocket knife which enabled rescue

workers to deliver oxygen to the injured student[4].

Again, like the drowning incident referenced above, this tragic event did take place

and a SUNY Brockport student was critically injured after falling down stairs.  However,

RAY, again, lied about his involvement in this incident.  The *actual* first responder who

performed the emergency tracheotomy was identified by federal agents and confirmed the

facts during a telephone interview and a subsequent sworn written statement.  RAY might

have been present, but his role is deliberately and falsely inflated in his filing to the Court in

an attempt to mitigate his sentence.

It is clear from these facts that STEVEN RAY did not perform the heroic acts he

claimed in the sentencing materials he submitted to this Court in support of downward

departure sentence.  It is equally clear that STEVEN RAY did not perform the altruistic acts

related to J.L. which he claimed to have performed in the sentencing materials he submitted

to this Court in support of downward departure sentence.  Likewise, the letter of support

allegedly written by J.L. is clearly a forgery.  The only conclusion is that the defendant

deliberately *and with fraudulent intent* submitted false and misleading materials to this Court

in an attempt to seek a down departure sentence.

When put in context with the fraudulent nature of the charged conduct and the

defendant's multiple false statements during the investigation, the government suggests that

submitting false materials to the Court requires this Court to sentence the defendant to a

significant period of incarceration.   Specifically, Section 3553(a) requires the Court to

---

[4] RAY incorrectly refers to the emergency procedure as "performing a stoma."

[17]

consider the character of the defendant, as well as the need for the sentence to promote respect for the law and afford adequate deterrence. The United States submits that submitting forged and counterfeit sentencing materials, after having pled guilty to crimes involving forged and counterfeit signatures on Treasury Checks, demands a significant sentence.

This conduct shows that STEVEN RAY has no respect for the Court or the law, and that the fraudulent criminal conduct at the heart of this case is not aberrant conduct, but rather the way that RAY does business.

### C.   RAY has repeatedly lied about his finances.

STEVEN RAY has repeatedly and deliberately failed to truthfully report his finances to the Government, to the United States Probation Department, and most significantly, to this Court. Restitution is a significant issue in case 15-CR-6004 (DGL) where the defendant owes in excess of a quarter of a million dollars to the victims of his forged treasury check scheme. In order to satisfy this substantial monetary obligation, the Government and Probation have attempted to determine the defendant's finances to include a complete listing of his assets as well as all those assets under his control. However, RAY has repeatedly and deliberately thwarted all efforts to determine his true financial picture. RAY was actually required by the terms of his February 2015 plea agreement to;

> The defendant agrees to *disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party*. The defendant agrees to *make complete financial disclosure to the United States by truthfully executing a sworn financial statement* by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing. *The defendant agrees to discuss or*

[18]

*answer any questions by the United States relating to the defendant's complete financial disclosure.* The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office. *The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court.* In addition, the defendant promises that the defendant will make no such transfers in the future.

> See *Plea Agreement*, Case 15-cr-06004, Document 18 Filed 02/27/15 Page 10, paragraph 23. *Emphasis added.*

Despite this clear direction, RAY has consistently concealed assets, lied about his control of assets, and misled the Court about his finances.   RAY has filed multiple, inconsistent financial disclosure forms, all under oath, which vary significantly.   RAY has lied under oath about his employment status, his control of STERAY Inc, and his control of assets and properties.   All this conduct should be taken into account by this Court when imposing an appropriate sentence.   RAY'S financial lies involve more than simply the statements he made to the Court and the Probation Department.   Some examples follow.


**RAY'S shipments of cash to California using a fictitious business name.**

Much of the defendant's financial picture remains unclear to this day.   Of note however, is RAY'S regular involvement with large sums of cash while at the same time claiming to be impoverished.   On February 28, 2014, Investigators from the New York State Police received information about a seized package sent from the UPS Store in Brockport New York, to an address in California.   The UPS Store in Brockport is located just down the street from RAY'S Talamora Trail home.

[19]

Inside that package, Police found **$46,000 in United States Currency**. (see Exhibit 4: *NYSP Report*, February 28, 2014). The investigation revealed that the package containing all that cash was sent from Brockport to California using a fictitious business name, Print House Graphics. However, State Police investigators interviewed the UPS Store Employee who processed the shipment, and he said that the shipper was known to him. The employee identified the actual shipper to be the defendant in these cases, STEVEN RAY.

Investigators also learned that in addition to that package of cash, records showed that between September 2013 and February 2014, RAY shipped approximately 30 other UPS packages to California from that same UPS Store in Brockport. Significantly, despite the fact that Police seized the package, and the $46,000 inside, RAY never filed any claim for the lost package, nor did he ever request return of the funds. Equally of note; during the time these packages were being sent to California, RAY was reportedly unemployed and without income.


**RAY'S false affidavits to the New York Department of Human Services**

STEVEN RAY was receiving financial assistance from the State of New York from 2011 to at least September 2015. RAY completed several affidavits, under oath, in support of his claim for financial assistance. In a sworn affidavit from June 2011, RAY falsely claimed that he had no connection to STERAY Inc., falsely claimed that he had no assets, falsely claimed that he had no properties, falsely claimed that he was not employed, and falsely claimed that he had only one vehicle. (see Exhibit 5: *NY Health and Human Services Affidavit*, dated June 17, 2011).

[20]

A-106

In another sworn affidavit, this time dated October 2013, RAY again falsely claimed that he had no connection to STERAY Inc., falsified his employment status, falsely claimed that he had no assets, falsely claimed that he had no properties, and falsely reported his link to C&C Deli. (see Exhibit 6: *NY Health and Human Services Affidavit*, dated October 24, 2013).   It is significant to note that at the time RAY filed this October affidavit, he was already involved in the fraudulent scheme that netted him over $400,000 in fraudulent treasury checks and had been sending unknown packages, including bulk cash shipments, to California from a made up business named "*Print House Graphics*".

### RAY'S multiple false statements on his CJA-23 Application

RAY was arrested for witness tampering and obstruction in August 2015, while awaiting sentencing for his Mail Fraud and Forging Treasury Check convictions.   On August 21, 2015, RAY completed a CJA-23 Financial Affidavit to obtain Counsel at the Government's expense. (see Exhibit 7: Case Number 15-CR-6115, *CJA Financial Affidavit*, Document 5, filed August 21, 2015).   In that application RAY falsely stated, under oath, that he was not employed.   This is contrasted with other statements he made to US Probation and the Court in the form of Pretrial Service Reports and Presentence Investigation Reports where he claimed to have been working at several occupations.

RAY also lied about his other sources of income.   The CJA-23 Financial Affidavit clearly asks "Have you received within the past 12 months *any income* from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments or other sources?" (*emphasis added*).   The

defendant hand wrote in the word "none" despite the fact that this was untrue.  Again, the defendant told Probation different stories in the form of Pretrial Service Reports and Presentence Investigation Reports wherein he claimed to have been receiving money from several sources during these same times.  Further, the defendant provided conflicting statements on other financial affidavits submitted to this Court.

RAY also lied under oath when he claimed to be supporting dependents.  Under the Obligations and Debts – Dependents Section of the Financial Affidavit, RAY hand wrote in that he supports "Kerri Keiffer" and a total of "3" dependents.  First, how could the defendant possibly be supporting three dependents when he himself has no employment, income, or assets?  Further, Kerri Keiffer is employed, full time, with the Rochester City School System[5].  It is clear that he neither supports Ms. Keiffer when she has a salary and he does not, nor could he financially support other individuals without an income.

All of these false statements about his finances; taken together with the false statements inherent in his initial conviction for Mail Fraud and Forging Treasury Checks, his false statements to federal agents during the investigation, as well as his false statements to this Court in the form of fraudulent sentencing letters, support the imposition of an above the guideline range sentence for STEVEN RAY.

**D.      RAY made multiple false statements during his polygraph examination**

The defendant was scheduled to be sentenced on January 21, 2016.  Prior to sentencing, this Court attempted to assess the defendant's financial resources in order to

---

[5]      According to http://rochester.nydatabases.com/database/educator-salaries-new-york which publishes a directory of public employee salaries, Keiffer has been employed with the Rochester City School District since September 1, 2008, and has an annual salary of $62,025.71

[22]

**A-108**

address the significant restitution amount based on the defendant's criminal activity. However, due to the sheer number of inconsistent and outright misleading financial disclosures made by the defendant, the Court was unable to determine the defendant's actual financial resources.   In an attempt to get the defendant to truthfully report his finances, the Court ordered RAY to provide a complete financial disclosure to the United States Probation Office – under oath – which was then to be verified through the administration of a polygraph exam.   On January 21, RAY provided another sworn financial affidavit to the United States Probation Office after Court[6].

RAY continues to lie to this Court and provide false information related to his upcoming sentencing. While the polygraph examination was inconclusive on the ultimate issue of the accuracy of his finances due to the defendant's cardiac condition, RAY'S statements to the examiner during the exam were crystal clear and provably false.  But like with all RAY'S statements, including those about his service with the Brockport Fire Department, the truth is no more than a springboard from which the defendant performs a flying forward one-and-a-half somersault of lies.

**Military Service:**

---

[6] The defendant provided *sworn* financial affidavits on the following dates: *Financial Statement included in Presentence Investigation Report* dated April 2, 2015; *Financial Statement included in Presentence Investigation Report* dated September 9, 2015; *Financial Statement included in Presentence Investigation Report* dated December 30, 2015; *Financial Statement included in Presentence Investigation Report* dated January 4, 2016; *Declaration of Defendant - Net Worth & Cash Flow Statement* dated March 25, 2015; *Declaration of Defendant - Net Worth & Cash Flow Statement* dated January 21, 2016; *Financial Declaration* submitted to the Court dated March 10, 2016; and an *IRS Polygraph Examination Statement of Assets* dated March 15, 2016.

[23]

RAY claimed in April 2016, *for the first time*, that he had been in the military[7]. Specifically, RAY explained that he had enlisted in the Army in the early 1980's and completed his physical and all other required paperwork with the recruiter. RAY stated he even received his airline ticket from the military to fly him to basic training. However, he then claimed that his parents did not want him to go into the military, so they used their family connections with U.S. Congressman Horton to have RAY relieved of any commitment to military service. RAY said he believed he may "even have received an honorable discharge" from the Army. (see Exhibit 8: *Polygraph Examination Report*, May 4, 2106, Page 2, at paragraph 1).

Follow up investigation was performed May 10, 2016, by the Defense Criminal Investigative Service to verify RAY'S claim of service. (see Exhibit 9: *DCIS Report*, May 10, 2016). However, despite the vast amount of paperwork and records related to the military application, acceptance, and induction process, no records were found to support RAY'S claim that he was ever in the Army. In fact, no records were found that RAY was *ever* in any branch of the United States Military, nor is there any record of his discharge.

**Service with the Greece, New York, Special Police:**

RAY told the polygraph examiner that he (RAY) had been a long time member of the emergency response/law enforcement community. RAY also stated he served as a member of the Greece, NY "special police". RAY even provided details to support his story about how members of the special police work the "cool zone" and directly support

---

[7] The defendant was interviewed on several prior occasions by the US Probation Office and never disclosed prior military service.

[24]

the regular police who work the "warm zone". (see *Polygraph Examination Report*, May 4, 2106, Page 2, at numbered paragraph 2).

Records obtained from the Town of Greece Special Police did confirm that RAY applied for, and was accepted into the Special Police program, and that he started classes in November 2008.  However, those same records also showed that within months of starting, RAY was disciplined for using Special Police Letter Head without authorization. Specifically, RAY attempted to buy "training handcuffs" for the Unit using Special Police letterhead. (see Exhibit 10: *Greece Special Police Letter*, dated May 10, 2016).  At the time RAY forged the letter and used the Police Departments stationary, RAY was not authorized to make the purchase, nor was he authorized to use Special Police letterhead to do so.  Like in the case before the Court now, RAY falsified a document to get what he wanted, regardless of the legality of his doing so.  RAY was terminated from the Special Police shortly after this incident.


**Capstone Construction:**

RAY has also repeatedly claimed that he was owed approximately $80,000 to $90,000 from Capstone Construction, his pre-arrest employer, for his work as a project manager for the construction of a Rite Aid Drug Store in Newark, NY.  RAY explained that he was made the project manager of the Rite Aid construction after 3 days on the job.  RAY claimed he and two other individuals built the entire store themselves.  RAY was told by Capstone that he would get 20% of the money/profit from the job, which RAY estimated at about $80,000 to $90,000.  RAY further stated that upon his release from jail, he will be able

[25]

to become a project manager for Capstone again, and will be able to make enough money to pay off the restitution in just a few years. (see *Polygraph Examination Report*, May 4, 2106, Page 2, at numbered paragraph 4).

Federal Agents interviewed RAY'S former employer at Capstone Construction. (see Exhibit 11: *Interview with Joseph Morabito*, dated April 29, 2016).  During that interview, RAY'S former employer indicated that while RAY did in fact work for him, RAY only worked an average of twenty hours per week, and received a salary of approximately $200 to $300 per week.  Capstone was clear that there were no other compensation arrangements with RAY.  Further, while RAY did work on a Rite Aid store project in Newark, New York, he was not owed any percentage of the income earned on the project. RAY is not owed any money by the owner or the company.

### E.   RAY'S repeated claim that STERAY was owned and run by Lawrence Ray and Carnell Noble is a lie.

STEVEN RAY has consistently claimed that he has no control or ownership of STERAY of Rochester Inc.  He also maintained that he has no access to the assets of the company, to include the vehicles and properties owned by STERAY.  This is a lie. At every opportunity, RAY has continued to claim that he has no involvement with STERAY, and that his father Lawrence Ray and his friend Carnell Noble run the day to day operation. Similarly, he has repeatedly stated, under oath, that both Lawrence Ray and Noble own and control all the assets and properties of the company, and that the defendant does not benefit from any of STERAY's assets.  However, this came as news to both RAY's father and Noble.

[26]

Lawrence Ray, the defendant's father was interviewed twice during the investigation by federal agents, first in 2014, and again in 2016.   On both occasions, he denied any ownership or control of STERAY or its assets.   The most recent interview occurred on January 21, 2016, following Court, after STEVEN RAY again claimed that his father was running STERAY.   In that interview, Lawrence Ray reinforced his previous statement that he believes his son, STEVEN RAY is the owner of STERAY. (see Exhibit 12: *Interview with Lawrence Ray*, dated January 21, 2016).   Lawrence could not explain what his own role in the company was, although he said he "heard" that he was a part owner from "someone" but could not remember who that person was.

Lawrence told federal agents that he: 1) occasionally collected rent from some tenants who live in STERAY properties, although he didn't do it regularly and did not know how much they owed; 2) didn't keep any of the money he collected; 3) deposited that money in a bank account which he has no access to (in fact, he said he did not even have signature authority on that bank account); and 4) didn't pay any company bills. Lawrence Ray also said he: 5) never invested any money into the company; 6) did not receive any money or financial benefit from STERAY; 7) never made any financial decisions for the company; 8) never directed anyone to conduct transactions on behalf of the company; and 9) did not expect to get any money or financial benefit upon the sale of any STERAY properties.

Federal agents also interviewed the other putative owner of STERAY, who STEVEN RAY repeatedly identified under oath as Carnell Noble.   Noble was interviewed shortly after Court on January 21, 2016, the most recent time that RAY identified Noble as

[27]

the owner of STERAY. (see Exhibit 13: *Interview with Carnell Noble*, dated January 21, 2016).   Noble told agents that he was either the "President" or "Vice-President" of STERAY.

Despite this title, Noble went on to state that he: 1) never made any financial decisions for STERAY; 2) has never done anything with STERAY; 3) did not invest anything in STERAY; 4) never had any true ownership interest in STERAY; 5) never made any money from STERAY; 6) is not entitled to any money, assets, or proceeds of STERAY; 7) never saw any documents related to STERAY; and 8) never conducted any financial transactions on behalf of STERAY.   In fact, during a prior 2014 interview with Noble, he said he told RAY to remove him from STERAY entirely.

What emerges clearly from the fog of the defendant's lies is that neither Lawrence Ray nor Carnell Noble has any actual role in running STERAY.   Equally clear, is that neither has any financial investment, equity, or interest in STERAY.   Neither one benefits from the company, nor is either entitled to any company assets or proceeds.   These two are nothing more than figure heads who the defendant has propped up so that he can claim an arm's length distance from his company when anyone comes looking for assets to seize. The Court should not be fooled by STEVEN RAY.

     **F.**    **RAY'S repeated claims that he does not receive any benefits from STERAY assets or property is a lie.**

Equally false are RAY'S repeated assertions that he does not benefit from any of STERAY'S property or vehicles.   RAY admitted that he transferred his own personal residence at 79 Talamora Trail, Brockport to STERAY during his polygraph examination

[28]

(see *Polygraph Report*, at page 3, paragraph 5b).  The very fact that he continued to live in that residence up until his August 2015 arrest shows that he does in fact receive a benefit.

Further, RAY'S personal vehicle, a Chevy Z71 Pickup Truck, registered to STERAY, still sits in the driveway at Talamora Trail awaiting the defendant's return. (see Exhibits 14 & 15: Photos of Truck in Defendant's Driveway).   The vehicle has even remained "plugged in" to keep it charged during the winter months when RAY was incarcerated.  It should be noted that the vehicle does not have any company or corporate markings identifying it as a business vehicle.  Likewise, it does not bear commercial plates.  However, clearly visible on the truck are both an emergency light bar and emergency grill lights, which the defendant used in his capacity as a volunteer fireman.  It is clear that RAY exerts ownership and control of the truck.  It is equally clear that he used the truck regularly enough that he needed to add emergency lighting.  His attempts to distance himself from the benefit of use and control of this vehicle are not convincing.

RAY doesn't "own" the house at 79 Talamora Trail, but he does live in it.  RAY claimed that he pays rent to STERAY, but that he gets a discount in the rent for his work for the company.  RAY doesn't "own" the truck parked in his driveway, but he uses it enough that he mounted emergency lights on the roof and in the grill so that he could use it when responding to calls with the volunteer fire department.  Again, the defendant's web of lies unravels with each pull.

**G.    Ray sold assets prior to sentencing in violation of his plea agreement.**

As set forth above, RAY certified in his plea agreement in case 15-CR-6004 that he

had not and would not transfer any assets before his sentencing.  However, in September 2015, RAY, transferred title to his 2011 Lincoln MKS to his then girlfriend, Kerri Keiffer, knowing that she intended to trade the vehicle in for a new car, and thus covert the equity in the vehicle, making it unavailable for restitution or judgment.

Records obtained from Bob Johnson Chevrolet show that on September 10, 2015, less than a month after RAY'S arrest, and less than 7 months after RAY signed the plea agreement in which he pledged not to transfer assets, RAY signed away an asset worth $14,500 (fourteen thousand  and five hundred dollar) without leave of the Court or anyone else.  Specifically, records show that RAY signed over the title for a 2011 Lincoln MKS Sedan so that Keiffer could trade RAY'S car in towards her purchase of a new 2015 Chevrolet Equinox (see Exhibit 16: *Records from Bob Johnson Chevrolet*, dated September 10, 2015).  That $14,500 could have gone a long way towards repaying the victims of RAY'S crimes.  Equally of note is the fact that RAY never even disclosed his ownership of the Lincoln on prior financial reports to the Court or Probation.

### III.    The two level sentencing enhancement for vulnerable victim pursuant to Guideline Section 3A1.1(b)(1) applies.

Application Note 2 of USSG §3A1.1 states that a "vulnerable victim" means a person who (A) is a victim of the offense of conviction and *any conduct for which the defendant is accountable* under USSG §1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, *physical or mental condition*, or who is otherwise particularly susceptible to the criminal conduct (*emphasis added*).  While the defendant argues that the Court is the direct victim for the new charges, and therefore suggests that the victimization of J.L. is irrelevant,

[30]

that is simply not the case.  There can be no argument that J.L. was not a victim of relevant conduct here.  The defendant, in his own January 2016 letter to the Court even *admits* that he made J.L. file a false affidavit. (see *Defendant's Letter to the Court*, January 13, 2016, docket 39-1, at pages 4-5).

The 2nd Circuit addressed this very issue in *United States v. Kimber*, 777 F.3d 553 (2d Cir. 2015).  "[A]pplication of the vulnerable victim adjustment [is] authorized where the offense conduct victimized a vulnerable person even though the entity directly targeted by the offense of conviction was a different person." See *United States v. Firment*, 296 F.3d 118, 121 (2d Cir.2002); see also, *United States v. Echevarria*, 33 F.3d 175, 180–81 (2d Cir.1994).

There can be no doubt that RAY knew about J.L.'s physical vulnerability. RAY previously worked for J.L. as a caregiver. RAY also saw that J.L. was wheelchair bound and bedridden at the time RAY forced J.L. to provide a false statement.  In fact, the entire contact on May 18, 2015 at J.L.'s home took place while J.L. was in his bed.  RAY cannot now claim that he does not know about the victim's vulnerability.

United States Sentencing Guideline § 3A1.1(b)(1) provides that "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim, [the sentencing court shall] increase [the offense level] by 2 levels."  Again, the Circuit gave guidance in *Kimber* that is on point here. "Imposition of the vulnerable victim sentencing increase does not require that the defendant select the victim because of his or her vulnerability; rather, it is sufficient that he knew or should have known of this quality when deciding to go ahead with the crime." *Kimber*, 777 F.3d 553.

[31]

When deciding whether a victim was vulnerable for purposes of applying the sentencing enhancement, a sentencing judge should focus not on the likelihood or extent of harm to the individual if the crime is successful, *but on the extent of the individual's ability to protect himself from the crime (emphasis added). United States v. Dupre*, 462 F.3d 131 (2d Cir. 2006). Under the sentencing guideline providing for sentencing enhancement if victim was particularly vulnerable, *the vulnerability inquiry focuses on the victim's ability to protect himself from crime, not the likelihood of harm to the victim if the crime is completed (emphasis added).* See *United States v. Crispo*, 306 F.3d 71 (2d Cir. 2002).

In this case, while the Court may be the victim of the offense of conviction, J.L. is the victim of RAY's relevant conduct. RAY obtained statements from J.L. and provided them to the court in an attempt to obstruct, influence or impede a court proceeding, which is, thus, relevant conduct. Additionally, J.L.'s physical condition and placement in a facility meet the second prong, which RAY was aware of given his previous status as the victim's caretaker. Bottom line is that RAY used J.L. to commit this crime because the defendant knew J.L. was unusually vulnerable due his physical or mental condition and because he is otherwise particularly susceptible to the criminal conduct. And that is the definition of the enhancement.

**CONCLUSION**

The section 3553(a) factors, as enumerated in Title 18 of the United States Code, list among other things, the need for the sentence to reflect the nature and circumstances of the offense, the seriousness of the offense, the need for deterrence, and the need to protect the

[32]

public from further crimes.  All these factors support the imposition of a sentence above the guideline range, a period of supervised release of five years, a fine, and a $300 special penalty assessment.  The defendant must also pay restitution in the amount of $309,511.55. Such a sentence is appropriate for both general as well as specific deterrence due to the nature of the crimes charged and the nature of the defendant's criminal behavior.

The defendant is clearly not repentant, and his actions in submitting forged and fraudulent material to the Court in the guise of legitimate sentencing materials strongly shows the true nature of the defendant and the contempt he has for the Court.

For these reasons, the United States respectfully requests the Court consider the Title 18, U.S.C. Section 3553A factors as they apply *individually to this defendant* and impose a sentence above the guideline range, a period of supervised release, a fine, and a $300 special penalty assessment.

DATED:      Rochester, New York, May 24, 2015.

Respectfully submitted,

WILLIAM J. HOCHUL, Jr.
United States Attorney


By: S/CRAIG R. GESTRING
    Assistant United States Attorney
    United States Attorney's Office
    Western District of New York
    100 State Street, Room 500
    Rochester, New York  14614
    Craig.Gestring@usdoj.gov

TO:    Jason Abbot, Esq., Counsel for Defendant
       Jennifer L. Fish, United States Probation Department

**A-119**

## MEMORANDUM OF INTERVIEW

| | | |
|---|---|---|
| CASE NUMBER | : | 1990585-MT |
| PERSON INTERVIEWED | : | J█████ L█████ |
| PLACE OF INTERVIEW | : | ████████████████████ Brockport, NY 14420 |
| DATE OF INTERVIEW | : | July 10, 2015 |
| TIME OF INTERVIEW | : | 1:43 PM – 2:35 PM |
| INTERVIEWED BY | : | Nichole Rodriguez, U.S. Postal Inspection Service<br>Craig Gestring, Assistant U.S. Attorney |

On July 10, 2015, J█████ L█████████ agreed to be interviewed at his residence, █████████████, Brockport, NY 14420 by Assistant United States Attorney (AUSA) Craig Gestring (Gestring) and Postal Inspector Nichole Rodriguez. The interview was scheduled through L███s attorney, Robert Smith (Smith). Smith was present throughout the interview.

Gestring informed L███ that any statements he made during the interview needed to be truthful. Gestring also informed L███ that if he made any false statements during the course of the interview, L███ could be prosecuted for those statements. L███ said he understood. Gestring told L███ that he could end the interview, take a break from the interview, or speak to his attorney privately at any time.

L███ was provided a copy of a character reference letter which had been submitted to the Federal Court for the Western District of New York on behalf of Steven Ray (Ray). The letter was signed "████████████." During a prior interview with federal agents on May 7, 2015, L███ stated to agents and wrote a sworn statement that he had no knowledge of the letter, did not write the letter, and did not authorize anyone to submit the letter on his behalf. Both L███ and his attorney reviewed the letter, an agent's memorandum of L███s May 7th interview, and L███s sworn statement. L███ was asked about the content of his sworn statement. L███ affirmed that everything in the sworn statement was true.

L███ and his attorney were provided with a copy of a notarized statement, dated May 18, 2015, which was submitted to the court. The statement was signed "████████████." L███ stated he wrote and signed the notarized statement. L███ was asked to read the second written statement aloud. L███ struggled with several of the words in the statement. L███ was asked why he had written the second statement.

L⬛ stated that on May 18, 2015 at approximately 10:00 or 11:00 PM, he was in his bed sleeping when he heard a knock at his apartment door. L⬛said he yelled for the individual to come in, and Steven Ray (Ray) walked into his room. L⬛ said he didn't know how Ray entered through the security doors to the apartment complex, as Ray did not ring L⬛s room for access. L⬛ said it was possible Ray used a key made available to emergency personnel to access the building, as Ray was formerly a volunteer firefighter. L⬛ said it was also possible another resident let Ray into the building.

L⬛said Ray asked him about the character reference letter which had been submitted to the courts. Ray asked L⬛ who wrote the character reference letter. L⬛told Ray he did not write the character reference letter and did not know who wrote the letter. L⬛ said Ray was aware of the sworn statement he had written on May 7, 2015. L⬛ said Ray told him he needed L⬛to help him out. L⬛ said Ray asked him to lie and write a new statement. L⬛said he told Ray several times that he was not comfortable writing a false statement. L⬛estimated that he told Ray five times that he did not want to write the statement. L⬛ said he did not want to write the second statement, and knew it would contradict what he had written in the May 7th statement. Ray told L⬛ that a second statement from L⬛ could help him get a lesser sentence. L⬛said he felt intimidated and threatened by Ray. L⬛said the tone in Ray's voice made him concerned for his safety. L⬛said he eventually agreed to write the statement for Ray. Ray told L⬛to say he authorized the character reference letter but had an aide write the letter on his behalf. L⬛ said Ray dictated to him what to write in the statement.

L⬛ said after he wrote the statement, Ray told him he was going to call his (Ray's) attorney and a notary. L⬛ said a notary came to his apartment a short time later. L⬛ said he could not remember if Ray waited for the notary or how the notary got access to the apartment building. L⬛said the notary was a female, in her late 40's or early 50's, had glasses and curly blondish-colored hair. The notary notarized the statement L⬛wrote. L⬛said he stayed in his bed throughout the visit by Ray and the notary to his apartment. L⬛said Ray did not make any promises or offers to him in exchange for writing the statement. L⬛said to his knowledge, Ray did not make any promises or offers to his (L⬛s) aides.

L⬛confirmed his phone number is ⬛ L⬛ said this is his only phone number. After Gestring told L⬛ he had reviewed Ray's phone records, L⬛ said Ray called him several times the night of May 18, 2015. L⬛was unsure if Ray called before or after he came to his apartment. L⬛ said he told Ray he didn't want to talk to him and hung up on him several times.



███ said he had not spoken to Ray in about a month.  Gestring asked ███ to contact Inspector Rodriguez if Ray contacted him again.

███ said he was not and had never been intimidated by the federal agents who interviewed him.

Gestring requested that ███ not discuss the details of his interview with anyone other than his attorney.

Nichole Rodriguez
Postal Inspector

**A-122**

## MEMORANDUM OF INTERVIEW

| | | |
|---|---|---|
| CASE NUMBER | : | 1990585-MT |
| PERSON INTERVIEWED | : | J▊▊ L▊▊ |
| PLACE OF INTERVIEW | : | ▊▊▊ Brockport, NY 14420 |
| DATE OF INTERVIEW | : | July 10, 2015 |
| TIME OF INTERVIEW | : | 1:43 PM – 2:35 PM |
| INTERVIEWED BY | : | Nichole Rodriguez, U.S. Postal Inspection Service |
| | | Craig Gestring, Assistant U.S. Attorney |

On July 10, 2015, J▊▊ L▊▊ agreed to be interviewed at his residence, ▊▊, Brockport, NY 14420 by Assistant United States Attorney (AUSA) Craig Gestring (Gestring) and Postal Inspector Nichole Rodriguez. The interview was scheduled through L▊▊s attorney, Robert Smith (Smith). Smith was present throughout the interview.

Gestring informed L▊▊ that any statements he made during the interview needed to be truthful. Gestring also informed L▊▊ that if he made any false statements during the course of the interview, L▊▊ could be prosecuted for those statements. L▊▊ said he understood. Gestring told L▊▊ that he could end the interview, take a break from the interview, or speak to his attorney privately at any time.

L▊▊ was provided a copy of a character reference letter which had been submitted to the Federal Court for the Western District of New York on behalf of Steven Ray (Ray). The letter was signed "▊▊▊." During a prior interview with federal agents on May 7, 2015, L▊▊ stated to agents and wrote a sworn statement that he had no knowledge of the letter, did not write the letter, and did not authorize anyone to submit the letter on his behalf. Both L▊▊ and his attorney reviewed the letter, an agent's memorandum of L▊▊s May 7th interview, and L▊▊s sworn statement. L▊▊ was asked about the content of his sworn statement. L▊▊ affirmed that everything in his sworn statement was true.

L▊▊ and his attorney were provided with a copy of a notarized statement, dated May 18, 2015, which was submitted to the court. The statement was signed "▊▊▊." L▊▊ stated he wrote and signed the notarized statement. L▊▊ was asked to read the second written statement aloud. L▊▊ struggled with several of the words in the statement. L▊▊ was asked why he had written the second statement.

**A-123**

L███ stated that on May 18, 2015 at approximately 10:00 or 11:00 PM, he was in his bed sleeping when he heard a knock at his apartment door. L███ said he yelled for the individual to come in, and Steven Ray (Ray) walked into his room. L███ said he didn't know how Ray entered through the security doors to the apartment complex, as Ray did not ring L███s room for access. L███ said it was possible Ray used a key made available to emergency personnel to access the building, as Ray was formerly a volunteer firefighter. L███ said it was also possible another resident let Ray into the building.

L███ said Ray asked him about the character reference letter which had been submitted to the courts. Ray asked L███ who wrote the character reference letter. L███ told Ray he did not write the character reference letter and did not know who wrote the letter. L███ said Ray was aware of the sworn statement he had written on May 7, 2015. L███ said Ray told him he needed L███ to help him out. L███ said Ray asked him to lie and write a new statement. L███ said he told Ray several times that he was not comfortable writing a false statement. L███ estimated that he told Ray five times that he did not want to write the statement. L███ said he did not want to write the second statement, and knew it would contradict what he had written in the May 7th statement. Ray told L███ that a second statement from L███ could help him get a lesser sentence. L███ said he felt intimidated and threatened by Ray. L███ said the tone in Ray's voice made him concerned for his safety. L███ said he eventually agreed to write the statement for Ray. Ray told L███ to say he authorized the character reference letter but had an aide write the letter on his behalf. L███ said Ray dictated to him what to write in the statement.

L███ said after he wrote the statement, Ray told him he was going to call his (Ray's) attorney and a notary. L███ said a notary came to his apartment a short time later. L███ said he could not remember if Ray waited for the notary or how the notary got access to the apartment building. L███ said the notary was a female, in her late 40's or early 50's, had glasses and curly blondish-colored hair. The notary notarized the statement L███ wrote. L███ said he stayed in his bed throughout the visit by Ray and the notary to his apartment. L███ said Ray did not make any promises or offers to him in exchange for writing the statement. L███ said to his knowledge, Ray did not make any promises or offers to his (L███s) aides.

L███ confirmed his phone number is ███████████. L███ said this is his only phone number. After Gestring told L███ he had reviewed Ray's phone records, L███ said Ray called him several times the night of May 18, 2015. L███ was unsure if Ray called before or after he came to his apartment. L███ said he told Ray he didn't want to talk to him and hung up on him several times.



Page 2 of 3

**A-124**



# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

# Memorandum of Interview

| | | | |
|---|---|---|---|
| **Investigation #:** | 1000261388 | **Location:** | |

| | |
|---|---|
| **Investigation Name:** | STEVEN L RAY |
| **Date:** | July 23, 2015 |
| **Time:** | 12:30 PM - 12:45 PM (Approximately) |
| **Participant(s):** | C███ C█████, Witness |
| | Alan Roth, Special Agent |
| | Nichole Rodriguez, Postal Inspector |

On the above date and times, PI Rodriguez and SA Roth met with C███ C█████ (C████) at the above location. PI Rodriguez and SA Roth introduced themselves and displayed their credentials. C████ provided the following information:

1. C████ performs mobile notary services. STEVEN LNU contacted C████ on May 18, 2015 at approximately 9:00 or 9:30 PM. STEVEN LNU stated that his friend, J██ L███ (L███), needed a document notarized. STEVEN LNU stated that L███ is disabled and that STEVEN LNU was trying to help L███. STEVEN LNU asked how much C████ would charge. C████ asked where L███ was located and STEVEN LNU advised L███ resided at ███ in Brockport, NY. C████ told STEVEN LNU the charge would be $5.00. STEVEN LNU agreed to the price. C████ told STEVEN LNU that L███ would need valid photo identification.

2. C████ and her husband arrived at the ████████ apartment building later that evening. STEVEN LNU let C████ and her husband into the building and L███'s apartment. L███ was unable to walk and was sitting on a daybed. STEVEN LNU, L███, and C████ and her husband were the only individuals present in the apartment. STEVEN LNU introduced C████ to L███.

3. L███ produced photo identification and provided it to C████. L███ signed a handwritten document in the presence of C████. The letter was drafted before C████ arrived and was sitting on a table near L███. L███'s signature on the handwritten document appeared to match the signature on L███'s photo identification. C████ notarized the handwritten document. C████ did not read the handwritten document. STEVEN LNU handed C████ a crumpled up currency bill. C████ put the bill into her purse. C████ and her husband left the apartment. L███ and STEVEN LNU remained in L███s apartment.

C███ and her husband were at L██ s apartment between five (5) to ten (10) minutes.

4. ████████████████████████████████████████████

5. C████ called STEVEN LNU today after C█████ was contacted by PI Rodriguez. Someone answered the phone by stating it was the number for Path Construction or Pathway Construction. C█████ asked to speak to STEVEN. An individual answered the phone. C██████ introduced herself and asked why a Postal Inspector wanted to speak to C██ regarding the document C█████ notarized for L███. STEVEN LNU said he was not sure. STEVEN LNU stated that C█████ did not have to speak with the Postal Inspector and that C█████ did nothing wrong. STEVEN LNU further stated that L██ was recently released from the hospital.

6. C█████ never met or knew STEVEN LNU prior to May 18, 2015. The above are the only interactions that C█████ has had with STEVEN LNU.

PI Rodriguez showed C█████ a handwritten document dated May 18, 2015 that was notarized by C█████. C███████ verified her signature at the bottom of the document and stated it is a copy of the handwritten document previously discussed.

C█████ provided PI Rodriguez with a print off of a Facebook page with a photograph of ████. Chasse also provided telephone records showing her telephone calls with STEVEN LNU on May 18, 2015.

PI Rodriguez and SA Roth thanked C█████ for her assistance and C█████ departed.

I prepared this memorandum on July 23, 2015, after refreshing my memory from notes made during and immediately after the interview with C█████ C███████.

*Alan M. Roth*

Alan Roth
Special Agent

06/02/2015 TUE 12:33  FAX 5853444986                                           ☒002/008

| 1. Agency CNET HEADQUARTERS | 2. Div/Precinct H223 | | 3. ORI NY1018001 | 5. Case No. | 6. Incident No. 5567321 |
|---|---|---|---|---|---|
| 7,8,9. Date Reported (Day, Date, Time) FRIDAY 02/28/2014 07:00 | 10,11,12. Occurred On/From (Day, Date, Time) FRIDAY 02/28/2014 07:00 | | 13,14,15. Occurred To (Day, Date, Time) | | |
| 16. Incident Type LEAD-OTHER AGENCY | | 17. Business Name | | | |
| 19. Incident Address (Street Name, Bldg. No., Apt. No.) 79 TALAMORA AVE | | | | | |
| 20. City/State/Zip BROCKPORT NEW YORK 14420 | | | | | |
| 21. Location Code (TSLED) SWEDEN TOWN 2866 | | 23. No. of Victims 0 | 24. No. of Suspects 0 | 26. Victim also Complainant? | |
| Location Type SINGLE FAMILY HOME | | | | | |

## ASSOCIATED PERSONS

| | | | | | |
|---|---|---|---|---|---|
| PERSON NOT (YET) INTERVIEWED | RAY, STEVEN | | 09/24/1965 | 79 TALAMORA AVE BROCKPORT NY 14420 | |

## NARRATIVE

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 02/28/2014 | 03/17/2014 | PETERSON, JEREMY (INV) |

**Narrative**

On 2/28/14, I (Inv Peterson) received information from Louisville Metro/ Jefferson County Task Force regarding a UPS package seized containing of $46,000 in US Currency. The package has a shipped from address of PRINT HOUSE GRAPHICS (585.247.8768) The UPS Store #1145, 6558 4th Section Rd., Brockport, NY 14420. The package was addressed to Fast Power Now (925.935.1870) 1966 Tice Valley Blvd., Walnut Creek, CA 994595.

On 3/3/14, I responded to The UPS Store #1145 and spoke with the owner of the franchise. The owner states he knows the shipper for the package to be STEVE RAY.

On 3/17/14, Monroe County ADA Matthew Schwartz subpoena'd The UPS Store #1145 for the shipping information for packages sent by STEVE RAY and packages sent under the phone number (585.247.8768).

CNET Western ITC

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 03/21/2014 | 03/25/2014 | PETERSON, JEREMY (INV) |

**Narrative**

On 3/21/14, I responded to The UPS Store #1145 to retrieve the Subpoena'd Information.

The UPS Store #1145 records indicate that RAY was shipping packages in his name prior to using the (585.247.8768) phone number.

On 3/25/14, I sent Monroe County ADA Mathew Schwartz a second Subpoena request for The UPS Store for the dates of August 1, 2013 to October 31, 2013.

Subpoena'd informatrion shows approximately 30 packages sent by RAY utilizing his name and the phone number from September 2013 through February 2014. All packages were sent to the state of California.

CNET Western ITC

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 04/04/2014 | 04/04/2014 | PETERSON, JEREMY (INV) |

**Narrative**

Surveillance of 79 Talamora Drive have been negative for any criminal activity.

06/02/2015 TUE 12:33   FAX 5853444986                                    ☑003/008

No new shipments to or from RAY.

CNET Western ITC

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 08/22/2014 | 08/22/2014 | PETERSON, JEREMY (INV) |

**Narrative**

July 2014, RAY was arrested by Brockport PD for Harassment 1st and Criminal Contempt. No NYSP involvement in the arrest or investigation.

August 2014, RAY was arrested for Federal Charges stemming from the Robbery of a Postal Employee in New York City. RAY has ties to over 100 stolen Treasury Checks cashed and deposited into accounts where RAY is on the account. No CNET Western involvement in the investigation or arrest.

On 8/22/14, NYSP CNET Western case closed by investigaqtion, no property retained.

CLOSED by INVESTIGATION

CLOSED / FINAL

## ADMINISTRATIVE

| 74. Inquiries | 75. NYSPIN Message No. | 76. Complainant Signature | | |
|---|---|---|---|---|
| 77. Reporting Officer Signature (Include Rank) INV JEREMY PETERSON | | 78. ID No. 4508 | 79. Supervisor Signature (Include Rank) SR INV TIMOTHY BOUR | 80. ID No. 1895 |
| 81. Status CLOSED BY INVESTIGATION | | 82. Status Date 08/22/2014 | 83. Notified/TOT | |

| | Solvability Total | 0 |
|---|---|---|

Page 2 of 2                                                          6/2/2015        12:13:01



# Department of Human and Health Services

Rochester, New York

Page _1_ of _4_

Maggie Brooks
County Executive

Kelly Reed
Commissioner

<u>**AFFIDAVIT**</u>

STATE OF NEW YORK)
COUNTY OF MONROE)
CITY OF ROCHESTER)

I, _Steven Ray_ , Reside at _79 TALAMORA TRAIL_

I reside with my wife Denise Ray and our Children. I am not the owner of this property but a renter. The Corporation that I started in 1998 known as Sterling of Rochester Inc. is no longer my Corporation. I state that I only act as a Board Member who makes no decisions with regard to the financial management of the Company. I do not function as an employee of Sterling of Rochester but do not receive monetary reimbursement for my actions with this Corporations

I state that I am providing truthful and accurate information to Investigator Clark-Albano and understand that I could possibly be charged with Perjury at a later date if it is found that I intentionally provided false information.

No promises or threats were made to me by Investigator Clark-Albano prior to signing this statement. I understand my Rights and Responsibilities on Temporary Assistance as cited in Book I provided to me by the Department Of Human Services. I have read and understood the information provided to me in the application and recertification packets.

This is a voluntary statement. Signed: _____

On this _17th_ day of _April_ 2011 before me the subscriber personally appeared who by me being duly sworn did depose and say that he/she has read the foregoing statement and swears and affirms to the truth of the contents therein.

_Corynda Clark-Albano_
Corynda Clark-Albano, Investigator – Badge # 206
(Commissioner of Deeds – Exp. 9/23/11)

Section 210.05 Penal Law, State Of New York, Perjury in the Second Degree. A person is guilty when he/she swears falsely and when his false statement is made in a proscribed written instrument for which an oath is required by law, and is made with intent to mislead a public servant in the performance of his official functions, and is material to the action, proceeding or matter in which it is made. Class A Misdemeanor.



# Department of Human and Health Services

Rochester, New York

Page _2_ of _4_

**Maggie Brooks**
County Executive

**Kelly Reed**
Commissioner

## AFFIDAVIT

STATE OF NEW YORK)
COUNTY OF MONROE)
CITY OF ROCHESTER)

I, _Steven Ray_, Reside at _79 Talanna Trail_ Other than the ($250) two hundred fifty dollars that I earned (weekly) as an employee of C&C Deli I recieve no other income from any other source. I own only one vehicle, 2004 Grand Am, and have no other resources other than a joint bank account and my name is on the account for C&C Deli but those funds are not abailable for my personal use. I do not own nor recievly owned any of the properties under Ste Ray Corporation although my

I state that I am providing truthful and accurate information to Investigator Clark-Albano and understand that I could possibly be charged with Perjury at a later date if it is found that I intentionally provided false information.

No promises or threats were made to me by Investigator Clark-Albano prior to signing this statement. I understand my Rights and Responsibilities on Temporary Assistance as cited in Book I provided to me by the Department Of Human Services. I have read and understood the information provided to me in the application and recertification packets.

This is a voluntary statement. Signed: _____

On this _17th_ day of _Jun_ 2011 before me the subscriber personally appeared who by me being duly sworn did depose and say that he/she has read the foregoing statement and swears and affirms to the truth of the contents therein.

_Corynda Clark-Albano_
Corynda Clark-Albano, Investigator – Badge # 206
(Commissioner of Deeds – Exp. 9/23/11)

Section 210.05 Penal Law, State Of New York, Perjury in the Second Degree. A person is guilty when he/she swears falsely and when his false statement is made in a proscribed written instrument for which an oath is required by law, and is made with intent to mislead a public servant in the performance of his official functions, and is material to the action, proceeding or matter in which it is made.   Class A Misdemeanor.

A-130

Page 5 of 6



# Department of Human and Health Services

Rochester, New York

Page __3__ of __4__

Maggie Brooks
County Executive

Kelly Reed
Commissioner

### AFFIDAVIT

STATE OF NEW YORK)
COUNTY OF MONROE)
CITY OF ROCHESTER)

I, _Steven Ray_, Reside at _79 Talanna Trail_ name is linked to the corporations and the business and properties underneath said corporation. I have read presently and past the MCDHS 452 and do understand the information obtained in said document. I am not hiding income or resources and have been forthcoming with information provided to Department and investigator.

I state that I am providing truthful and accurate information to Investigator Clark-Albano and understand that I could possibly be charged with Perjury at a later date if it is found that I intentionally provided false information.

No promises or threats were made to me by Investigator Clark-Albano prior to signing this statement. I understand my Rights and Responsibilities on Temporary Assistance as cited in Book 1 provided to me by the Department Of Human Services. I have read and understood the information provided to me in the application and recertification packets.

This is a voluntary statement. Signed: _____

On this _17th_ day of _____, 2011 before me the subscriber personally appeared who by me being duly sworn did depose and say that he/she has read the foregoing statement and swears and affirms to the truth of the contents therein.

_Corynda Clark-Albano_
Corynda Clark-Albano, Investigator – Badge # 206
(Commissioner of Deeds – Exp. 9/23/11)

Section 210.05 Penal Law, State Of New York, Perjury in the Second Degree. A person is guilty when he/she swears falsely and when his false statement is made in a proscribed written instrument for which an oath is required by law, and is made with intent to mislead a public servant in the performance of his official functions, and is material to the action, proceeding or matter in which it is made. Class A Misdemeanor.

A-131



# Department of Human and Health Services

Page _4_ of _4_

Rochester, New York

Maggie Brooks
County Executive

Kelly Reed
Commissioner

## AFFIDAVIT

STATE OF NEW YORK)
COUNTY OF MONROE)
CITY OF ROCHESTER)

I, _Steven L. Ray_ , Reside at _79 Talamora Trail_ ,

Ⓐ The Corporation Known as Steray of Rochester was started and owned in 1998 by a various number of investors and I even known as an officer at which time stayed involved with some decision making.

Ⓑ It notes I am an Employee which am compensated by reduced rent and or utilities covered when and if my businesses are abused. I was presently along with my daughters as child Health plus and was then moved to Family health plus in october 2010 and now it is stated since 6/6/11. I am added to Dave Duncan plan.

I state that I am providing truthful and accurate information to Investigator Clark-Albano and understand that I could possibly be charged with Perjury at a later date if it is found that I intentionally provided false information.

No promises or threats were made to me by Investigator Clark-Albano prior to signing this statement. I understand my Rights and Responsibilities on Temporary Assistance as cited in Book 1 provided to me by the Department Of Human Services. I have read and understood the information provided to me in the application and decertification packets.

This is a voluntary statement. Signed: _____

On this _17th_ day of _Dec_ 2011 before me the subscriber personally appeared who by me being duly sworn did depose and say that he/she has read the foregoing statement and swears and affirms to the truth of the contents therein.

_Gorynda Clare-Albano_
Gorynda Clark-Albano, Investigator – Badge # 206
(Commissioner of Deeds – Exp. 9/23/11)

Section 210.05 Penal Law, State Of New York, Perjury in the Second Degree. A person is guilty when he/she swears falsely and when his false statement is made in a proscribed written instrument for which an oath is required by law, and is made with intent to mislead a public servant in the performance of his official functions, and is material to the action, proceeding or matter in which it is made.  Class A Misdemeanor.

**A-132**

# Department of Human and Health Services

Rochester, New York

Page _____ of _____

Maggie Brooks
**County Executive**

Kelly Reed
**Commissioner**

### AFFIDAVIT

STATE OF NEW YORK)
COUNTY OF MONROE)
CITY OF ROCHESTER)

I, STEVEN RAY                          , Reside at 79 Talamora Trail

My son Riley resides primarily w/ me @ this address and his mother has visitation as set forth in court papers. I have some income from Med. Solutions and I have no other resources or income. SteRay is no longer my business and I own no shares or interest in same. I own no other properties or vehicles. I am not the owner of C & C deli since 2004.

I state that I am providing truthful and accurate information to Investigator Chenier and understand that I could possibly be charged with Perjury at a later date if it is found that I intentionally provided false information.

No promises or threats were made to me by Investigator Chenier prior to signing this statement.  I understand my Rights and Responsibilities on Temporary Assistance as cited in Book 1 provided to me by the Department Of Human Services.  I have read and understood the information provided to me in the application and recertification packets.

This is a voluntary statement.  Signed: X _____

On this 24TH day of OCT., 2013 before me the subscriber personally appeared who by me being duly sworn did depose and say that he/she has read the foregoing statement and swears and affirms to the truth of the contents therein.

Christopher B. Hemry, Investigator   Badge # 204

Section 210.05 Penal Law, State Of New York, Perjury in the Second Degree. A person is guilty when he/she swears falsely and when his false statement is made in a proscribed written instrument for which an oath is required by law, and is made with intent to mislead a public servant in the performance of his official functions, and is material to the action, proceeding or matter in which it is made.  Class A Misdemeanor.